DAVID J. COHEN, ESQ.
California Bar No. 145748
**COHEN & PAIK LLP**
177 Post Street, Suite 660
San Francisco, CA 94108
Telephone:  (415) 398-3900

Attorneys for Plaintiffs **John Gidding and Pivotal, Inc.**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JOHN GIDDING, an individual and PIVOTAL INC., a California corporation, <br><br> Plaintiffs, <br><br> v. <br><br> DEREK ANDERSON, an individual; JOHN ZAPPETTINI, an individual; OLIVIER LEMAL an individual; PLANTAGENET CAPITAL MANAGEMENT LLC, a purported California corporation; PLANTAGENET CAPITAL AMERICA LLC, a purported Delaware corporation; PLANTAGENET CAPITAL FUND LP, a purported Cayman Island corporation; PLANTAGENET CAPITAL FUND LP II, a purported Cayman Island corporation; PLB HOLDINGS SA, a purported Luxembourg corporation; PLANTAGENET PARTNERS SA, a purported French corporation; SA SOCIETE CHAMPENOISE D'EXPLOITATION VINICOLE, a purported French corporation; SERGE HAUCHART, an individual; PATRICK RAULET, an individual; JEAN-FRANCOIS RAPENEAU, an individual; CHRISTOPHE RAPENEAU, an individual; SA COMPAGNIE DES VINS DU LEVANT, a purported French corporation; SAS LES CHAMPS RENIERS, a purported | C-07-4755 JSW <br><br> **VERIFIED FIRST AMENDED COMPLAINT FOR DAMAGES FOR:** <br> **(1) RICO (U.S.C. 18 1962(c));** <br> **(2) CONSPIRACY TO COMMIT RICO (U.S.C. 18 1962(d));** <br> **(3) FOR ACTION ON JUDGMENT;** <br> **(4) FOR UNJUST ENRICHMENT; AND** <br> **(5) FOR ACCOUNTING** <br><br> Original Complaint <br> Filed:    September 14, 2007 <br> Trial <br> Date:    Not Yet Set |

1

French corporation; MARIE-CLAUDE )
SIMON, an individual; and DOES 1 )
through 100, inclusive,           )
                                  )
                Defendants.       )
                                  )
                                  )
                                  )
                                  )
_____ )


## JURY TRIAL DEMANDED
### INTRODUCTION

1.    This Complaint alleges violations under the Racketeer Influenced and Corrupt Organizations Act of 1970, Title IX of the Organized Crime Control Act of 1970, as amended, 18 U.S.C. Section 1962(c) and Section 1962(d) ("RICO"), and is brought by Plaintiffs Pivotal, Inc. and John Gidding in connection with a scheme devised, conducted, and/or participated by the above named defendants: Derek Anderson, Olivier Lemal, John Zappettini, Plantagenet Capital Management LLC, Plantagenet Capital America LLC, Plantagenet Capital Fund LP, Plantagenet Capital Fund LP II, PLB Holdings SA, Plantagenet Partners SA, Serge Hauchart, Patrick Raulet, Jean-Francois Rapeneau, Christophe Rapeneau, Marie Claude Simon, SA Societe Champenoise d'Exploitation Vinicole, SA Compagnie des Vins du Levant, and SAS Les Champs Reniers; each of whom participated, either directly or indirectly, in a fraudulent scheme amounting to operating an enterprise consisting, alternatively, of either (a) the courts of Los Angeles County, France, and Luxembourg; (b) an association-in-fact of the guarantors of the sale of the shares of SA Societe Champenoise d'Exploitation Vinicole; or (c) the law firms representing the

2

defendants in the courts of Los Angeles County, France, and Luxembourg, through a series of predicate acts including, mail fraud and wire fraud, under U.S.C. Section 1341, 1343, forgery and perjury to obtain money and property through false statements of material facts, and to conspire to do so, all to the detriment of the plaintiffs.  These acts, at least two of them within ten years, amounted to a pattern of racketeering activity involving relativeness and continuity of the predicate acts.  The relief sought includes treble damages arising from the fraud set forth herein, cost of investigation and suit, and attorneys fees.

### JURISDICTION

2.    Jurisdiction is proper in this Court pursuant to 28 U.S.C. Sections 1331, 1337, 1349 because this matter involves allegations of illegal behavior arising under the laws of the United States, including violations of RICO and the practice of frauds upon the courts of California.  Furthermore, jurisdiction in this Court is proper pursuant to 18 U.S.C. Sections 1964(a), 1964(c).

### PERSONAL JURISDICTION AND VENUE

3.    Personal Jurisdiction and venue are predicated upon 18 U.S.C. §1965(a), because certain defendants reside, are found, have an agent, and transact affairs in Marin County and the City and County of San Francisco, and the ends of justice require that other parties residing in other districts be brought before this Court.  Venue is also proper in this Court pursuant to 18 U.S.C. §1965(b) because, to the extent any defendant may reside outside

of this District, the ends of justice require such defendant or defendants to be brought before this Court. Venue is proper under 28 U.S.C. §1391(3) because a defendant may be found in this District. Venue is also proper in this Court pursuant to 28 U.S.C. §1391(d) because a foreign corporation may be sued in any district, and under 28 U.S.C. §1391(a), because a California corporation may be sued in any district within the state.

## RELEVANT TIMES

4.   The relevant times in this complaint are from March 2, 2000 when John Gidding and Pivotal, Inc. amended their complaint in the Superior Court for Los Angeles County, previously naming defendants Plantagenet Capital Management LLC and SA Societe Champenoise d'Exploitation Vinicole, to add defendants Plantagenet Partners SA and PLB Holdings SA, through the date of the filing of this complaint. Further, personal jurisdiction is predicated on the fact that the acts and occurrences in furtherance of the claims herein arose in, arise in and affect the State of California and commence within the State of California.

## THE PARTIES

5.   Plaintiff Pivotal, Inc. ("Pivotal") is a corporation organized and existing under the laws of the State of California. At all relevant times Pivotal has had its principal place of business in North Hollywood, Glen Ellen, and San Francisco, California. Pivotal, from 1988 to the present day, has been licensed by the US Treasury Department to import wines into the

4

United States of America, and is licensed by the California Alcoholic Beverage Commission to sell wine in interstate commerce.

6.    Plaintiff John Gidding ("Gidding"), at all relevant times, has been a resident of Pasadena and San Francisco, California.  Gidding, from 1988 to the present day, has been an officer, director and shareholder of Pivotal.

7.    Defendant SA Societe Champenoise d'Exploitation Vinicole ("SCEV") is a corporation organized and existing under the laws of France.  At all relevant times SCEV has had its principal place of business in Chalons-en-Champagne and Reims, France.  SCEV produces, sells, and markets Champagne LeBrun.

8.    Defendant Derek Anderson ("Anderson"), at all relevant times, has been a resident of Mill Valley, California who owned or controlled the various Plantagenet entities.  Anderson was an officer, director and stockholder of SCEV from January 1999 through March 2000.  Anderson was also a director and stockholder of Plantagenet Partners SA and PLB Holdings SA.

9.    Defendant John Zappettini ("Zappettini"), at all relevant times, has been a resident of Atherton, California. Zappettini was or is a partner of Anderson in Plantagenet and was an officer, director and stockholder of SCEV from January 1999 through March 2000.   Zappettini was also a director and stockholder of Plantagenet Partners SA and PLB Holdings SA.

10.    Defendant Olivier Lemal ("Lemal"), at all relevant times, has been a resident of Saint Cloud, France.  Lemal was or

5

is a partner of Anderson in Plantagenet Partners SA and was an officer and stockholder of SCEV from January 1999 through March 2000.

11.   Defendant Serge Hauchart ("Hauchart"), at all relevant times, has been a resident of Paris, France.   Hauchart was an officer, director and employee of SCEV from January 1999 through June 1999; and a stockholder of SCEV from January 1999 through December 2003.

12.   Defendant Plantagenet Capital Management, LLC ("PCM") is or was a corporation organized and existing under the laws of California.   During the relevant times, PCM had its principal places of business in San Francisco and Mill Valley, California and was directed and controlled by Anderson and Zappettini.

13.   Defendant Plantagenet Capital America, LLC is or was a corporation organized and existing under the laws of Delaware. During the relevant times, Plantagenet Capital America, LLC had its principal place of business in Dover, Delaware and was directed and controlled by Anderson.

14.   Defendant Plantagenet Capital Fund LP is or was a corporation organized and existing under the laws of the British West Indies.   During the relevant times, Plantagenet Capital Fund LP had its principal place of business in Grand Cayman, British West Indies and was directed and controlled by Anderson and Zappettini.   On information and belief, plaintiffs also aver that Patricia Love Anderson has an as yet unknown interest in Plantagenet Capital Fund LP.

15.    Defendant Plantagenet Capital Fund LP II is or was a corporation organized and existing under the laws of the British West Indies.  During the relevant times, Plantagenet Capital Fund LP II had its principal place of business in Grand Cayman, British West Indies and was directed and controlled by Anderson and Zappettini.  On information and belief, plaintiffs also aver that Patricia Love Anderson has an as yet unknown interest in Plantagenet Capital Fund LP II.

16.    Defendant Plantagenet Partners SA ("PPSA") is or was a corporation organized and existing under the laws of France.  During the relevant times, PPSA had its principal place of business in Paris, France and was directed and controlled by Anderson and Lemal.  The shareholders of PPSA are Lemal, PCM, Anderson and Zappettini.

17.    Defendant PLB Holdings SA ("PLB") is or was a corporation organized and existing under the laws of Luxembourg.  During the relevant times, PLB had its principal place of business in Luxembourg City, Luxembourg and was directed by Anderson and Zappettini.  The shareholders of PLB are Plantagenet Capital America LLC, Plantagenet Capital Fund LP, and Plantagenet Capital Fund LP II.  PLB was a shareholder of SCEV from January 1999 to March 2000.  On April 7, 2000, Zappettini liquidated the assets of PLB.

18.    Defendant SA Compagnie des Vins du Levant ("Levant") is or was a corporation organized and existing under the laws of France.  During all relevant times, Levant has had its principal

7

place of business in Paris, France and was owned, directed and controlled by Patrick Raulet. Levant was a stockholder of SCEV from March 2000 through December 2003.

19. Defendant Patrick Raulet ("Raulet"), at all relevant times, has been a resident of Rilly-La-Montagne and Roanne, France. Raulet was an officer and director of SCEV from March 2000 through December 2003.

20. Defendant SAS Les Champs Reniers ("Reniers") is or was a corporation organized and existing under the laws of France. During all relevant times, Reniers has had its principal place of business in Blesmes, France and was owned, directed and controlled by Christophe Rapeneau. Reniers has been the sole shareholder of SCEV from December 2003 to the present day.

21. Defendant Jean-Francois Rapeneau, at all relevant times, has been a resident of Bouzy, France. Jean-Francois Rapeneau has been an officer and director of SCEV from December 2003 to the present day.

22. Defendant Christophe Rapeneau, at all relevant times, has been a resident of Blesmes, France. Christophe Rapeneau is an officer and director of Reniers and has been an officer and director of SCEV from December 2003 to the present day.

23. Defendant Marie-Claude Simon ("Simon"), at all relevant times, has been a resident of Reims, France. Defendant Simon was Gidding's and Pivotal's legal counsel in France from September 2001 through March 2004.

24.   Plaintiffs do not know the true names of Does 1 through 100, inclusive, and thereby sues them by such fictitious names. Plaintiffs are informed and believe that in doing the acts and things alleged in this complaint, the named defendants Does 1 through Does 100, inclusive, each of them, acted as the agents, joint venturers, or co-conspirators of each of the other defendants.

### THE CALIFORNIA CIVIL SUIT

25.   From September through December 1998, Pivotal and Gidding entered into contracts with SCEV for the future delivery of Champagne LeBrun to the United States.  Pivotal and Gidding, in turn, entered into contracts with customers for the delivery of the wine.  During the same period of time, Hauchart, Lemal, Anderson, and Zappettini, secretly acquired control over SCEV. The profit on these contracts held by Pivotal and Gidding would have been $1,327,243 over the two years covered by the contracts.

26.   SCEV failed to deliver the champagne.  As a result, Pivotal and Gidding sued SCEV and PCM in the Superior Court for the County of Los Angeles, CA. Pivotal and Gidding sued PCM because the PCM was believed to control SCEV.  Pivotal and Gidding sued SCEV for non-delivery.  The lawsuit also sought pre-judgment interest.  A copy of the complaint is attached to this matter's original complaint as **Exhibit 1**.

27.   SCEV was represented by its own counsel, as was PCM. Because PCM, Plantagenet Capital America, LLC, Plantagenet Capital Fund LP, and Plantagenet Capital Fund LP II {"Plantagenet

Entities") were insured by the Hartford Insurance Company ("Hartford"), Hartford paid for and provided counsel to PCM.

28. During discovery, Pivotal and Gidding learned that PPSA and PLB owned SCEV, and were the entities with funds to pay any judgment owed by SCEV. Further, discovery uncovered that Anderson, Zappettini and Lemal were partners who owned and controlled PCM, PPSA and PLB. It was also learned that Lemal owned and controlled 20% of SCEV and Hauchart was the president of SCEV and a minor stockholder of SCEV. Yet, because of the intentional concealment of material facts by defendants in the Los Angeles lawsuit during that suit's pendency, Pivotal and Gidding were unaware that SCEV was actually owned, directed and controlled by Raulet and Levant as of March 2, 2000, when Levant, which is owned and controlled by Raulet, purchased a majority of the shares of SCEV. Raulet and Levant both had more than sufficient assets to pay the amounts plaintiffs were seeking in the Los Angeles lawsuit.

29. In or about April 2001, PCM and SCEV moved for summary judgment. The motion was denied on April 26, 2001. A copy of the Court's ruling denying the motion is attached to this matter's original complaint as **Exhibit 2**.

30. On May 2, 2001, Pivotal and Gidding successfully moved to amend the complaint to add PPSA and PLB as defendants. A copy of the motion is attached to this matter's original complaint as **Exhibit 3**.

31.   On September 12, 2001, SCEV filed a substitution of attorneys form in the Superior Court for the County of Los Angeles in which SCEV purported to substitute Anderson as its lawyer for Joseph Decker, Esq.    The signatures on the substitution form are dated June 4, 2001. A copy of this substitution is attached to this matter's original complaint as **Exhibit 4**.    Anderson is not a lawyer or member of the bar in any jurisdiction in the United States or any other country.

32.   On September 17, 2001, Pivotal and Gidding had a *Huissier* (a member of the French legal profession similar to a bailiff) deliver a verbal and written summons to Raulet and SCEV at SCEV's headquarters in France informing both Raulet and SCEV that they were not legally represented in the Los Angeles lawsuit, and they had not responded to Pivotal and Gidding's $450,000 offer to settle.

33.   After several continuances had been granted during the pendency of the lawsuit, the case was set for trial in October 2001.

34.   On September 20, 2001, Hartford, on behalf of PCM, PPSA, PLB, Anderson, and Zappettini, but not SCEV, settled the lawsuit.   The settlement was for $150,000.   Plaintiffs settled for the $150,000 because Hartford was aggressively litigating the lawsuit, and plaintiffs could not afford to continue; in fact, plaintiffs had virtually no money available at the time of the settlement, due to lost business and legal fees.   A copy of the

1  Hartford agreement is attached to this matter's original
2  complaint as **Exhibit 5**.

3       35.  During the pendency of the Los Angeles lawsuit, Raulet
4  had given Anderson Powers of Attorney to represent himself and
5  SCEV in settlement talks with plaintiffs.  A copy of this Power
6  of Attorney is attached to this matter's original complaint as
7
8  **Exhibit 6**.  But contrary to the other defendants, SCEV did not
9  settle.  Consequently, the trial date as between plaintiffs and
10  SCEV, the remaining defendant, was set for December 3, 2001.

11       36.  On November 15, 2001, Pivotal and Gidding had a
12  *Huissier* deliver a verbal and written summons to Raulet and SCEV
13  at SCEV's headquarters in France informing both Raulet and SCEV
14  that they were not legally represented in the California lawsuit;
15  that Hartford had settled on behalf of PCM, PPSA, PLB, Anderson,
16  and Zappettini; that SCEV was still a party to the lawsuit, and
17  that the trial date was set for December 3, 2001.
18

19       37.  SCEV failed to appear for trial on December 3, 2001,
20  and the Los Angeles court continued the matter for one day to
21  December 4, 2001.  Because both sides had waived jury early on in
22  the lawsuit, the court trial commenced on December 4, 2001 and
23  lasted three days.  The trial included witness testimony,
24  exhibits and deposition testimony.  At the conclusion of the
25  trial, judgment was entered against SCEV for $1,327,242 plus pre-
26  judgment interest of $209,300 for a total of $1,536,543.
27  Further, SCEV was to pay 10% annual interest until the judgment
28  was satisfied.  Formal judgment was entered on March 22, 2002.  A

copy of the judgment is attached to this matter's original complaint as **Exhibit 7**.

38.   On or about May 22, 2002 the time for SCEV to appeal the judgment expired.

39.   Under California Code of Civil Procedure 473, a motion to set aside a default judgment must ordinarily be made within six months.  On or about September 20, 2002, SCEV moved, through Los Angeles attorneys Thelen, Reid & Priest, LLP to set aside the judgment of the Superior Court of Los Angeles County.  The motion was accompanied by a declaration, dated September 17, 2002, from Raulet ("Raulet Declaration"), which included a number of exhibits.  A copy of the Raulet Declaration is attached to this matter's original complaint as **Exhibit 8**.

40.   The motion to set aside the judgment and the Raulet Declaration were both mailed by Thelen, Reed & Priest, LLP to Gidding's and Pivotal's attorneys, Seebach and Seebach.  A copy of the supplemental declaration of Denise Kidish, in support of the motion, and proof of its service by mail is attached to this matter's original complaint as **Exhibit 9**.

41.   Appendix A to the Raulet Declaration is a redacted version of a Contract of Guarantee purportedly between only PLB and Levant which guaranteed the sale of the shares of SCEV and allegedly obligated *only* PLB to indemnify Levant and Raulet for all legal costs and any judgment taken by plaintiffs against SCEV.  A copy of this redacted Contract of Guarantee is attached to this matter's original complaint as **Exhibit 10**.

42.    The fax header on the redacted Contract of Guarantee reads September 26, 2001, which is six days after Hartford settled the Los Angeles lawsuit with plaintiffs and 18 months after Zappettini liquidated PLB's assets.  A copy of PLB's notice of liquidation filed in the Luxembourg Register of Commerce is attached to this matter's original complaint as **Exhibit 12**.

43.    A copy of SCEV's translation of the redacted Contract of Guarantee filed in conjunction with the Raulet Declaration is attached to this matter's original complaint as **Exhibit 11**.  The Raulet Declaration and its appendices were served on plaintiffs by mail.

44.    The redacted Contract of Guarantee filed in conjunction with the Raulet Declaration, on its face, shows evidence of being a forgery.  The original Contract of Guarantee was between PLB and PPSA (both Plantagent related entities, the first in Luxembourg and the latter in Paris) and Levant.  Levant purchased SCEV from PLB and PPSA on March 2, 2000.  A PCM news release dated April 24, 2000 announcing the sale is attached to this matter's original complaint as **Exhibit 13**.

45.    PLB and PPSA owned SCEV at the time of the March 2, 2000 sale, as evidenced by the contract of sale produced by PCM in discovery in the Los Angeles lawsuit, and is attached to this matter's original complaint as **Exhibit 14**.  The contract of sale, showing PLB's and PPSA's purchase of SCEV is dated December 18, 1998.  Because a lawsuit was pending between Pivotal/Gidding and SCEV on March 2, 2000, PLB and PPSA, as part of the sale of SCEV

14

to Levant, entered into a contract of guarantee whereby PLB and PPSA would pay for the legal defense of SCEV as well as pay for any judgment Pivotal/Gidding might obtain against SCEV. However, defendants fraudulently omitted PPSA from the redacted Contract of Guarantee attached to the Raulet Declaration because on that date PPSA was a thriving Paris concern with more than sufficient funds to pay the Los Angeles court judgment, while PLB had been liquidated and had no money or assets.

46. The redacted Contract of Guarantee included with the Raulet Declaration, on its face, shows further evidence of being a forgery because in the first paragraph the document purports to be from at least two signatories ("sousignes"), originally PLB and PPSA, but the original word guarantors ("garants") to the right of the bottom of the paragraph has been changed to the singular, guarantor ("garant"). Further, in the fourth paragraph of the document, it refers, once again to guarantors ("garants"), in the plural, as does the French verb "ont", and the applicable article, "les". The singular form for the applicable verb and article are, respectively, "est" and "le". This was because the original document referred to both guarantors, PLB and PPSA, but the redacted purported Contract of Guarantee omitted PPSA and claimed to be on behalf of only PLB.

47. Appendix E in support of the Raulet Declaration is a redacted version of a purported letter from Anderson to Raulet dated September 28, 2001. In this letter, Anderson informs Raulet that (a) SCEV's lawyer "has just withdrawn"; and (b) in

spite of Anderson's personal promise to Raulet to pay for SCEV's lawyers, Anderson had run out of money.  The letter does not mention any contract of guarantee.  A copy of this Anderson Letter is attached to this matter's original complaint as **Exhibit 15**.  The letter was sent by facsimile from Anderson's San Francisco office to Raulet's office in Reims, France.

48.  Appendix H in support of the Raulet Declaration is a redacted version of a purported letter from Raulet to Anderson dated January 7, 2002.  In this letter, Raulet urges Anderson to settle on behalf of SCEV with Pivotal and Gidding, and cites a "contract" that he has with Anderson but does not further describe the details of the "contract."  A copy of Raulet's letter is attached to this matter's original complaint as **Exhibit 16**.  A copy of SCEV's translation of the January 7, 2002 letter, filed in conjunction with the Raulet Declaration, is attached to this matter's original complaint as **Exhibit 17**.  These translations were served on Pivotal's and Gidding's attorneys by mail.

49.  On November 15, 2002, Pivotal and Gidding filed an opposition to SCEV's motion to set aside the judgment.  A copy of the opposition is attached to this matter's original complaint as **Exhibit 18**.

50.  On November 22, 2002, SCEV filed a Reply to Pivotal's and Gidding's opposition.  A copy of the Reply is attached to this matter's original complaint as **Exhibit 19**.

51. The Reply was served, by mail, by SCEV's attorneys Thelen, Reid & Priest on Pivotal's and Gidding's attorneys Seebach and Seebach. A copy of the proof of service by mail is attached to this matter's original complaint as **Exhibit 20**.

52. On November 27, 2002, the Superior Court for Los Angeles County held a hearing on SCEV's motion to set aside the judgment, and denied the motion. A copy of the transcript of the hearing is attached to this matter's original complaint as **Exhibit 21**.

53. As of September 1, 2007, the judgment against SCEV, including pre-judgment and post-judgment interest amounted to approximately $2,370,000.00.

## THE FRENCH CIVIL SUIT TO COLLECT THE PIVOTAL AND GIDDING JUDGMENT AGAINST SCEV

54. Pivotal and Gidding hired a French attorney, defendant Simon, to collect the Los Angeles County Superior Court judgment against SCEV.

55. In or about May 2002, Defendant Simon filed for sequesters against SCEV's property in the civil court of the Tribunal de Grande Instance de Chalons-en-Champagne, France. ("Chalons Court").

56. In or about June 2002, the Chalons Court delivered three separate orders of sequester on SCEV's assets. The first was for SCEV's buildings, the second was for SCEV's stocks of champagne, and the third was for SCEV's business, including accounts receivable and good will, pending ratification of the California judgment in the same court. A copy of these

sequesters is attached to this matter's original complaint as **Exhibit 22**.

57.    On September 5, 2002, plaintiffs timely filed a motion in the Chalons Court to ratify the California Judgment.  A copy of this motion is attached to this matter's original complaint as **Exhibit 23**.

58.    On February 3, 2003, SCEV entered written pleadings ("memoir") in the Chalons Court contesting the plaintiffs' claim of the validity of the California Judgment.  The memoir contained the following language (translated herein): "*Under the terms of a Contract of Guarantee, PLB engaged themselves to defend SCEV in the California litigation .... The California verdict was made possible by the fraudulent collusion of Gidding, Pivotal, and PLB .... The fraud consisted of settlement between Gidding, Pivotal, and PLB, kept secret from SCEV, for the sum of $150,000 paid by PLB's insurance company to Gidding and Pivotal.  The fraudulent collusion between Gidding, Pivotal, and PLB deprived SCEV of a fair trial.... The sole purpose of the settlement agreement was to deprive SCEV of a defense.... Once PLB engaged themselves in a secret agreement with Gidding and Pivotal they acted against SCEV.... The dishonesty of Gidding and Pivotal is clear, they secretly negotiated with PLB knowing full well that PLB was defending SCEV.... The dishonesty of Gidding and Pivotal should be stigmatized and sanctioned ....*"  A copy of this memoir is attached to this matter's original complaint as **Exhibit 24**.  The memoir included a number of exhibits referred to as "Documents".

59.  Document #10 to SCEV's memoir, filed on February 3, 2003 in the Chalons Court, is an alleged complete version of the redacted Contract of Guarantee previously attached as Appendix A to the Raulet Declaration in support of SCEV's motion to set aside the judgment in the Superior Court of Los Angeles County, and attached as **Exhibit 5** to this matter's original complaint. The fax header on this Contract of Guarantee included in Document #10 reads September 26, 2001.  A copy of Document #10 is attached to this matter's original complaint as **Exhibit 25**.  The fax header appears to be of a French phone number and line.

60.  The alleged complete version of the Contract of Guarantee included in Document #10 contains the same evidence of forgery as in Appendix A of the Raulet Declaration, i.e., the redacted Contract of Guarantee, filed in the Superior Court for the County of Los Angeles, as described in paragraphs 44 and 46 above.  In addition, alleged complete version include in Document #10 contains the following additional evidence of it being a forgery: there are four additional occasions where the word guarantor (garant) appears in its plural form (garants), together with the plural form of the verb, "ont", rather than the singular, "est".  On each occasion, the applicable article also appears in its plural form "les", rather than the singular "le".

61.  The alleged complete version of the Contract of Guarantee included in Document #10 also has a Covenant showing fax headers from SCEV dated May 5, 2001 and May 11, 2001, and from Plantagenet dated May 9, 2001.  These fax headers all appear

to be from European phone numbers and lines. The Covenant purports to reduce the price of the March 2, 2000 sale of SCEV from PLB and PPSA to Levant by one million francs.

62. The alleged complete version of the Contract of Guarantee included in Document #10 was dated February 4, 2000, and the Covenant was dated March 2, 2000. The signatures of Raulet and Anderson on the Covenant are forgeries. Comparison of the signatures of Raulet and Anderson on the alleged complete version of the Contract of Guarantee included in Document #10 (genuine signatures as evidenced by these signatures on numerous other documents obtained throughout the lawsuits described herein) and those on the Covenant demonstrate that the signatures on the Covenant are forgeries.

63. Document #22 to the February 3, 2003 SCEV memoir is a copy of the September 28, 2001 letter from Anderson to Raulet which was also attached as Appendix E to the Raulet Declaration in support of SCEV's motion to set aside the Los Angeles County Superior Court judgment. Document #22 is attached to this matter's original complaint as **Exhibit 15**.

64. Document #7 to the February 3, 2003 SCEV memoir was a complete version of the redacted Raulet letter attached as Appendix H to the Raulet Declaration in support of SCEV's motion to set aside the Los Angeles County Superior Court judgment. Document #7 is attached to this matter's original complaint as **Exhibit 16**.

65.  On February 14, 2003, Levant, which then owned SCEV, placed 1,633,202 Euros (which, at the then current rate of exchange, was approximately the same dollar amount) with the Bar Association of Chalons in exchange for two of the three sequesters on SCEV's stocks of champagne and buildings obtained by Gidding and Pivotal in June, 2002.  A copy of this check is attached to this matter's original complaint as **Exhibit 26**.  As a result of the posting of this security with the Chalons Court, the two sequesters, by agreement of the parties, were duly released.  The third sequester against SCEV's business, accounts receivable, and good will, remained in place.

66.  In or about March, 2003, as is permissible in a French civil action, SCEV demanded that Gidding and Pivotal produce a copy of the settlement agreement in the Los Angeles County lawsuit between Gidding and Pivotal, as plaintiffs, and PLB.  The actual settlement agreement, attached as **Exhibit 5** to the original complaint, was between Gidding and Pivotal as plaintiffs and PCM, PLB, PPSA, Anderson, and Zappettini, as defendants.  Gidding duly provided a copy of the authentic settlement agreement to his French attorney, Defendant Simon, on or about March 12, 2007, together with a letter indicating that it could not be turned over to SCEV without duly notifying Hartford's attorneys, as provided in paragraph 11 of the settlement agreement.

67.  On or about September 12, 2003, Defendant Simon sent a fax from Reims to Seebach & Seebach (attorneys for Pivotal and

Gidding in the Los Angeles County Superior Court lawsuit) requesting that Hartford be duly notified prior to an anticipated filing of the Hartford settlement agreement by Defendant Simon in the Chalons Court. A copy of this letter is attached to this matter's original complaint as **Exhibit 27**.

68. On or about September 14, 2003, attorney Alice Seebach, Esq., sent a letter, by fax and United States mail, to Hartford's Fresno attorneys McCormick, Barstow, Sheppard, Wayte & Carruth, by telefax, duly notifying them, under paragraph 11 of the Hartford settlement agreement, that the Hartford settlement agreement was about to be filed in the Chalons Court. A copy of this letter is attached to this matter's original complaint as **Exhibit 28**.

69. On or about September 14, 2003, Seebach & Seebach faxed, and mailed, by United States mail, a blind copy of the same letter to Defendant Simon in Reims, France advising that Hartford's attorneys had been duly advised of the anticipated use of the settlement agreement in the Chalons Court, and further advising that it would be permissible for Defendant Simon to file the settlement agreement as part of the French civil process. A copy of this letter is attached to this matter's original complaint as **Exhibit 28**.

70. On or about September 16, 2003, Defendant Simon filed a purported French translation of the Hartford settlement agreement with the Chalons Court. This translation was prepared by Madame Bertrand, the translator used by SCEV's lawyers in the

proceeding.    This translation was post-dated to September 30, 2003, and was a translation of a doctored settlement agreement, not of the authentic settlement agreement.    A copy of this post-dated French translation of a doctored version of the Hartford settlement agreement is attached to this matter's original complaint as **Exhibit 29**.

71.    The translation was of a forged agreement because it incorrectly provided (a) that the settlement agreement was dated September 10, 2001, when the authentic settlement agreement was dated September 20, 2001; (b) that the settlement agreement was between Gidding and Pivotal as plaintiffs, and PCM, PLB and "Plantagenet SA", (a non-existent company at that time, so far as plaintiffs are aware) when the authentic settlement agreement was between Gidding and Pivotal, as plaintiffs, and PCM, PLB, and PPSA;    (c) paragraph 4 of the authentic settlement agreement explicitly identifies the settling parties, and includes two sentences and 18 lines of text, while  paragraph 4 of the forged translation contains only one sentence and 11 lines of text; and (d) the forged French  translation is dated September 30, 2003, while it was filed two weeks earlier, on September 16, 2003.    No actual settlement agreement was filed with the Chalons Court on September 16, 2003; the only document filed was the forged English translation.

72.    On or about September 20, 2003, Defendant Simon, on behalf of plaintiffs, but without plaintiffs knowledge or consent, agreed to an order from the Chalons Court dismissing the

23

third sequester against SCEV's business in exchange for Levant, then owner of SCEV, posting a deposit, with the Bar Association of Chalons, a check for the then existing post-judgment interest of 258,552 Euros, together with a bond from Credit Agricole Bank guaranteeing payment of future post-judgment interest at a rate not to exceed 166,320 Euros on an annual basis.  The check is dated November 18, 2003, and the bond is dated October 31, 2003. These are attached, respectively, as **Exhibits 32** and **33** to this matter's original complaint.

73.  On October 1, 2003, SCEV made a motion in the Chalons Court incorrectly alleging that it had received an English version of the Hartford settlement agreement from plaintiffs on September 16, 2003 and demanding a certified French translation. In fact, what had happened is SCEV had received a copy of the forged French translation.  A copy of the motion filed by SCEV is attached to this matter's original complaint as **Exhibit 34**.

74.  Between September, 2003, and March 12, 2004, Gidding attempted, repeatedly and without success, to communicate with Defendant Simon, and finally, frustrated at the lack of communication, hired new French counsel.  After hiring his new French counsel Gidding was finally able to review his file.  He found the forged French translation, a copy of which was filed on September 16, 2003, a copy of the authentic Harford settlement agreement, which Gidding had provided to Defendant Simon in March 2003, and a doctored English version of the Hartford settlement agreement, which may have been the model for part of the forged

French translation, although there are several discrepancies between the forged French translation and the doctored English copy of the Hartford settlement agreement. A copy of the doctored English Hartford settlement agreement is attached to this matter's original complaint as **Exhibit 36**.

75. The doctored English copy of the Hartford settlement agreement contains an additional inaccuracy, over and above those contained in the apparent French translation of the document filed in the Chalons Court on September 16, 2003. The signature page containing Gidding's signatures is different in the doctored copy compared to the analogous signature page in the authentic agreement. [Compare page 5 of **Exhibit 36** with Page 5 of **Exhibit 5,** both attached to this matter's original complaint.] It appears, on information and belief, that this doctored English copy of the Hartford settlement agreement was created not from the authentic settlement agreement provided by Gidding to Defendant Simon, but, instead, from copies of draft faxes sent between Gidding and the settling parties in September, 2001, at which time the settlement agreement was being negotiated and signed. These drafts would have been in the possession of Anderson, Zappettini, PCM, PPSA or PLB. Therefore, on information and belief, plaintiffs aver that inaccurate drafts of the Hartford settlement agreement were delivered to Defendant Simon sometime in the year between March, 2003 and March 12, 2004. Plaintiffs further aver, on information and belief, that the inaccurate drafts were delivered from the United States to

Defendant Simon by United States mail. Finally, plaintiffs aver, on information and belief, that in order for these drafts to have been identified and transmitted from the United States to Defendant Simon, defendants used the wires between the United States and France.

76. On September 22, 2004, SCEV filed a citation to join ("Citation") in the Chalons Court indicating that SCEV had sued PLB in Luxembourg in January, 2002 alleging that PLB, on the basis of a guarantee, owed any money that the Chalons Court might eventually ratify as being due from SCEV to Gidding and Pivotal. A copy of the "citation to join" is attached to this matter's original complaint as **Exhibit 37**.

77. The Citation references the two fraudulent dates from the fraudulent Contract of Guarantee, attached as Appendix A to the Raulet Declaration, and as Document #10 to SCEV's February 3, 2003 memoir in opposition to Gidding and Pivotal's lawsuit in the Chalons Court to ratify the Los Angeles County Superior Court judgment. The two dates referenced are the "Contract of Guarantee, dated February 4, 2000", which was fraudulently included in both the redacted Contract of Guarantee attached to the Raulet Declaration, and the full Contract of Guarantee filed together with the February 3, 2003 memoir; and the fraudulent Covenant dated March 2, 2000, which was attached to the February 3, 2003 memoir as part of Document #10. The reasons why these two dates and the documents referencing them are fraudulent is above described.

78.   The Citation further references the fact that a purported December 3, 2001 judgment from the Los Angeles County Superior Court was attached to the action in the Luxembourg court on the fraudulent Contract of Guarantee.   This was a fraudulent document because the authentic judgment in the Los Angeles County Superior Court was dated March 22, 2002.   The action by SCEV in the Luxembourg court was another effort to present documents both to the Luxembourg court and to the Chalons Court fraudulently representing that PLB, which had been liquidated on April 7, 2000, was responsible for guaranteeing the California judgment in favor of Gidding and Pivotal, and fraudulently avoiding the PPSA guarantee which was provided on the authentic Contract of Guarantee and authentic attached Covenant, both in the Luxembourg court and the Chalons Court, at a time when PPSA was a thriving Paris concern capable of fully paying the Gidding/Pivotal California judgment - in the event it is ratified by the Chalons Court.

79.   On the basis of this Citation, SCEV continues to argue in the Chalons Court action to ratify the California judgment, that if the judgment is ratified, PLB, and not SCEV (or PPSA) would actually owe the judgment.

80.   When filing its Citation SCEV was aware that PLB had been liquidated because the Luxembourg action was filed against "PLB in liquidation".   The Luxembourg court dismissed Raulet's lawsuit on May 24, 2004 because Raulet had failed to prove the California judgment was entered, and not appealed.   A copy of the

May 24, 2004 dismissal is attached to this matter's original complaint as **Exhibit 38**.   Thus, SCEV filed the Citation on September 22, 2004 based on three fraudulent documents, well knowing that the Citation referenced a Luxembourg action which had already been dismissed.  Gidding and Pivotal learned of and received the Citation on September 27, 2004.

81.  On or about February 16, 2005,  Gidding and Pivotal made a motion requesting SCEV to produce a copy of the original Contract of Guarantee, a redacted copy of which is attached as Appendix A to the Raulet Declaration in support of SCEV's motion to set aside the Los Angeles County Superior Court judgment, and a full copy of which is attached as Document #10 to the February 3, 2003 SCEV memoir filed in the Chalons Court in opposition to Gidding and Pivotal's motion to ratify the Los Angeles County Superior Court judgment. (See **Exhibits 5** and **25**, attached to this matter's original complaint).  SCEV responded that they did not possess the originals.  Gidding and Pivotal's motions for relief in the Chalons Court, based upon the non-existence of this document, are pending.  This further supports plaintiffs' claim that the redacted copy of the Contract of Guarantee, produced in the Los Angeles County Superior Court, and the full copy of the Contract of Guarantee, produced in the Chalons Court, are forgeries.

82.  In numerous filings between the commencement of the ratification proceeding on September 5, 2002 and the date of the filing of this complaint, during which period the ratification

proceeding has, at all times been pending, SCEV has continually filed documents with the Chalons Court knowingly repeating the false representations made in SCEV's initial memoir of February 3, 2003.

83. On or about February 14, 2005, SCEV served Pivotal with a complaint that demanded Pivotal to sequester approximately $150,000 in France and to pay fines of over $1,500 per day should they refuse to provide the sequester. SCEV served the complaint on Pivotal via the US mails. A copy of this complaint is attached to this amended complaint as **Exhibit 45.**

84. On or about March 23, 2006, SCEV served Pivotal with a French judgment that required Pivotal to pay 750 Euros per day, for every day it did not sequester 115,067.37 Euros with the Bar Association of Chalons-en-Champagne, France. Parallel with their demand, SCEV maintained that Pivotal had obtained the California judgment by fraud. SCEV served the French judgment on Pivotal via the US mails. A copy of this complaint is attached to this amended complaint as **Exhibit 46.**

### THE FRENCH PENAL SUIT

85. SCEV's defense memoir of February 3, 2003, accused Pivotal, Gidding, and PLB of fraudulent collusion. On May 12, 2003, Raulet brought similar criminal charges before the penal court of the Tribunal de Grande Instance de Paris ("Paris Court"). Raulet's accusations contained the following language: "*The charge of Fraud applies as PLB, in the Guarantee, engaged themselves not only to represent SCEV in the California*

*litigation, but also to pay any eventual awards or judgments. It is obvious that due to fraudulent maneuvers of PLB, the California court ruled against SCEV. Effectively, PLB: (1) in concluding a settlement with Pivotal & Gidding, while keeping SCEV ignorant of this fact, was released from the charges brought against them; and (2) deliberately concealed the Guarantee from the Superior Court of California, under the terms of which they had engaged to pay any judgments taken against SCEV. In this regards, SCEV made a motion before the CA court to review the error in the judgment rendered on December 4, 2001."* These purported criminal charges closely track the lies and fraudulent statements alleged by SCEV in Gidding and Pivotal's civil action to ratify the Los Angeles Superior Court judgment in the Chalons Court. A copy of the May 12, 2003 accusation in the Paris Court is attached to this matter's original complaint as **Exhibit 39**.

86. On November 25, 2003 Raulet amended his criminal accusation to specifically accuse Pivotal and Gidding of fraudulent collusion and forgery. The accusation contained the following language: *"In reality, PLB and Plantagenet were probably engaged, in the deepest secrecy, with discussions with Pivotal & Gidding so that they would desist in their action against Plantagenet; This dissimulation, thanks to which the California Court was kept in ignorance of the Guarantee, constitutes another fraudulent maneuver; The last maneuver of PLB was to organize its own bankruptcy; Since PLB's liquidation, it has been impossible for SCEV complete its procedures (Luxembourg*

*Court), because John Zappettini has completely disappeared ....... Concerning the fraudulent maneuvers of Pivotal and Gidding*: *SCEV and Levant intend to bring to your attention that fact* that *Pivotal and Gidding* are *equally guilty of fraud, in order to obtain a judgement against SCEV in California; Pivotal and Gidding founded the totality of their case against SCEV upon a pretended contract of exclusivity between themselves and SCEV, and from which they beneficiaries; In order to condemn SCEV, the CA court would have had to see this contract; Pivotal and Gidding have never shown this contract to either SCEV or Levant, and it can not be excluded that they submitted a forged contract to the court in order to deceive the judge.*"  A copy of the November 25, 2003 criminal accusation in the Paris Court is attached to this matter's original complaint as **Exhibit 40**.

87.  Raulet's criminal accusations contained a list of the following exhibits:

a)   A Contract of Guarantee dated February 4, 2000;

b)   A Covenant dated March 2, 2000;

c)   A Hartford settlement agreement dated September 10, 2001.

These are, apparently, the same three fraudulent documents which were attached in the Luxembourg lawsuit filed by Raulet.  The first document is, apparently, the same fraudulent Contract of Guarantee filed with the Raulet Declaration in the Los Angeles County Superior Court and the SCEV February 3, 2003 memoir in the Chalons Court.  The second document is, apparently, the same

fraudulent Covenant filed in the February 3, 2003 memoir in the Chalons Court.  The third document is, apparently, the same doctored settlement agreement filed by Defendant Simon in the Chalons Court.

88.  On September 22, 2004, Gidding and Pivotal submitted a defense memoir to the Prosecutor of the French Republic.  A copy of that memoir is attached to this matter's original complaint as **Exhibit 41**.

89.  On October 8, 2004, the Paris Court rejected all of Raulet's charges.  A copy of this rejection is attached to this matter's original complaint as **Exhibit 42**.

90.  On October 18, 2004, Raulet appealed.  A copy of this appeal is attached to this matter's original complaint as **Exhibit 43**.

91.  These charges continue to threaten the plaintiffs with potential fines and imprisonment because the appeal has not yet been resolved.

### DISCOVERY OF THE CRIMINAL SCHEME

92.  Gidding and Pivotal were unaware of the criminal scheme, the false, fraudulent and doctored documents, the intentional false representations, and the forgeries, until on or about March 10, 2004, the date that Gidding's new French counsel obtained from Defendant Simon the file relating to the civil action in the Chalons Court to ratify the California judgment.

93. While Gidding had seen the redacted and forged Contract of Guarantee, attached as Appendix A to the Raulet Declaration, he did not, at that time, suspect it as being a forgery.

94. When reviewing the file he received from his new French counsel on March 14, 2004, Gidding noticed that the Hartford settlement agreement, both the English version and French translation, were doctored forgeries because both documents did not contain PPSA. After making this discovery Gidding realized that the Contract of Guarantee and Covenant, as well as the related letters produced in both SCEV's motion to set aside the Los Angeles County Superior Court judgment, and in SCEV's memoir opposing Gidding's and Pivotal's lawsuit in the Chalons Court to ratify the Los Angeles County Superior Court judgment, were fraudulent.

95. Between March 12, 2004 and September 22, 2004 Gidding came to understand the above described fraudulent acts by defendants intended to obscure PPSA's involvement in the purchase of SCEV, and Gidding described as much in his response to Raulet's May 12, 2003 criminal complaint. When filing his response, however, Gidding was not aware that Raulet had amended the May 12, 2003 criminal complaint on November 25, 2003.

96. On or about March 18, 2004, Gidding's new French counsel, Didier Schonberger, in connection with the motion to ratify the judgment in the Chalons Court, mailed to Gidding, from France to the United States, using the United States mail, a copy of a number of documents which Schonberger obtained from the file

of Gidding's previous attorney, Defendant Simon.  Included in documents attached to the letter were the Contract of Sale between SCEV and PLB dated December 18, 1998, the doctored Hartford settlement agreement, and the forged French translation of the doctored Hartford settlement agreement.  A copy of this letter with the two described attachments is attached as **Exhibit 44**.

## DEFENDANTS JEAN-FRANCOIS RAPENEAU, CHRISTOPHE RAPENEAU AND SAS LES CHAMPS RENIERS

97.  On December 22, 2003, Christophe Rapeneau, acting through SAS Les Champs Reniers, and pursuant to a new Contract of Guarantee with Levant, acquired 100% of the shares of SCEV. Christophe Rapeneau's brother, Jean Francois Rapeneau, became the president of SCEV and renamed the company "SA Charles de Cazanove".  Thus, as of today, these defendants are responsible for SCEV's liabilities, and, since at least December 22, 2003, have directed and controlled SCEV.

## THE PATTERN OF RACKETEERING ACTIVITY

98.  During the relevant times, defendants engaged in a pattern of racketeering activity, and conspired together to engage in such a pattern.  They schemed to commit acts of mail fraud and wire fraud, in violation of 18 U.S.C Sections 1341, 1343.  These acts of mail fraud and wire fraud were designed to, through knowing and intentional misrepresentations and material omissions (including perjury), deprive Plaintiffs Gidding and Pivotal of money and property, that is, their duly obtained judgment against SCEV in the Los Angeles County Superior Court.

34

99. It was part of the scheme to defraud that defendants hid from Gidding and Pivotal that SCEV was not owned by PLB and PPSA, at the time that Anderson, Zappettini, PLB, and the Plantagenet Entities settled the Los Angeles County Superior Court suit, but, rather, was owned by Levant and Raulet. When Gidding and Pivotal amended the lawsuit to name PLB and PPSA as parties, defendants were well aware that (a) PLB had been liquidated on April 7, 2000; (b) SCEV had been sold by PLB and PPSA to Levant and Raulet on March 2, 2000; and (c) at the time of the March 2, 2000 sale, PLB and PPSA entered into a contract of guarantee with Levant and Raulet to provide for their defense at trial and to pay any judgment.

100. It was part of the scheme to defraud that defendants Anderson, Zappettini, PLB, PPSA, and the Plantagenet Entities settled with Gidding and Pivotal by using their insurance company, Hartford, to run up litigation costs and pressure Gidding and Pivotal into a settlement. It was further part of the scheme to defraud to forge letters and documents where SCEV would appear to be the holder of an indemnification agreement with an entity, PLB, that had already been liquidated - rather than with PPSA, a thriving concern that could pay Gidding and Pivotal's judgment against SCEV.

101. It was a part of the scheme to defraud to allow Gidding and Pivotal to obtain a judgment against SCEV in the Los Angeles County Superior Court lawsuit, with the intention of evading and lying to avoid the judgment.

35

102. It was a part of the scheme to defraud that defendants moved to set aside the judgment on September 20, 2002, relying upon a forged Contract of Guarantee between PLB and Levant, where the genuine agreement was between PLB, PPSA and Levant, and intentionally and knowingly attaching the forged agreement to the Raulet Declaration.  It was further part of the scheme to defraud that Raulet intentionally and knowingly attached two letters to his September 17, 2002 declaration, which letters were fraudulently used by defendants as part of their scheme.  The first letter, from Anderson to Raulet, is dated September 28, 2001, one week after the settlement between Gidding and Pivotal and all defendants except for SCEV in the Los Angeles County Superior Court suit, and refers to a promise to pay or indemnify Raulet for the cost of the litigation.  The second letter, dated January 7, 2002, from Raulet to Anderson, refers to a contract, asks for relief, and asks Anderson to settle the matter.

103. It was a part of the scheme to defraud that, when Gidding and Pivotal sought to enforce the California judgment against SCEV in the Chalons Court in France, defendants intentionally and knowingly filed the same forged Contract of Guarantee together with legal filings perpetrating the lie before the Chalons Court that Gidding and Pivotal fraudulently colluded with PLB in the Superior Court of Los Angeles County to obtain a judgment against SCEV.  The alleged collusion was as follows: PLB entered into a contract of guarantee with Levant, and Gidding and Pivotal colluded with PLB to deprive SCEV of its lawyers, thereby

36

causing SCEV to be liable.  This claim of fraud in the Chalons Court, if upheld, would defeat ratification of the judgment.  If the Chalons Court were made aware of the true fact that the authentic Contract of Guarantee also included PPSA, a thriving concern, the claim of fraud would have no merit, and the California judgment would be ratified in due course.

104. On information and belief, plaintiffs aver that it was further part of the scheme to defraud that defendants filed, or caused to be filed, before the Chalons Court, a forged and doctored Hartford settlement agreement from the Los Angeles County Superior Court lawsuit, purporting to show that Gidding and Pivotal settled only with PLB and not with PPSA.  This document was filed with the fraudulent intent to convince the Chalons Court that the judgment should not be ratified because it was obtained by fraud, and to hide from the Chalons Court the true fact that a non-liquidated entity, PPSA, was perfectly able to honor the indemnification agreement with SCEV.  If the defendants presented the genuine Hartford settlement agreement, the Chalons Court would be aware that PPSA settled with Gidding and Pivotal, that the settlement was consistent with the fact that PPSA and PLB sold SCEV to Levant and Raulet, and that the sale and settlement was consistent with the authentic Contract of Guarantee - between PLB and PPSA, on the one hand, and Levant on the other hand.

105. It was further part of the scheme to defraud that defendants intentionally and knowingly filed in the Luxembourg

courts an action against PLB which attached the same forged Contract of Guarantee, with the intent of using the Luxembourg court action as support in the Chalons Court, through a Citation to cause any judgment against SCEV to be entered against the liquidated PLB, thereby depriving Gidding and Pivotal of money and property.

106. It was further part of the scheme to defraud that defendants intentionally and knowingly caused to be filed in the Paris criminal courts, a bogus and baseless criminal action against Gidding and Pivotal using the same forged and fraudulent documents, including the doctored Hartford settlement agreement and the forged and doctored Contract of Guarantee, to further pressure Gidding and Pivotal to abandon their action to ratify the California judgment.

107. It was further part of the scheme to defraud that defendants intentionally and knowingly caused the Paris criminal filings, which included the above-described forgeries, to be filed in the Chalons Court with the specific intent of depriving Gidding and Pivotal of their money and property by seeking to cause the Chalons Court to fail to ratify the California judgment.

108. The defendants, through a pattern of racketeering activity, that is, multiple acts of mail fraud, wire fraud, and perjury, used the courts of the United States, France, and Luxembourg, to further their scheme to steal the amount of the

California judgment, together with interest, held by Gidding and Pivotal against SCEV.

109. It was further part of the scheme to defraud, that defendants intentionally and knowingly used the US mails to demand Pivotal to sequester moneys in France, and to pay fines for refusing to do, with the specific intent of depriving Gidding and Pivotal of approximately $150,000 in cash and/or reducing plaintiffs' eventual award by over $360,000 per year.

110. Defendants used the mails and the wires, or, by their scheme, caused them to be used, on a repeated basis, as part of their pattern of racketeering activity and multiple acts of mail and wire fraud.

111. In particular, the mails were used, among other times, on the following occasions: (a) January 7, 2002 letter from Raulet (in France) to Anderson (in San Francisco); (b) September 20, 2002 motion to set aside the California judgment (from SCEV's attorneys in San Francisco to Gidding's and Pivotal's attorneys in San Francisco); (c) November 14, 2002 reply to Gidding's and Pivotal's response to set aside the judgment (From SCEV's attorneys in San Francisco to Gidding's attorneys in San Francisco); (d) letter from attorney Seebach to Defendant Simon to Hartford's attorneys dated September 14, 2003 (from San Francisco to Fresno, and San Francisco to France); (e) March 10, 2004 letter from Gidding's new French counsel Schonberger to Pivotal (from France to Glen Ellen, Sonoma County; (f) February 14, 2005 letter from SCEV's attorney FIDAL to Pivotal (from

France to Glen Ellen, Sonoma County); (g) March 23, 2006 letter from SCEV's attorney FIDAL to Pivotal (from France to Glen Ellen, Sonoma County).

112. In particular, the wires were used, among other times, on the following occasions: (a) May 5, 2001, May 9, 2001 and May 11, 2001 exchange of faxes between Anderson and Raulet in connection with the forging of the Covenant to the Contract of Guarantee between PPSA, PLB and Levant (between San Francisco and France); (b) Anderson's September 28, 2001 faxed letter to Raulet (San Francisco to France); (c) September 12, 2003 faxed letter from Defendant Simon to attorney Seebach in Los Angeles (France to Los Angeles).

113. As set forth above, the defendants have engaged in a "pattern of racketeering activity", as defined in Section 1961(5) of RICO, by committing and/or conspiring to or aiding and abetting a scheme for at least two such acts of racketeering activity, as described above, within the past ten years. Each such act of racketeering activity was related, had similar purposes, involved the same or similar participants and methods of commission, and had similar results impacting upon similar victims.

114. The multiple acts of racketeering activity committed and/or conspired to or aided and abetted by defendants, as described above, were related to each other and amount to and pose a threat of continued racketeering activity, and, therefore,

constitute a "pattern of racketeering activity", as defined in 18 U.S.C. Section 1961(5).

## ENTERPRISE

115. Defendants carried out their pattern of racketeering activity through an enterprise engaged in interstate commerce and foreign commerce, that is, either (a) the court systems of Los Angeles County, France, and Luxembourg; (b) an association-in-fact of the guarantors of the sale of the shares of SCEV; or (c) the law firms and/or individual attorneys that represent defendants in the court actions filed in Los Angeles County, France, and Luxembourg.  These alternative enterprises are separate and distinct from the pattern of racketeering activity alleged herein.

## USE OF THE MAILS AND WIRES

116. As alleged herein, in furtherance of and for the purpose of executing the scheme and artifice to defraud, and through a pattern of racketeering activity, defendants, on numerous occasions used and caused to be used mail depositories of the United States postal service by both placing and causing to be placed mailable matter in said depositories and by removing and causing to be removed mailable matter from said depositories, each such use of the mails in connection with the scheme and artifice to defraud and to obtain money by means of false pretenses, constituting the offense of mail fraud as proscribed and prohibited by 18 U.S.C. Section 1341.

41

117. During the relevant times, and in furtherance of and for the purpose of executing the scheme and artifice to defraud, and through a pattern of racketeering activity, defendants, on numerous occasions, used and caused to be used wire communications in interstate and foreign commerce, by both making and causing to be made telephone calls, transmission of faxes, and other wire communications, as proscribed and prohibited by 18 U.S.C. Section 1343.

## FIRST CLAIM FOR RELIEF

### (VIOLATION OF 18 U.S.C. SECTION 1962(c))

118. Plaintiffs incorporate and re-allege paragraphs 1 through 117, as though fully set out herein.

119. Gidding and Pivotal are "persons" within the meaning of 18 U.S.C. Sections 1961(3) and 1964(c).

120. Defendants, Anderson, Zappettini, Lemal, PCM, Plantagenet Capital America LLC, Plantagenet Capital Fund LP, Plantagenet Capital Fund LP II, PLB, PPSA, SCEV, Hauchart, Raulet, Jean-Francois Rapeneau, Christophe Rapeneau, Levant, Reniers, Simon and DOES 1 through 100 inclusive are each a "person" within the meaning of 18 U.S.C. Sections 1961(3) and 1964(c).

121. The Superior Court of Los Angeles County, the Chalons Court, and the Luxembourg Court are an "enterprise" within the meaning of 18 U.S.C. Sections 1961(4) and 1962(c), which enterprise was engaged in and the activities of which affected interstate and foreign commerce during the relevant times;

42

alternatively, the defendants were an association-in-fact of the guarantors of the sale of the shares of SCEV, which enterprise was engaged in and the activities of which affected, interstate and foreign commerce; or alternatively, the law firms representing the defendants in the courts of Los Angeles County, France, and Luxembourg, are an "enterprise" within the meaning of 18 U.S.C. Sections 1961(4) and 1962(c), which enterprise was engaged in and the activities of which affected interstate and foreign commerce during the relevant times.

122. Defendants Anderson, Zappettini, Lemal, PCM, Plantagenet Capital America LLC, Plantagenet Capital Fund LP, Plantagenet Capital Fund LP II, PLB, PPSA, SCEV, Hauchart, Raulet, Jean-Francois Rapeneau, Christophe Rapeneau, Levant, Reniers, Simon and DOES 1 through 100 inclusive were each associated with an enterprise, that is, either (a) the courts of Los Angeles County, France and Luxembourg; (b) an association-in-fact of the guarantors of the sale of the shares of SCEV; or (c) the law firms representing the defendants in the courts of Los Angeles County, France, and Luxembourg, and did conduct, participate, manage, operate, control, or manipulate, directly or indirectly, the affairs of any of these enterprises through a pattern of racketeering activity within the meaning of 18 U.S.C. Sections 1961(1)(B) and 1961(E) and 1961(5) and 1962(c), to wit:

    (a) Multiple instances of mail fraud in violation of 18 U.S.C. Section 1341;

    (b) Multiple instances of wire fraud in violation of 18

43

U.S.C. Section 1343; and

(c)   Multiple instances of forgery, perjury and intentional misrepresentation.

123. By reason of the violation of 18 U.S.C. Section 1962(c) committed by Defendants Anderson, Zappettini, Lemal, PCM, Plantagenet Capital America LLC, Plantagenet Capital Fund LP, Plantagenet Capital Fund LP II, PLB, PPSA, SCEV, Raulet, Jean-Francois Rapeneau, Christophe Rapeneau, Levant, Reniers, Simon and DOES 1 through 100 inclusive, Gidding and Pivotal have suffered and are continuing to suffer damages in a yet to be determined amount, but believed to be not less than approximately $7,000,000 within the meaning of 18 U.S.C. Section 1964(c).

### SECOND CLAIM FOR RELIEF

**(Violation of 18 U.S.C. Section 1962(d) by Conspiracy to Violate Section 1962(c))**

124. Plaintiffs incorporate and re-allege the preceding paragraphs 1 through 117, as if fully set out herein.

125. 109. Gidding and Pivotal are "persons" within the meaning of 18 U.S.C. Sections 1961(3) and 1964(c).

126. Defendants, Anderson, Zappettini, Lemal, PCM, Plantagenet Capital America LLC, Plantagenet Capital Fund LP, Plantagenet Capital Fund LP II, PLB, PPSA SCEV, Hauchart, Raulet, Jean-Francois Rapeneau, Christophe Rapeneau, Levant, Reniers, Simon and DOES 1 through 100 inclusive are each a "person" within the meaning of 18 U.S.C. Sections 1961(3) and 1964(c).

127. The Superior Court of Los Angeles County, the Chalons Court and the Luxembourg Court are an "enterprise" within the

44

meaning of 18 U.S.C. Sections 1961(4) and 1962(c), which enterprise was engaged in and the activities of which affected interstate and foreign commerce during the relevant times; alternatively, the defendants were an association-in-fact of the guarantors of the sale of the shares of SCEV, which enterprise was engaged in and the activities of which affected, interstate and foreign commerce; or alternatively, the law firms representing the defendants in the courts of Los Angeles County, France, and Luxembourg, which enterprise was engaged in and the activities of which affected, interstate and foreign commerce.

128. Defendants Anderson, Zappettini, Lemal, PCM, Plantagenet Capital America LLC, Plantagenet Capital Fund LP, Plantagenet Capital Fund LP II, PLB, PPSA, SCEV, Hauchart, Raulet, Jean-Francois Rapeneau, Christophe Rapeneau, Levant, Reniers, Simon and DOES 1 through 100 inclusive were each associated with an enterprise, that is, either (a) the courts of Los Angeles County, France and Luxembourg; (b) an association-in-fact of the guarantors of the sale of the shares of SCEV; or alternatively, the law firms representing the defendants in the courts of Los Angeles County, France, and Luxembourg, and did conspire within the meaning of 18 U.S.C. Section 1962(d) to violate Section 1962(c), that is, they conspired to conduct, participate, manage, operate, control, or manipulate, directly or indirectly, the affairs of any of these enterprises through a pattern of racketeering activity within the meaning of 18 U.S.C. Sections 1961(1)(B) and 1961(E) and 1961(5) and 1962(c), to wit:

(a)    Multiple instances of mail fraud in violation of 18 U.S.C. Section 1341;

(b)    Multiple instances of wire fraud in violation of 18 U.S.C. Section 1343; and

(c)    Multiple instances of forgery, perjury and intentional misrepresentation.

129. By reason of the violation of 18 U.S.C. Section 1962(c) committed by Defendants Anderson, Zappettini, Lemal, PCM, Plantagenet Capital America LLC, Plantagenet Capital Fund LP, Plantagenet Capital Fund LP II, PLB, PPSA, SCEV, Hauchart, Raulet, Jean-Francois Rapeneau, Christophe Rapeneau, Levant, Reniers, Simon and DOES 1 through 100 inclusive, Gidding and Pivotal have suffered and are continuing to suffer damages in a yet to be determined amount, but believed to be not less than approximately $7,000,000 within the meaning of 18 U.S.C. Section 1964(c).

130. Defendants entered into an agreement with each other to join in the conspiracy to violate 18 U.S.C. Section 1962©). Each defendant entered into an agreement to join the conspiracy, and took acts in the furtherance of the conspiracy and knowingly participated in the conspiracy. The purpose of the conspiracy was to the economic benefit of the defendants, and damage to the plaintiffs was a natural consequence of this conspiracy. The conspirators carried out the scheme and each conspirator was put on notice of the general nature of the conspiracy, that the conspiracy extended beyond the individual role of any single

member, and that the conspiratorial venture functioned as a continuing unit for a common purpose. The defendants adopted the goal of furthering and facilitating the criminal endeavor. Their stake in the criminal venture was in making profits, which they knew could come only from their informed and interested cooperation with each other, and their active assistance, stimulation, and instigation of legal proceedings designed to place their frauds before the Courts of the United States, France and Luxembourg.

131. Defendants, together with each member of the conspiracy, agreed and conspired to violate 18 U.S.C. Section 1962(c) by participating, directly and indirectly, in the operation, management and manipulation of the affairs of the enterprise through a pattern of racketeering activity, including an agreement that the conspirators, or one of them, would commit or cause the commission of two or more racketeering acts constituting such a pattern.

### THIRD CLAIM FOR RELIEF

#### (For Action on Judgment)

132. Plaintiffs incorporate and re-allege the preceding paragraphs 1 through 117, as if fully set out herein.

133. Defendants Anderson, Zappettini, Lemal, PCM, Plantagenet Capital America LLC, Plantagenet Capital Fund LP, Plantagenet Capital Fund LP II, PLB, PPSA, SCEV, Raulet, Jean-Francois Rapeneau, Christophe Rapeneau, Levant, Reniers, Simon and DOES 1 through 100 inclusive have acted in contempt of the

47

California judgment in at least the following ways: (a) participating, directly or indirectly, in the above described patterns of racketeering and (b) participating, directly or indirectly, in the above described forgeries, perjuries, and intentional misrepresentations.

134. As a result of the defendants' contempt of the judgment, Gidding and Pivotal have suffered and are continuing to suffer damages in a yet to be determined amount, but believed to be not less than approximately $7,000,000.

### FOURTH CLAIM FOR RELIEF

### (For Unjust Enrichment)

135. Plaintiffs incorporate and re-allege the preceding paragraphs 1 through 117, as if fully set out herein.

136. As set forth in greater detail above, Defendants Anderson, Zappettini, Lemal, PCM, Plantagenet Capital America LLC, Plantagenet Capital Fund LP, Plantagenet Capital Fund LP II, PLB, PPSA, SCEV, Raulet, Jean-Francois Rapeneau, Christophe Rapeneau, Levant, Reniers, Simon and DOES 1 through 100 inclusive, have and are continuing to contemptuously avoid payment of the California judgment, including all applicable interest, and therefore seek to retain benefits to which they are not entitled.

137. By virtue of the forgoing conduct, plaintiffs are entitled to restitution from defendants in an amount to be proven at trial, but believed to be not less than approximately $7,000,000.

## FIFTH CLAIM FOR RELIEF

### (For Accounting)

138. Plaintiffs incorporate and re-allege the preceding paragraphs 1 through 117, as if fully set out herein.

139. As set forth in greater detail above, Defendants Anderson, Zappettini, Lemal, PCM, Plantagenet Capital America LLC, Plantagenet Capital Fund LP, Plantagenet Capital Fund LP II, PLB, PPSA, SCEV, Raulet, Jean-Francois Rapeneau, Christophe Rapeneau, Levant, Reniers, Simon and DOES 1 through 100 inclusive, have and are continuing to contemptuously avoid payment of the California judgment, including all applicable interest.

140. The amount of money due from defendants to plaintiffs is unknown at this time and cannot be ascertained without an accounting of the amounts defendants have retained through their contemptuously avoidance of payment of the California judgment.

### PRAYER FOR RELIEF

WHEREFORE, Gidding and Pivotal prays:

141. That judgment be entered against Defendants Anderson, Zappettini, Lemal, PCM, Plantagenet Capital America LLC, Plantagenet Capital Fund LP, Plantagenet Capital Fund LP II, PLB, PPSA, SCEV, Hauchart, Raulet, Jean-Francois Rapeneau, Christophe Rapeneau, Levant, Reniers, Simon and DOES 1 through 100 inclusive, each of them jointly and severally:

(a)    In an undetermined amount, but not less than Seven Million Dollars ($7,000,000) upon the First Claim for

49

Relief, for violation of 18 U.S.C. Section 1962(c), the sum duly trebled in accordance with 18 U.S.C. Section 1964(c).

(b)  In an undetermined amount, but not less than Seven Million Dollars ($7,000,000) upon the Second Claim for Relief, for violation of 18 U.S.C. Section 1962(d) by conspiracy to violate 18 U.S.C. Section 1962(c), the sum duly trebled in accordance with 18 U.S.C. Section 1964(c).

(c)  In an undetermined amount, but not less than Seven Million Dollars ($7,000,000) upon the Third Claim for Relief, an Action on the California judgment.

(d)  Disgorgement of defendants' unjust enrichment and creation of a constructive trust upon the Third Claim for Relief, Unjust Enrichment.

(e)  Upon the Fourth Claim for Relief, an accounting from defendants of all benefits, consideration and profits received directly or indirectly or underlying.

(f)  For the costs of suit including reasonable attorney's fees in accordance with 18 U.S.C. Section 1964(c).

(g)  In addition, Gidding and Pivotal pray for equitable relief against defendants in the form of such injunctive and related relief as might be appropriate in accordance with 18 U.S.C. Section 1964(a) including:

(i)    Reasonable restrictions on the future activities and investments of defendants.

(ii)     An equitable accounting for all benefits, consideration and profits received directly or indirectly or underlying, including but not limited to, the imposition of a constructive trust with tracing.

(iii)    The imposition and execution of equitable liens.

(iv)     Indemnification for any and all sums and losses that may be judged to be due or payable from Gidding and Pivotal as a consequence of the defendants' conduct alleged herein.

(v)      Any restrictions which may be appropriate on future conduct or activities.

(vi)     For such other damages, relief and pre and post-judgment interest as the Court may deem just and proper.

     GIDDING AND PIVOTAL HEREBY DEMAND A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.

                              Respectfully submitted,

Dated: December *17*, 2007    **COHEN & PAIK LLP**

                         By: _____
                              DAVID J. COHEN, ESQ.

                              Attorneys for Plaintiffs
                              **John Gidding and Pivotal, Inc.**

51

**VERIFICATION BY JOHN R. GIDDING**

My name is John R. Gidding, and I am a plaintiff herein, and owner of Pivotal, Inc., the other plaintiff herein.

I have read each and every paragraph of the attached first amended complaint alleging violations of the Racketeer Influence and Corrupt Organization Act, and other State of California common law counts, and the allegations in the complaint are true and correct to the best of my knowledge and belief.

I declare under penalty of perjury under the laws of the State of California, that the foregoing is true and correct.

Date: Dec. 17 2007

John R. Gidding