1  MATTHEW F. QUINT, ESQ.
   California Bar No. 54369
2  WILSON & QUINT LLP
   250 Montgomery Street, 11th Floor
3  San Francisco, California 94104
   Telephone: 415.288.6700
4  Facsimile: 415.398.1608
   Email: mfquint@aol.com
5
   Attorneys for Defendants
6

7

8                    UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10

11

12 JOHN GIDDING, an individual and PIVOTAL )   CASE NO.  C-07-4755 JSW
   INC., a California corporation,         )
13                                         )   **MEMORANDUM OF POINTS AND**
                   Plaintiffs,             )   **AUTHORITIES IN SUPPORT OF**
14                                         )   **MOTION TO DISMISS ACTION**
              vs.                          )   **PURSUANT TO FED. R. CIV. P. RULE**
15                                         )   **12(b)(1), 12(b)(5), and 12(b)(6)**
   DEREK ANDERSON, et al., and DOES 1      )
16 through 100, inclusive,                 )   Date:        March 28, 2008
                                           )   Time:        9:00 A.M.
17                 Defendants.             )   Courtroom:  2, 17th Floor
                                           )   Judge:       Hon. Jeffrey S. White
18 _____)

19

20

21

22

23

24

25

26

27

28

---

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ……………………………………………………….. 1

DISCUSSION AND SUMMARY OF THE
ALLEGATIONS OF THE FIRST AMENDED COMPLAINT………………… 2

ARGUMENT……………………………………………………….. 5

    I.  Plaintiffs Have Not Sufficiently Served Either PLB or PPSA………… 5

    II.  Plaintiffs Fail to State a Claim That is Plausible on its Face……........ 7

    III.  Plaintiffs Fail to State A Claim Under RICO………………….......  11

        A.  Plaintiffs Do Not Identify Any Predicate Acts of
           Racketeering Activity ……………………………………….. 12

           1. None of the alleged predicate acts constitute mail
             or wire fraud……………………………………….... 13

           2. Mail and wire fraud are only predicate acts if they
             are the proximate cause of Plaintiffs' injuries…………. 16

        B.  The FAC Does Not Allege a "Pattern"……………..…………. 18

           1. The alleged predicate acts lack sufficient duration…….. 19

           2. The alleged predicate acts only target one "victim."….. 20

    IV.  Plaintiffs Fail To State A Claim For Conspiracy To Violate RICO….. 21

    V.  The Remainder Of The Action Should Be Dismissed For Lack
       Of Subject Matter Jurisdiction……………………………………... 22

CONCLUSION……………………………………………..………………. 22

## <u>TABLE OF AUTHORITIES</u>

**<u>Federal Statutes</u>**

18 U.S.C. § 1341……………………………………………………………….  12

18 U.S.C. § 1343 ..…………………………………………………………..  12

18 U.S.C. § 1961 …………………………………………………………..  1

18 U.S.C. § 1962 ……………………………………………............  11, 21, 22

18 U.S.C. § 1964(c) …………………………………………………………  12

28 U.S.C. §1367(c)(3) ……………………………………………………  22

**<u>Federal Rules</u>**

Federal Rule of Civil Procedure 4 …………………………………………...  5, 6

Federal Rule of Civil Procedure 10(c) …………………………………………  9

Federal Rule of Civil Procedure 12(b) …………………………………………  1

**<u>Federal Legislative History</u>**

S. Rep. No. 91-617, 91st Cong., 1st Sess. 161, at 76 (1969) ………………..……  11

**<u>California Rules and Statutes</u>**

CCP § 415.95 …………………………………………………………...  5

**<u>Supreme Court Cases</u>**

*American National Bank & Trust co. v. Haroco, Inc.,* 473 U.S. 606 (1985) ……..  17

*Anza v. Ideal Steel Supply Corp.*126 S.Ct. 1991 (2006) …………………………..  17

*Bell Atlantic Corp. v. Twombly*, 127 U.S. 1955, 1974 (2007) ………………..….  7

*H.J., Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229 (1989) ……………18, 19, 20

*Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985) ……………………………..  17

*Washington v. Recuenco,* 126 S.Ct. 2546, 2551 (2006) ……………………….…  12

**Ninth Circuit Cases**

*Howard v. America Online, Inc.,* 208 F.3d 741 (9th Cir. 2000) ……………… 18, 19

*Medallion Television Enters., Inc. v. SelecTV of Cal., Inc.,*
833 F.2d 1360, 1363-64 (9th Cir.1988) …………………………………….. 19

*Ove v. Gwinn,* 264 F.3d 817 (9th Cir.2001) …………………………………… 12

*Poulos v. Caesars World, Inc.* 379 F.3d 654 (9th Cir. 2004) ……………….. 16

*Religious Tech. Ctr. v. Wollersheim,* 971 F.2d 364, 366 (9th Cir.1992) ………… 19

*Sanville v. Bank of America National Trust & Savings Ass' n,*
18 Fed. Appx. 500, 501 (9th Cir. 2001) …………………………………….. 12

*Sever v. Alaska Pulp Corp.,* 978 F.2d 1529, 1535-36 (9th Cir.1992) ……………. 19

*Steam Press Holdings, Inc. v. Hawaii Teamsters,*
*Allied Workers Union, Local 996,* 302 F.3d 998 (9th Cir. 2002) ………………… 19

*United States v. Rogers,* 321 F.3d 1226 (9th Cir. 2003) ………………………….. 12

*United States v. Somsamouth*, 352 F.3d 1271 (9th Cir. 2003) …………………….. 13

**Other Cases**

*7 Appletree Square I, Ltd. P'ship v. W.R. Grace & Co.,*
29 F.3d 1283 (8th Cir. 1994) ……………………………………………………… 16

*Blount Fin. Servs. v. Walter E. Heller & Co.,*
819 F.2d 151 (6th Cir.1987)), *cert. denied* 496 U.S. 926 (1990) …………………. 16

*Brown v. Cassens Transp. Co.*, 492 F.3d 640 (6th Cir. July 10, 2007) …………… 16

*China Trust Bank of New York v. Standard Chartered Bank,*
*PLC,* 981 F.Supp. 282 S.D.N.Y.1997) ………………………………………… 21

*Chisholm v. Transouth Fin. Corp.*, 95 F.3d 331 (4th Cir. 1996) …………..……… 16

*Condict v. Condict*, 826 F.2d 923 (10th Cir.1987) ………………………………… 21

*County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295 (2nd Cir.1990) ….. 16

*CPF Premium Funding, Inc. v. Ferrarini,* No. 95 Civ. 4621,
1997 WL 158361 (S.D.N.Y. April 3, 1997) ……………………………………… 20

*Dempsey v. Sanders,* 132 F.Supp.2D 222 228 (S.D.N.Y. 2001) …………………. 20

*Discon, Inc. v. NYNEX Corp.,* 93 F.3d 1055, 1064 (2d Cir. 1996) ……………….. 21

*Edmondson & Gallagher v. Alban Towers Tenants Ass'n,*
48 F.3d 1260 (D.C. Cir. 1995) ……………………………………………………… 21

*In re Anschuetz & Co., GmbH*, 754 F.2d 602 (5th Cir. 1985) …………..………… 6

*In re Bank of Credit and Commerce Intern.l Depositors Litigation,*
1992 WL 696398 (C.D. Cal. 1992) …………………………………………………… 22

*Jennings v. Auto Meter Products, Inc.*, 495 F.3d 466 (7th Cir. 2007) ……………. 20

*Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153 (3d Cir. 1993) ……..………….. 21

*Pagel v. Washington Mut. Bank, Inc.,* 153 Fed.Appx. 498 (10th Cir. 2005) ……... 21

*Pelletier v. Zweifel*, 921 F.2d 1465 (11th Cir. 1991) ………………………………16

*Pobursky v. Madera County*, 2007 WL 4557090 (E.D.Cal. 2007) ……………….. 7

*Republic of Colombia v. Diageo North America,*
No. 04-CV-4372, 2007 WL 1813744 (E.D.N.Y. Jun. 19, 2007) …………………. 7

*River City Markets, Inc. v. Fleming Foods West, Inc.,*
960 F.2d 1458, 1464 (9th Cir. 1992) …………………………………………………… 19

*Sandwich Chef of Texas, Inc. v.*
*Reliance National Indemnity Insurance Co.*, 319 F.3d 205 (5th Cir. 2003) ……… 16

*Turner v. Cook*, 362 F.3d 1219, 1229 (9th Cir. 2004) …………………………… 20

*Vandenbroeck v. Commonpoint Mortgage Co.*, 210 F.3d 696 (6th Cir. 2000) …… 16

*World Wrestling Entertainment, Inc. v. Jakks Pacific, Inc.,*
No. 04-CV-8223 (2007 WL 4623027 S.D. N. Y. Dec. 21, 2007) ………………… 7

**Other Authorities**

4B, Wright and Miller, *Federal Practice & Procedure* § 1134 …………………… 6

**INTRODUCTION**

This case stems from a garden-variety commercial dispute in which Plaintiffs, after extracting a settlement from these moving defendants, obtained a judgment against a foreign corporation, defendant SCEV, and had trouble collecting that judgment.  Out of frustration, Plaintiffs have fallen back on the last resort of the frustrated litigant, the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.,* and  sued everyone in sight, including their own French attorney, alleging a vast conspiracy to make their judgment uncollectible.  Ironically, because Plaintiffs have had difficulty collecting from the judgment debtor defendant, they are now trying to come back and get more money from parties who long ago settled with and paid Plaintiffs to be rid of their aggressive and vexatious litigation tactics. This is a classic misuse of the RICO statute.  Plaintiffs have not alleged, nor can they allege, facts sufficient to state a civil RICO claim. Defendants therefore move pursuant to Rule 12(b)(6) for dismissal of plaintiffs' RICO and conspiracy to violate RICO claims.  Because there is no other basis alleged for the exercise of federal jurisdiction, the Defendants further move for dismissal of the entire action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

Moving defendants here are Plantagenet Capital Management, LLC (styled in the complaint, "PCM"), Plantagenet Partners SA (styled in the complaint, "PPSA"), PLB Holdings SA (styled in the complaint "PLB"), and Derek Anderson (an individual who associated with the Plantagenet entities. PLB and PPSA also move for dismissal pursuant to Rule 12(b)(5) because they have not been effectively served with process.   The complaint also names moving defendants Plantagenet Capital Management LLC, Plantagenet Capital America, LLC, Plantagenet Capital Fund LP, and Plantagenet Capital Fund LP II.  However, none of the FAC's allegations appear to pertain to any of the entities listed in the last sentence. As these last four Plantagenet entities are not further mentioned in the FAC, they should be dismissed as improvidently and improperly named.

1

1
2

## DISCUSSION AND SUMMARY OF THE ALLEGATIONS OF THE
## FIRST AMENDED COMPLAINT

3

4

In December 1988, PLB and PPSA acquired control of SA Societe Champenoise

D'Expolitation Vinocole ("SCEV") a French champagne producer.  FAC ¶45, Ex. 14.  Some

5

seven months later, in July 1999, Plaintiffs Gidding and Pivotal filed suit against SCEV and  one

6

of the Plantagenet entities in Los Angeles County Superior Court (the "California State Lawsuit").

7

In that lawsuit, Plaintiffs alleged that SCEV breached oral agreements to make them SCEV's

8

exclusive agents for the distribution of SCEV champagne in the United States.  FAC ¶26, Ex. 1.

9

10

The Plantagenet entities did not retain their ownership interest in SCEV very long.  In

March 2000, while the California State Lawsuit was still pending, defendant SA Compagnie Des

11

Vins du Levant ("Levant") acquired SCEV.  FAC ¶18.  Since March, 2000, none of the moving

12

13

defendants have had any ownership interest or involvement in SCEV or its champagne business.

14

In connection with the sale of SCEV to Levant, defendant PLB executed a document in

15

favor of the purchaser, Levant, entitled "Convention De Garantie" ("Contract of Guaranty")

16

17

pursuant to which PLB agreed to indemnify the purchaser, Levant, from any liability in the

pending California State Court Lawsuit. FAC, Exhibit 11.

18

19

In May 2001, Gidding/Pivotal added PPSA and PLB as defendants in the California State

20

Court Lawsuit (FAC ¶29).  In September, 2001, the Plantagenet entities' insurer, Hartford,

21

negotiated a settlement on behalf of all of its insureds with Pivotal and Gidding.  Pursuant to that

22

settlement, defendants paid Gidding and Pivotal $150,000.  FAC ¶34.  The settlement agreement,

23

24

which included defendants Anderson, PLB, PPSA and PPM (but not SCEV) is attached as Exhibit

5 to the Complaint.  Under the express terms of the settlement agreement, all claims set forth in

25

26

the California State Court Lawsuit were dismissed <u>with prejudice</u>.[1]

27

28

---

[1] Plaintiffs herein allege that a different version of the settlement agreement was produced in subsequent
litigation in France and that second version (Exhibit 36) was a "forgery."  FAC ¶74.  The use of the word

2

After settling, Hartford no longer bore the defense costs of the Los Angeles County Superior Court litigation. Mr. Anderson wrote to the principal of Levant saying that he had found new counsel for SCEV (as the Hartford-selected counsel had withdrawn) but the reserve account was "exhausted." Therefore, he asked for SCEV's "temporary financial assistance" to continue the defense. FAC, Ex. 15. SCEV did not provide that assistance. Instead, in early December 2001, SCEV failed to appear in court to defend itself, and the California State Court subsequently entered judgment in favor of Plaintiffs and against SCEV for approximately $1.5 million. FAC §37.

The remaining allegations in the FAC involve (1) SCEV's efforts to set aside the California State Court judgment and (2) Gidding and Pivotal's attempt to have that judgment ratified in France and to collect it. Moving defendants were not parties to any of those court proceedings. Between May and September 2002, plaintiffs filed actions in France to ratify the California State Court judgment and obtained orders from the French court sequestering SCEV's assets. FAC 54-57. Apparently, SCEV vigorously defended itself. It moved, in the Los Angeles County Superior Court, to set aside the California State court judgment (FAC 39) and it alleged in the French court that the California State court judgment was invalid (FAC ¶58). In an effort to set aside the judgment, SCEV argued that it had been mislead into believing that Mr. Anderson would be protecting its interests in the California State Court Lawsuit (FAC, Ex. 19). To support this argument, SCEV produced a copy of the Contract of Guaranty pursuant to

---

"forgery" appears to be misplaced: Plaintiffs do not seem to contend that any signature on the document was forged but, rather, that the content of the document was altered in some fashion. An examination of the two versions of the settlement agreement (Exhibits 5 and 36) shows that Gidding signed each of them but that Hartford, on behalf of Plantagenet entities appears to have signed only Exhibit 5 – (the Hartford signature on Exhibit 36 appears to be a copy of the actual signature on Exhibit 5). In any event, whatever differences there are between the documents are minor, and completely irrelevant. Both identify the settling defendants the same way – "Plantagenet Capital Management, LLC, PLB Holdings, Plantagenet S.A. (formerly Plantagenet S.A.R.L.) [that is, PPSA], Derek Anderson, and John Zappatini." Both forms of

1  which PLB had agreed to indemnify SCEV for liabilities associated with the California State court

2  action.  FAC 39, Ex. 10.

3      Plaintiffs contend that the Contract of Guaranty produced by SCEV is another "forgery."

4  FAC ¶44.  Once again, by using the word "forgery," plaintiffs do not contend that anyone's

5  signature on this document was in fact forged, but, rather, that the original document was altered.

6

7  In this case, Plaintiffs allege that the document was altered to remove the identity of a second

8  indemnitor, the solvent company PPSA, leaving only the single indemnitor, PLB, which at this

9  point had been liquidated and had no money or assets.  FAC ¶¶44-46.[2]  While Plaintiffs allege that

10 the Contract of Guaranty was "forged" to suppress PPSA's identity, they have not and cannot

11 explain why SCEV would want to deprive itself of a solvent indemnitor by deleting that

12 indemnitor from the Contract of Guaranty. Nor can Plaintiffs explain how that alleged suppression

13 of an additional solvent guarantor would or could have helped SCEV set aside the judgment

14 pending against it.  In any case, the Los Angeles County Superior Court denied SCEV's motion

15 and refused to set aside the judgment.  Thus, any damage plaintiffs herein conceivably might have

16 sustained by virtue of SCEV's presentation to the court of an allegedly altered document never

17

18 occurred.

19      Thereafter, the FAC describes Plaintiffs' attempts to ratify their judgment in the French

20 court, and SCEV's vigorous efforts to prevent that from happening.  In conjunction with these

21 activities, SCEV apparently filed separate litigation against Pivotal in France, obtained a judgment

22

23 _____

24 settlement agreement provide that all claims against Anderson and the released Plantagenet entities be
   dismissed, with prejudice."

25 [2] It is important to note that plaintiffs do not attach a copy of this alleged "true" Contract of Guaranty
   containing PPSA's indemnity.  Plaintiffs do not even claim to have ever seen such a document or heard

26 anyone ever refer to its existence. While not relevant to the pending  motions, it is important for the Court
   to understand that this case is never going anywhere because plaintiffs' imagined PPSA Contract of

27 Guaranty never existed.  PPSA had conveyed its interest in SCEV to PLB prior to the sale to Levant.  At
   the time of that sale, PLB was the only owner of SCEV and, for that reason, was the only indemnitor under

28 the Contract of Guarantee.

against Pivotal in France, and filed criminal charges against Plaintiffs in France (FAC ¶¶83-85).

The litigation continues in Europe, with SCEV and Plaintiffs exchanging charges of fraud and other misconduct against each other.  Gidding and Pivotal have now, however, opened a new front in this Court, filing the RICO complaint that is the subject of this motion.

## ARGUMENT

## I.  <u>Plaintiffs Have Not Sufficiently Served Either PLB or PPSA</u>

The only service plaintiffs attempted on either PLB (which was incorporated in Luxembourg before it was liquidated) or PPSA (incorporated in France and now in the process of formal liquidation) was attempted service through Derek Anderson, who resides in Marin County, California. While Mr. Anderson had an ownership interest in both PPSA and PLB, he has not been actively involved in either entity for years. More specifically he is not, and at the time of attempted service was not, an officer, managing or general agent, nor any other agent authorized by appointment or by law to receive service of process for either PPSA or PLB.  Furthermore, neither PLB nor PPSA maintained any office in the State of California.  See Declaration of Derek Anderson, filed concurrently herewith.

 Federal Rule 4(h)(1) provides two methods by which a corporation can be served in the Northern District of California.  These two methods are:  (1) in the manner prescribed by Rule 4(e)(1) for serving an individual; or (2) or by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and--if the agent is one authorized by statute and the statute so requires--by also mailing a copy of each to the defendant;

Rule 4(e)(1), in turn, allows service "pursuant to the law of the state" in which the district court is located—California.  Under California CCP§ 415.95, service on a business organization can be made by 1) service on a registered agent, or 2) "by leaving a copy of the summons and

complaint during usual office hours with the person who is apparently in charge of the office of that business organization, and by thereafter mailing a copy of the summons and complaint by first-class mail, postage prepaid, to the person to be served at the place where a copy of the summons and complaint was left." Since neither PPSA nor PLB has offices where service was attempted on Mr. Anderson, and since Mr. Anderson was not an officer, managing agent, or agent for service of process, there was no valid service under Rule4(h)(1).

Federal Rule of Civil Procedure 4(h)(2) provides that service on a foreign corporation "at a place not within any judicial district of the United States, [is to be done] in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)." In turn, Rule 4(f) states such service is to be made by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents; Both France and Luxembourg are signatories to the Hague Convention. *In re Anschuetz & Co., GmbH,* 754 F.2d 602, 604 n.1 (5th Cir. 1985). Article 2 of the Convention requires that all signatory nations must designate a "Central Authority" whose responsibility it is to accept requests of service from any other signatory nation. The Central Authority in the country of service will then, pursuant to Articles 4 and 5 of the Convention, serve the defendant named in the documents according to its own local laws or pursuant to the method requested by the serving party.. 4B, Wright and Miller, *Federal Practice & Procedure* § 1134.

Plaintiffs did not attempt any of this. Instead, they simply attempted to serve these foreign corporations as if they could do so in the Northern District of California, by serving Derek Anderson, an individual formerly associated with the foreign entities, who happened to live in the United States. No corporation, let alone a foreign one, can be served that way. PPSA and PLB are therefore entitled to an order granting their motion to dismiss for insufficiency of service of process.

6

## II.  Plaintiffs Fail to State a Claim That is Plausible on its Face

Although this motion assumes *arguendo* the truth of the FAC's allegations, that does not mean that the court should ignore when the factual assertions in a complaint collapse from internal contradictions and incoherence. The Supreme Court recently admonished that a complaint must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 U.S. 1955, 1974 (2007). In other words, "Factual allegations must be enough to raise a right to relief above the speculative level." 127 U.S.at 1965.  The *Twombl*y Court, applying that standard to a Sherman Act antitrust action, found that where "the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Id.* at 1974.

Courts have begun to apply the "plausibility" test to RICO claims. For instance, in *Pobursky v. Madera County*, 2007 WL 4557090, * 15 (E.D.Cal.  2007), a court in this circuit cited *Twombly*'s admonition that "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level ..." in dismissing  RICO claims against county officers stemming from a putative conspiracy to harass and falsely arrest plaintiffs and take their children into protective custody.  See also *World Wrestling Entertainment, Inc. v. Jakks Pacific, Inc.*, No. 04-CV-8223, at * 4 (2007 WL 4623027 S.D. N. Y. Dec. 21, 2007) (applying the *Twombly* plausibility standard to grant defendants' motion to dismiss an attempt to turn a licensing dispute into a RICO claim); *Republic of Colombia v. Diageo North America*, No. 04-CV-4372, 2007 WL 1813744 at *8 (E.D.N.Y. Jun. 19, 2007) (citing *Twombly*, and stating "courts should strive to flush out frivolous RICO allegations at any early stage of the litigation.")

Here, Plaintiffs' incoherent recitation of grievances does not even cross the "conceivable" threshold, much less reach the Supreme Court's plausibility standard. As best moving defendants can decipher it, the gist of the alleged scheme is as follows:  Plaintiffs obtained a default judgment against SCEV, a foreign corporation. Plaintiffs then speculate that SCEV secretly had received a

7

guaranty from PPSA as well as from PLB. Plaintiffs further speculate that, just when SCEV could have turned to PPSA, a solvent entity according to Plaintiffs, and enforced its guarantee to pay off the judgment, SCEV instead chose to alter the guaranty to delete PPSA as guarantor. Plaintiffs do not allege, and cannot possibly explain, how it would be advantageous for SCEV to deprive itself of a solvent indemnitor.[3]

In light of the Supreme Court's admonition that a complaint must be plausible, the court should examine closely the allegations found under the heading "The Pattern of Racketeering Activity," beginning at ¶ 98. When examining these allegations, not only the allegations in the body of the complaint but the exhibits attached to the pleadings must also be taken into account, because a "copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." Fed.R.Civ.P. 10(c). Where the complaint's allegations plainly contradict the exhibits attached to it, the court can note that internal contradiction and judge accordingly.

As part of Defendants' racketeering activity, Plaintiffs allege that defendants schemed to defraud Plaintiffs by committing the following "fraudulent" acts:

- Entering into a settlement with Plaintiffs in the California State Court action (in which defendants paid Plaintiffs $150,000!). FAC, ¶100.

- Using their insurance company to run up litigation costs and pressure Plaintiffs into a settlement. FAC,¶100.

- Allowing Plaintiffs to obtain a judgment against SCEV with the intent to avoid paying it. FAC,¶101.

- Moving to set aside the California State Court Judgment. FAC,¶102.

- Making false claims in the French Court (in a still pending action). FAC,¶103.

---

[3] It is clear that SCEV did not ignore this hypothetical guaranty from PPSA out of some great affection for the Plantagenet entities. To the contrary, according to the FAC, SCEV has complained loud and long in courts in both the United States and France that the Plantagenet entities colluded with the Plaintiffs to damage SCEV!

8

- Presenting a doctored settlement agreement to the French Court which omitted PPSA. FAC,§104.[4]

- Filing an action against PLB in the Courts of Luxembourg. FAC,¶105 [Apparently, as part of defendant PLB's scheme to defraud Plaintiffs, it brought suit against itself, using co-defendant SCEV as plaintiff!]

- ". . .Seeking to cause the Chalons Court [French Court] to fail to ratify the California judgment." FAC,¶107.

- Using the U.S. mails to demand that Plaintiffs sequester funds in France (by service upon Plaintiffs of a French complaint). FAC, ¶¶83,109.

At bottom, Plaintiffs entire FAC rests on two allegations of wrongdoing:  the alleged submission to courts in the US and France of two "forged" documents – the Contract of Guarantee and the Settlement Agreement. Again, it is important to note that moving defendants had no alleged involvement with the submission of either of those documents into court. The moving defendants were not, and were not alleged to be, participants in any of the legal proceedings at the time the "forged" documents were allegedly submitted.  Nevertheless, each of the "forged" documents will be discussed below.

With respect to the Contract of Guarantee, Plaintiffs allege that unspecified defendants, "forge[d] letters and documents where SCEV would appear to be the holder of an indemnification agreement with an entity, PLB, that had already been liquidated—rather than with PPSA, a thriving concern that could pay Gidding and Pivotal's judgment against SCEV." FAC§100. Who were these alleged forgeries intended to fool?  Only Levant and SCEV could have been hurt by PPSA's failure to live up to a guaranty. Plaintiffs had no claim against PPSA.  Indeed, Plaintiffs already had already dismissed, with prejudice, their claims against PPSA.

---

[4] To the contrary, the document which Plaintiffs allege was presented to the French Court, Exhibit 36, actually

9

In ¶ 103, Plaintiffs allege that "defendants" (again, not including the Plantagenet defendants, who were not alleged to be parties to the French litigation) submitted the supposedly fraudulent Contract of Guarantee to the French courts.  Here, Plaintiffs make the bold, but incomprehensible assertion that if the French court knew that PPSA were on the guarantee, SCEV's defenses in the French court would have failed, and the French court would have ratified the California State court judgment. That contention fails to meet the plausibility threshold. SCEV's actual defense, apparently, was based on the claim that Plaintiffs had colluded with PLB to deprive SCEV of its lawyers and its defense in the California litigation. This defense did not depend on which, or how many, Plantagenet entities were or were not signatories to the guaranty. SCEV could not avoid the judgment by saying it was unfair that it could not pass the judgment to its indemnitors.  SCEV only could only argue that the judgment itself was improperly obtained – a claim that is not affected by the identity or number of indemnitors.

The last part of the alleged scheme was  SCEV's filing of "doctored" settlement agreements. FAC ¶ 105.  First, if the settlement agreement was "altered' or doctored or forged,these moving defendants were not involved. The FAC alleges, at ¶¶ 66 through-71, that SCEV obtained this document from the Plaintiffs' own lawyers, and then SCEV hired a translator to alter it and file it with the French court.  There is no allegation that moving parties had anything to do with it.

The exhibits to the FAC include three versions of the settlement agreement. Exhibit 36 is one version, the last page of which Gidding signed and dated September 19, 2001.  There is also a second version, at Exhibit 5, which Gidding signed and dated two days later, September 21, 2001.  Plaintiffs state that Exhibit 5 as the authentic document.  FAC ¶¶ 34, 75.  Finally, there is a French translation, which SCEV's translator prepared. Plaintiffs do not allege that moving

discloses PPSA.

defendants had anything to do with the translation.  While there are minor differences between the two English versions of the settlement agreement (not uncommon in the evolution of  settlement agreement drafts in  commercial litigation) none of those differences could be relevant, in any way, to the purported scheme to suppress PPSA's identity.  Contrary to Plaintiffs' conspiracy theories, both versions, including the later, allegedly "authentic" version, list the settling parties as "Plantagenet Capital Management, LLC, PLB Holdings, Plantagenet S.A. (formerly Plantagenet S.A.R.L.) [PPSA], Derek Anderson and John Zappettini." See Exhibits 5 and 36. Clearly, if there were some conceivable advantage to a scheme that hid the involvement of Plantagenet, SA (that is, "PPSA") from the French courts, nothing in either draft of the settlement agreement does that. Thus, all of Plaintiffs' complex speculations about "forgeries" in the settlement agreements collapse in light of the simple fact that the supposed September 19th forgery does not in any way hide PPSA's identity.

Even if the sheer incoherence of the claims could be set aside, and the court simply accept that the complaint alleges some sort of scheme, implausible or not, to deprive Plaintiffs' of the proceeds of their California State court judgment, the FAC fails to set forth fundamental elements of any RICO claim and must be dismissed.

### III.  Plaintiffs Fail to State A Claim Under RICO

Despite its many complexities, RICO at its core has a fairly simple design: it prohibits a person from using a pattern of unlawful activities to infiltrate an interstate enterprise. 18 U.S.C. § 1962.  Although RICO' s stated purpose was " the elimination of the infiltration of organized crime and racketeering into legitimate organizations operating in interstate commerce," S. Rep. No. 91-617, 91st Cong., 1st Sess. 161, at 76 (1969), its language was not limited accordingly, and as a result the courts have applied RICO to a wide variety of situations that the enacting Congress did not envision.

To avoid abuse of the statute, the courts wisely take a close look at RICO claims to be assured that all the necessary elements are alleged. To state a civil RICO claim, a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (5) causing injury to plaintiffs' 'business or property.' " *Ove v. Gwinn,* 264 F.3d 817, 825 (9th Cir.2001) (quoting 18 U.S.C. § 1962(c)). Here, even the most generous reading of the FAC does not yield a cognizable "pattern," and the alleged predicate acts of "racketeering activity" do not meet the standards for a RICO claim.  Finally and critically, plaintiffs cannot point to any way in which these alleged acts caused any injury to Pivotal or Gidding's business or property.

### A. <u>Plaintiffs Do Not Identify Any Predicate Acts of Racketeering Activity</u>

To try to minimize the temptation for would-be RICO plaintiffs to recast ordinary commercial disputes as racketeering activity, courts strictly require a RICO complaint to allege every essential element of each predicate act. *See, e.g., Sanville v. Bank of America National Trust & Savings Ass'n*, 18 Fed. Appx. 500, 501 (9th Cir. 2001) (affirming the dismissal of plaintiff's RICO claims for failure to plead with sufficient particularity that the defendants had the specific intent to deceive or defraud as required for both mail and wire fraud). Gidding and his company Pivotal are prime examples of such would-be RICO plaintiffs trying to manufacture a RICO complaint out of nothing. They have failed to plead any particular predicate acts of either mail or wire fraud, although they have tried to label several letters and court pleadings as such.

The elements of mail and wire fraud are identical. 18 U.S.C.A. §§ 1341 and 1343. They are: (1) a scheme to defraud; (2) involving use of mails or wire; (3) for the purpose of executing a fraudulent scheme. *United States. v. Rogers* 321 F.3d 1226 (9th Cir. 2003). Further, recently the Supreme Court stated, "materiality is an element of the mail fraud, wire fraud, and bank fraud statutes, and thus must be submitted to the jury to support conviction of those crimes as well. " *Washington v. Recuenco*, 126 S.Ct. 2546, 2551 (2006). As the Ninth

12

Circuit explained, "A false promise, statement or representation is material if 'it is made to induce action or reliance by another' or has 'a natural tendency to influence or is ... capable of influencing another's decisions[.]"  *United States v. Somsamouth*, 352 F.3d 1271, 1276 (9th Cir. 2003)(commenting on materiality in mail fraud).

Even those few documents Plaintiffs speculate were secretly altered would not meet the test of materiality.  In evaluating Plaintiff's allegations, the yardstick for materiality should be plaintiff's own description of the intent behind the supposed scheme, which was to "deprive Plaintiffs Gidding and Pivotal of money and property, that is, their duly obtained judgment against SCEV in the California State Court." Complaint at ¶ 98.  First, Plaintiffs have not, in fact, ever been deprived of their Judgment. At worst, they have been frustrated in their ability to collect it. Second, none of the alleged acts of fraud, even if they had happened, could have furthered such a scheme.

### 1.  <u>None of the alleged predicate acts constitute mail or wire fraud.</u>

The FAC at ¶¶ 110 through 112 lists where, as ¶ 110 states, "[unspecified] Defendants used the mails and the wires… as part of their pattern of racketeering activity."  Most of these mailings and wirings had nothing to do with the moving defendants, and none of the mailings or wirings identified the FAC are indictable acts of mail or wire fraud. With the court's indulgence, it is worth a moment to go through each of them, as listed in the FAC:

Paragraph 111—*mail fraud*

While ¶ 111 lists six mailings from a variety of persons, *not one of those mailings is from any Plantagenet entity or moving party.* Most are either mailings of court filings, correspondence between counsel, or attorney-client correspondence between Plaintiffs and Plaintiffs' counsel (not the one who is named as a defendant in this action).

a)  The first mailing is a letter in French from Levant's owner, Patrick Raulet, to Derek Anderson, dated January 7, 2002. (Exhibit 16)  According to Plaintiffs, Raulet is urging Anderson to settle the California suit for SCEV, and also reminds him of a "contract."(FAC at ¶ 48). Plaintiffs acknowledge that the letter does not give more details about that contract. *Id.* A request to settle cannot be fraudulent.  The reference by Raulet to a contract between his company and Anderson cannot be fraudulent either, since the existence of such a contract (the sale agreement) is conceded.  Not only is there nothing fraudulent about this letter, there is nothing about it that furthers the alleged scheme to defraud.

b)  SCEV's motion to set aside the California judgment, dated September 20, 2002, and

c)  SCEV's reply brief in the same matter, dated November 14, 2002.  Plaintiffs fail to allege how any changes made to any documents attached as exhibits to these court filings in fact could have been material or  cause them any damage.  Assuming, for purposes of discussion only, that SCEV had presented the California court with altered documents in support of its motion to have the judgment set aside, the FAC acknowledges that the California court rejected SCEV arguments, denied its motion, and left Plaintiffs' judgment intact.

d)  A letter from Plaintiffs' lawyers in California to Plaintiffs' own lawyer in France (the one named as a defendant) dated September 14, 2003.  This cannot be an act of "fraud" by any moving defendant because, no matter what it said, it was not written or mailed by one of the moving defendants.

e)  A letter in French dated March 10, 2004, from Plaintiffs' own lawyer in France (the one they have *not* sued) to Plaintiffs.  (Exhibit 35).  Whatever it says, it is not written by, mailed by, or even sent to, any of the defendants.  It cannot, therefore, be an act of mail fraud chargeable to any defendant.

14

f)  A letter from SCEV counsel to Plaintiffs. This letter apparently enclosed a French complaint filed against Plaintiffs. See, FAC,¶83 and Exhibit 45.  Exhibit 45, entirely in French, has none of the allegedly doctored documents attached as Exhibits.

g)  Another letter from SCEV's counsel to Plaintiffs, this time enclosing a judgment against Pivotal issued by the courts in France. FAC ,¶84, and Exhibit 46. Again, there is no reference to any doctored document and no conceivable way that delivery of a judgment issued by the court in France could be an act of mail fraud.

Paragraph 112—*wire fraud*

Paragraph 112 lists the "particular" acts of wire fraud.  It alleges that there were three faxes either to or from Mr. Anderson in May of 2001 and one more dated September 28, 2001.  These "three faxes" are also mentioned in the FAC at ¶ 61, which actually refers to a single document that was faxed back and forth three different times in May, 2001. The document appears to be attached as a portion of Exhibit 25. It is in French,  entitled "Avenant Au Protocole D'Accord," dated March 2, 2000, and signed by Derek Anderson on behalf of PLB Holdings and Patrick Raulet on behalf of Levant.  It appears to amend the price of the sale of SCEV. Contrary to Plaintiffs' allegation that this document is evidence that PPSA was a party to the guarantee, it, in fact, confirms precisely the contrary -- that only PLB and Levant were parties to the sale, and, therefore, only PLB signed the indemnity.

The next fax mentioned in ¶ 112, dated September 28, 2001, appears to be the fax attached as Exhibit 15, and mentioned in paragraph 47 earlier in the FAC. That faxed letter is from Mr. Anderson to Levant's director, Patrick Raulet, where Mr. Anderson  stated that the funds in the "reserve account are exhausted" and asked for SCEV's help in paying counsel's retainer. There is nothing in this letter that Plaintiffs allege is false.

15

The final wired document is a faxed letter, dated September 12, 2003, from Plaintiffs'
lawyer in France (the one they sued) to their lawyer in California. (Exhibit 27).  That letter states
that the French attorney must give the French court a copy of the settlement agreement in which
the Plantagenet entities paid Plaintiffs  $150,000.  Plaintiffs have not alleged how that fax's
contents are in any way false, misleading or fraudulent.

## 2.  Mail and wire fraud are only predicate acts if they are the proximate cause of Plaintiffs' injuries.

Most federal courts of appeals have held that a plaintiff must plead and prove reliance to
sustain a civil RICO claim predicated on acts of mail fraud. See *Brown v. Cassens Transp. Co.*,
492 F.3d 640, 643 (6th Cir. July 10, 2007)("As plaintiffs acknowledge, the well-established
precedent of this circuit requires that a civil RICO plaintiff alleging mail or wire fraud plead
reliance, that is, that a defendant made fraudulent representations to the plaintiff on which the
plaintiff relied.")  *Accord*, *Sandwich Chef of Texas, Inc. v. Reliance National Indemnity Insurance
Co.*, 319 F.3d 205 (5th Cir. 2003); *Chisholm v. Transouth Fin. Corp.*, 95 F.3d 331, 337 (4th Cir.
1996); *Vandenbroeck v. Commonpoint Mortgage Co.*, 210 F.3d 696, 701 (6th Cir. 2000); *7
Appletree Square I, Ltd. P'ship v. W.R. Grace & Co.*, 29 F.3d 1283, 1286 (8th Cir. 1994); *Pelletier
v. Zweifel*, 921 F.2d 1465, 1499-1500 (11th Cir. 1991); *Blount Fin. Servs. v. Walter E. Heller &
Co.*, 819 F.2d 151, 152 (6th Cir.1987)), *cert. denied*, 496 U.S. 926 (1990). These courts reason
that, in a RICO case, the plaintiff must establish injury to business or property "by reason of" a
predicate act of mail or wire fraud.  A plaintiff can only show injury "by reason of" of the fraud if
the plaintiff can establish detrimental reliance on the alleged fraudulent acts. See *County of Suffolk
v. Long Island Lighting Co.*, 907 F.2d 1295, 1311 (2nd Cir.1990).

While the Ninth Circuit has not directly decided whether reliance must be pleaded and
proved, the court in *Poulos v. Caesars World, Inc.* 379 F.3d 654, 664 (9th Cir. 2004) noted that, "It

16

is well settled that, to maintain a civil RICO claim predicated on mail fraud a plaintiff must show that the defendants' alleged misconduct proximately caused the injury," and "reliance may be 'a milepost on the road to causation.'"  Here, of course, Pivotal/Gidding did not rely at all on any of the alleged acts of "mail fraud," assuming any occurred.

The Supreme Court has yet to rule whether reliance on the alleged fraudulent communication is an element of a RICO claim predicated on mail or wire fraud,[5] but it has held that the fraudulent communication itself must be the proximate cause of injury to the plaintiff— meaning that the plaintiff must show that the mailing itself was the direct, legal cause of the alleged injury. In *Anza v. Ideal Steel Supply Corp.*126 S.Ct. 1991 (2006), the Court approved the dismissal of a RICO action predicated on mail fraud where the plaintiff sued a competitor because of the competitor's alleged practice of submitting fraudulent sales tax returns in violation of mail fraud or wire fraud statutes. The Supreme Court held that the competitor's alleged defrauding of state tax authority was not the proximate cause of entrepreneur's lost sales. Further, it stated that "when a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." *Id.* at 1994.

One of the most critical elements for a RICO claim is that the plaintiff show he "has been injured in his business or property by the conduct constituting the violation." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985).  Moreover, the only injuries that are compensable are those that are "caused by predicate acts sufficiently related to constitute a pattern." *Id.* at 497. To recover, a plaintiff must show he suffered damages from the proscribed predicate offenses, not from some other cause. *American National Bank & Trust co. v. Haroco, Inc.,* 473 U.S. 606, 609 (1985).

---

[5] But see *Bridge v. Phoenix Bond & Indemnity Co.*, 2008 WL 54347 (Mem. S.Ct. January 4, 2008), granting *certiorari* on the issue, "Whether reliance is a required element of a RICO claim predicated on mail fraud and, if it is, whether that reliance must be by the plaintiffs."

Plaintiffs fail this proximate cause test. The alleged injury is Plaintiffs' difficulty in collecting their judgment against the French corporation, SCEV, in France.  However, the only "fraudulent" conduct actually alleged is the purported suppression of  PPSA's identity. But, since Plaintiffs released and dismissed <u>with prejudice</u> their claims against PPSA, there is no way Plaintiffs could have proceeded directly against PPSA in the French courts, and, indeed, Plaintiffs made no attempt to do so. With no direct avenue of relief remaining against PPSA themselves, it could not legally matter to Plaintiffs whether judgment debtor SCEV had any indemnity rights against PPSA. The presence or absence of PPSA on an indemnity agreement could not affect, one way or the other, Plaintiffs' ability to reduce their California judgment against SCEV to a judgment against SCEV in France.

## B.  <u>The FAC Does Not Allege a "Pattern"</u>

To prove a pattern of racketeering in violation of RICO, a plaintiff must establish a *long-term* pattern of criminal activity or criminal "predicate acts," not single or isolated criminal acts. The Supreme Court has specifically addressed this requirement in *H.J., Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229 (1989).  *H.J.* and its progeny require that a successful RICO plaintiff establish a long-term pattern of conduct that amounts to continued criminal activity or by its nature threatens criminal activity into the future. "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement." *H.J.* at 242; *Howard v. America Online, Inc.,* 208 F.3d 741, 750 (9th Cir. 2000).

In order to show a pattern, a plaintiff must demonstrate that the alleged predicate acts were both related and continuous. In turn, "to satisfy the continuity requirement, [a complainant] must prove either a series of related predicates extending over a substantial period of time, i.e., closed-ended continuity, or past conduct that by its nature projects into the future with a threat of

repetition, i.e. open-ended continuity." *Steam Press Holdings, Inc. v. Hawaii Teamsters, Allied Workers Union, Local 996,* 302 F.3d 998, 1011 (9th Cir. 2002). To allege open-ended continuity, a RICO plaintiff must charge a form of predicate misconduct that "by its nature projects into the future with a threat of repetition." *See Religious Tech. Ctr. v. Wollersheim,* 971 F.2d 364, 366 (9th Cir.1992); *Sever v. Alaska Pulp Corp.,* 978 F.2d 1529, 1535-36 (9th Cir.1992); *Medallion Television Enters., Inc. v. SelecTV of Cal., Inc.,* 833 F.2d 1360, 1363-64 (9th Cir.1988). Plaintiffs do not allege anything that could be characterized as an open-ended scheme. Rather, they suggest a single scheme to thwart the collection of one particular judgment, affecting only one set of affiliated judgment creditors, the company Pivotal and its principal, Gidding. That closed-end scheme involved a limited number of predicate acts involving only two allegedly altered documents. As a closed-end scheme, then, it does not include a large enough set of acts, taking place over a long enough period of time, to be a "pattern of racketeering activity " "Activity that lasts only a few months is not sufficiently continuous." *Howard v. America Online Inc.,* 208 F.3d 741, 750 (9th Cir. 2000). Furthermore, as the acts were all directed at only one real victim—Pivotal and its principal, John Gidding—most courts have held the alleged scheme could not by definition be considered a "pattern of racketeering activity."

### 1. The alleged predicate acts lack sufficient duration.

The closed-ended continuity necessary for establishing a pattern of racketeering must be demonstrated by "proving a series of related predicates extending over a *substantial* period of time." *H.J.* at 242 (emphasis added); *see also Religious Tech. Center v. Wollersheim,* 971 F.2d 364, 366-67 (9th Cir. 1992); *River City Markets, Inc. v. Fleming Foods West, Inc.,* 960 F.2d 1458, 1464 (9th Cir. 1992).

The duration requirement cannot be met simply by alleging a scheme that supposedly lasted for years. To the contrary, the Supreme Court's admonition is that it is the actual "series of

19

1  related predicates" that must last of a substantial period of time. *H.J.* at 242.

2      The only actual allegations of mail fraud or wire fraud in the FAC which, by even the most

3  generous reading, could actually be considered fraudulent are the filing, in conjunction with the

4  California motion to set aside the judgment, of exhibits that Plaintiffs allege were altered.  See

5  FAC, at ¶¶ 111-112 .  The duration of that "series of related predicate acts"—two filings, the

6  motion itself and a reply brief—was from on September 20, 2002 and November 14, 2002, a little

7  less than two months apart. FAC, ¶¶39,50.  Such a short period lacks the duration needed to

8  establish a "pattern of racketeering activity." *Turner v. Cook,* 362 F.3d 1219, 1229  (9th Cir.

9

10  2004)(affirming the dismissal of  RICO claims when the alleged predicate acts took place over a

11  few months).  However, even if  the list of supposed acts of mail fraud were read to include the

12  filing of the French translation of the settlement agreement on September 16, 2003, then the entire

13  duration of the series of predicates spans less than a full year. See *Jennings v. Auto Meter*

14  *Products, Inc.,* 495 F.3d 466 (7th Cir. 2007), where the court held that a ten month time period,

15  during which only few allegedly fraudulent acts took place, was too short to show necessary

16  continuity for pattern of racketeering under RICO.

17

18      **2.   The alleged predicate acts only target one "victim."**

19      Courts consistently have held that "where a plaintiff alleges a single scheme promulgated

20  for the limited purpose of defrauding a single victim, continuity cannot be established."  Thus, in

21  *Dempsey v. Sanders,* 132 F.Supp.2d 222 228(S.D.N.Y. 2001), the court held that there was a lack

22  of continuity in an alleged scheme by plaintiff's partners to defraud her of her capital contributions

23  to their joint venture. The claim was a "classic example of a single-victim, single-defendant fraud

24  dressed up to resemble a multi-faceted RICO claim." *Jennings v. Auto Meter Products, Inc.*, 495

25  F.3d 466 (7th Cir. 2007).  *See also CPF Premium Funding, Inc. v. Ferrarini,* No. 95 Civ. 4621,

26  1997 WL 158361, at *9 (S.D.N.Y. April 3, 1997) (finding thirty-five specific acts of misconduct

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS ACTION
PURSUANT TO FED.R.CIV.P.RULE 12(b)(1), 12(b)(5), and 12(b)(6)

carried out against the same victim did not constitute continuity as required under RICO); *China Trust Bank of New York v. Standard Chartered Bank, PLC,* 981 F.Supp. 282, 287-88 (S.D.N.Y.1997) (finding that although a number of acts of misconduct were alleged, they were all carried out by a single defendant against one victim, pursuant to a single scheme and thereby failed both open and close-ended continuity requirement); *Pagel v. Washington Mut. Bank, Inc.,* *153 Fed.Appx.* 498 (10th Cir. 2005) (Mortgagor's RICO claim concerning defendants' initiation of state court mortgage foreclosure proceedings failed because mortgagor alleged only a single harm to a single victim, i.e., mortgagor, in a single transaction). Other courts have dismissed a RICO claim even when there is more than one victim, if the set of alleged victims is small and discrete. For instance, in *Edmondson & Gallagher v. Alban Towers Tenants Ass'n,* 48 F.3d 1260 (D.C. Cir. 1995), the court found that the alleged acts of a tenants' association to prevent or delay sale of an apartment building did not demonstrate a "pattern of racketeering activity," where the scheme could have injured only three victims.

The complaint here alleges a scheme that targets only John Gidding and his company, Pivotal. Moreover, the scheme has only one object, apparently, to thwart Pivotal and Gidding in their attempt to collect the judgment obtained by default on their supposed "oral" distributorship agreement. That single scheme directed against a single plaintiff (or rather, one plaintiff and his company) is just the sort of thing the courts have found was not within the intended scope of RICO.

### IV.    Plaintiffs Fail To State A Claim For Conspiracy To Violate RICO

Any claim under 18 U.S.C. § 1962(d) "based on conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient." *Discon, Inc. v. NYNEX Corp.,* 93 F.3d 1055, 1064 (2d Cir. 1996), citing *Lightning Lube, Inc. v. Witco Corp.,* 4 F.3d 1153, 1191 (3d Cir. 1993); *Condict v. Condict,* 826 F.2d 923, 927 (10th Cir.1987)

21

("any claim under section 1962(d) based on a conspiracy to violate the provisions of 18 U.S.C. section 1962(a), (b), or (c) must necessarily fail if the substantive claims are themselves deficient "). See also *In re Bank of Credit and Commerce Intern.l Depositors Litigation*, 1992 WL 696398 at n.19 (C.D. Cal. 1992)( "The Court's dismissal of substantive RICO claims constitutes a dismissal of the conspiracy alleged under section 1962(d) as well.)

### V.  The Remainder Of The Action Should Be Dismissed
### For Lack Of Subject Matter Jurisdiction

Absent the RICO claim, there is no independent basis for the exercise of federal jurisdiction.  Accordingly, moving parties respectfully request dismissal of plaintiffs' supplemental state law claims pursuant to 28 U.S.C. §1367(c)(3).

### CONCLUSION

The FAC alleges an implausible scheme that, even if it existed, is not a "pattern" of any cognizable "racketeering activity" and that has not caused any legally cognizable injury to Plaintiffs themselves. Accordingly, defendants respectfully move this Court to dismiss the FAC as against the moving defendants and, indeed, in its entirety.


DATED: January **30** , 2008.

Respectfully submitted,

WILSON & QUINT LLP

By _____
Matthew F. Quint
Attorneys for Defendants C. Derek Anderson,
Plantagenet Capital Management, LLC, Plantagenet
Partners SA, and PLB Holdings SA

22