1  **BIRNBERG & ASSOCIATES**
   **CORY A. BIRNBERG (SBN 105468)**
2  **JOSEPH SALAMA, ESQ. (SBN 212225)**
   **BIRNBERG & ASSOCIATES**
3  **703 Market Street, Suite 600**
   **San Francisco, CA 94103**
4  **Telephone: (415) 398-1040**
   **Facsimile: (415) 398-2001**
5
   **Attorneys for Plaintiffs**
6  **JOHN GIDDING, PIVOTAL, INC.**

7

8              **UNITED STATES DISTRICT COURT**

9             **NORTHERN DISTRICT OF CALIFORNIA**

10               **SAN FRANCISCO DIVISION**

11

12  **JOHN GIDDING, PIVOTAL, INC.**      ) Case No. C-7-04755-JW
                                         )
13         **Plaintiffs,**               ) **PLAINTIFFS' OPPOSITION TO**
                                         ) **DISMISS MARIE-CLAUDE SIMON**
14  **v.**                               ) **FOR LACK OF PERSONAL**
                                         ) **JURISDICTION AND**
15  **DEREK ANDERSON, et al.,**          ) **INEFFECTIVE SERVICE OF**
                                         ) **PROCESS**
16         **Defendants.**               )
                                         )
17                                       ) **Date: May 30, 2008**
                                         ) **Time: 9:00 a.m.**
18  _____  ) **Place: Ctrm 2, 17th Floor**

19

20

21

22

23

24

25

BIRNBERG &
ASSOCIATES

703 MARKET STREET
SUITE 600
SAN FRANCISCO
CA, 94103
TEL (415) 398-1040
FAX (415) 398-2001

26

27

28

# TABLE OF CONTENTS

**I. SUMMARY OF ARGUMENT**……………………………………………1

**II. LEGAL STANDARD**………………………………………………1

**III. FACTUAL BACKGROUND**………………………………………...2

**IV.   THE RICO STATUTES DO NOT REQUIRE THAT SIMON'S ACTS DAMAGED THE PLAINTIFFS OR THAT SIMON'S PREDICATE ACTS DAMAGED THE PLAINTIFFS, BUT RATHER THAT THE PATTERN OF THE PREDICATE ACTS OF ALL THE DEFENDANTS PROXIMATELY DAMAGED THE PLAINTIFFS V. CITATION TO NON-PUBLISHED CASES IS NOT ALLOWED BY LOCAL RULES**………………………………………..6

**V. CITATION TO NON-PUBLISHED CASES IS NOT ALLOWED BY LOCAL RULES**………………………………………………………7

**VI. DISCUSSION- THERE IS PERSONAL JURISDICTION OVER MARIE-CLAUDE SIMON BECAUSE SHE DIRECTED HER ACTIVITIES TO THE FORUM STATE**………………………………………………………7

    **A.  General Jurisdiction- Minimum Contacts**………………………………8

    **B. Specific Jurisdiction- Three Prong Test**…………………………………9

        **1.  Prongs One and Two**………………………………...9

        **2.  Prong Three: Exercise of Jurisdiction Unreasonable**……………...…..13

**VII. SERVICE OF PROCESS ON MARIE- CLAUDE SIMON WAS PROPER**…...16

**VIII. CONCLUSION**……………………………………………………..19

BIRNBERG &
ASSOCIATES

703 MARKET STREET
SUITE 600
SAN FRANCISCO
CA. 94103
TEL (415) 398-1040
FAX (415) 398-2001

OPPOSITION TO MOTION FOR MARIE SIMON'S LACK OF JURISDICTION MOTION

Case No. C-7-04755-JW

**Federal Cases**

*Ballard v. Savage*, 65 F.3d 1495 (9th Cir. 1995)

…………………………………………………… ………………………….. 1

*Bancroft & Masters, Inc. v. Augusta National, Inc.*, 223 F.3d 1082 (9th Cir. 2000),........... 1,11,12

*Brayton Purcell LLP v. Recordon & Recordon*, 361 F. Supp. 2d 1135, 1139-1140 (D. Cal. 2005)...............................................................................................8, 9, 13

*California Software Inc. v. Reliability Research, Inc.,* 631 F. Supp. 1356, 1361 (C.D. Cal. 1986).................................................................................................12

*Coupons, 2006 U.S.* Dist. LEXIS 64017 ...............................................................7

*Data Disc, Inc. v. Systems Tech. Assoc., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977)................1,2

*Decker Coal Co. v. Commonwealth Edison Co., 805* F.2d 834, 839 (9th Cir. 1986) ................12

*Electronics For Imaging, Inc. v. Coyle* 340 F.3d 1344, 1349 (Fed. Cir. 2003) ..........................14

*Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003).................................................................................................14

*International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945). ...............................................................................................9

*Metropolitan Life Ins. v. Neaves*, 912 F.2d 1062, 1064 n.1 (9th Cir. 1990)……………………………………………..…3,13

*Nuovo Pignone, SpA v. STORMAN ASIA M/V* 310 F.3d 374, 378(5th Cir. 2002).....................14

*Ochoa v. J.B. Martin & Sons Farms*, 287 F.3d 1182, 1189 (9th Cir. 2002) ................................9

*Panavision Intern., L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir.1998)......................2,12,13

*Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1020 (9th Cir. 2002) .......................10,11

BIRNBERG &
ASSOCIATES

703 MARKET STREET
SUITE 600
SAN FRANCISCO
CA. 94103
TEL (415) 398-1040
FAX (415) 398-2001

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004); ................8,9,13

*Sinatra v. National Enquirer, Inc.*, 854 F.2d 1191 (9th Cir. 1988)..........................................9,10

*Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1168 (9th Cir. 2006) ..............................8

*Wenz v. Memery Crystal* 55 F.3d 1503, 1505 (10th Cir. 1995)..................................................14

*WNS, Inc. v. Farrow*, 884 F.2d 200, 203-04 (5th Cir. 1989)..........................................................2

*Yahoo! Inc.,* 433 F. 3d 1199,1205 (9th. Cir. 2006)…………………………………….………8

**Statutes**

FRCP Rule 12(b) (2) ...........................................................................................................................2

**Other Authorities**

Article 10 of the November 15, 1965 Hague Convention on the *Service Abroad of Judicial*

   *and Extra Judicial Documents in Civil or Commercial Matters*............................................18

Cal. Code Civ. P. § 410.10 .................................................................................................................8

**Rules**

Fed. R. Civ. P. 4(k)..............................................................................................................................9

Northern District Local Rule 3-4(e) ...................................................................................................8

BIRNBERG &
ASSOCIATES

703 MARKET STREET
SUITE 600
SAN FRANCISCO
CA. 94103
TEL (415) 398-1040
FAX (415) 398-2001

OPPOSITION TO MOTION FOR MARIE SIMON'S LACK OF JURISDICTION MOTION
Case No. C-7-04755-JW

NOW COME Plaintiffs JOHN GIDDING and PIVOTAL, INC. and do oppose the motion of Marie-Claude Simon For Lack of Personal Jurisdiction.

## I. SUMMARY OF ARGUMENT

Marie Claude Simon's contacts with the forum state satisfy the three prong test of specific jurisdiction as set forth in *Panavision International, L.P. v. Toeppen*, 141 F.3d 1316 (9th Cir. 1998)  and in *Bancroft & Masters*, 223 F.3d at 1087. Her conduct was aimed at the forum state and jurisdiction would be reasonable. Her declaration is largely false and she has number correspondences to Pivotal and John Gidding in California. She was aware her actions had a detrimental effect to a citizen of the forum state.

Marie Claude Simon was properly served in accordance with the Hague Convention and under French Law. She admits personal service of the First Amended Complaint, with the translation in French. Plaintiffs' also offer the proof of service to that effect. The list of exhibits are in French and most of the exhibits. All of this is in accordance with French Law and statues. Plaintiffs' will translate the non-French exhibits as a courtesy forthwith, even though Marie-Claude Simon speaks and reads English.

## II. LEGAL STANDARD

If the Court rules on a FRCP Rule 12(b) (2) motion to dismiss on the basis of affidavits only, or on the basis of affidavits plus discovery, plaintiff need only make a *prima facie* showing of personal jurisdiction to defeat the motion. See *Ballard v. Savage*, 65 F.3d 1495 (9th Cir. 1995). This showing must consist of admissible evidence which, if believed, would be sufficient to establish personal jurisdiction. *WNS, Inc. v. Farrow*, 884 F.2d 200, 203-04 (5th Cir. 1989). The Court cannot assume the truth of allegations in a pleading that are contradicted by a sworn affidavit. *Data Disc, Inc. v. Systems Tech. Assoc., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977). However, factual conflicts in the parties' declarations are

BIRNBERG &
ASSOCIATES

703 MARKET STREET
SUITE 600
SAN FRANCISCO
CA, 94103
TEL (415) 398-1040
FAX (415) 398-2001

OPPOSITION TO MOTION FOR MARIE SIMON'S LACK OF JURISDICTION MOTION
Case No. C-7-04755-JW

-1-

resolved in the plaintiff's favor at this initial stage. *Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977) ("If a plaintiff's proof is limited to written materials, it is necessary only for these materials to demonstrate facts which support a finding of jurisdiction in order to avoid a motion to dismiss."). Plaintiffs' will show that Marie-Claude Simon's declaration is meritless and lacks any credibility whatsoever. Finally, the documents submitted by plaintiff are construed in the light most favorable to plaintiff, and all doubts are resolved in plaintiff's favor. *Metropolitan Life Ins. v. Neaves*, 912 F.2d 1062, 1064 n.1 (9th Cir. 1990)

### III. FACTUAL BACKGROUND

Plaintiffs John Gidding and Pivotal Inc. filed a claim against SCEV, a Defendant in this action, in the Superior Court of California (**FAC Ex.1**). SCEV filed a claim against John Gidding and Pivotal Inc. in the Commercial Court in Chalons-en-Champagne (**Simon Ex.2**). These pleadings are known to Marie-Claude Simon, and an examination of the pleadings indicate that John Gidding resides in California (**Dec. of Gidding Ex. A**).

John Gidding was dismissed from the suit in Champagne Court and Pivotal appealed and won the decision in the appellate court of Reims (**FAC. Ex 45**). Mrs. Gidding's attorney, Pierre Benichou, handled the appeal though Olivier Delvincourt, an appeals court lawyer. When, during the pendency of the California litigation, the Plaintiffs needed to serve documents on SCEV, Pierre Benichou recommended Marie-Claude Simon.

The Plaintiffs were awarded a $1,500,000 judgment in the California litigation (**FAC Ex. 6**) and SCEV, rather than appeal or pay the Judgment, conveyed its assets to a neighboring firm, SA Charles de Cazanove ("Cazanove-A"). John Gidding learned about this from his wife's family and gave Marie Claude Simon the necessary information to get a court order putting a halt to Cazanove-A's attempted bankruptcy (**Dec. Of Gidding Ex. C**). An examination of the pleadings in this case indicates that Simon knows that John Gidding resides in California. Simon then attached liens on SCEV's assets (**FAC Ex 22**). An

BIRNBERG & ASSOCIATES

703 MARKET STREET
SUITE 600
SAN FRANCISCO
CA. 94103
TEL (415) 398-1040
FAX (415) 398-2001

OPPOSITION TO MOTION FOR MARIE SIMON'S LACK OF JURISDICTION MOTION
Case No. C-7-04755-JW

examination of the lien indicates that Simon knows John Gidding resides in California.

Mrs. Gidding's lawyer, Pierre Benichou, coordinated the various motions before the French courts, and as Mrs. Gidding had moved to Luxembourg, Marie-Claude Simon invoiced the costs of the motions (liens, sequester, translations) to Mrs. Gidding's company, Vinesmith SA (Dec. of Simon Ex 4). The Simon invoices have the same date, August 28, 2002, are consecutively numbered, #02457 and #02458, and concern the same matter. These invoices were paid, from the same bank within 60 days (Dexia of Luxembourg). Marie-Claude Simon's legal efforts and invoices demonstrate that she perfectly understands that John Gidding resides in California and that Mrs. Gidding lives in Europe.

Marie-Claude Simon's testified to this court (¶13), "Throughout the course of my representation of Plaintiffs, it was my understanding that Mr. Gidding resided in Europe with his family before this court". Such is false.

Marie-Claude Simon testified to this court (¶17), "Because some of my services were unpaid by Mr. Gidding and Pivotal Inc. and consequently, I had to withhold my services to them". Such is false. All of Simon's invoices to Pivotal were paid (**Dec. of Gidding Ex. E**).

When settlement talks between John Gidding and Patrick Raulet broke down, it became necessary for the Plaintiffs to choose a lawyer to validate the California judgment. Marie-Claude Simon and Pierre Benichou ardently solicited Pivotal's business, both encouraged by liens of over $5,000,000 in support of a clear $1,500,000 Judgment with 10% annual interest. There were numerous phone calls and exchanges of documents between the Plaintiff's offices in Los Angeles and Marie-Claude Simon.

As Marie-Claude Simon spoke and read English and Pierre Benichou did not, the Plaintiffs chose her. The complaint to validate the California Judgment, filed on September 5, 2002. (**FAC Ex 23**). Pivotal paid for the invoice. (**Dec. of Gidding Ex E**). Again, an examination of the complaint indicate that Simon knows John Gidding resides in California.

BIRNBERG &
ASSOCIATES

703 MARKET STREET
SUITE 600
SAN FRANCISCO
CA. 94103
TEL (415) 398-1040
FAX (415) 398-2001

OPPOSITION TO MOTION FOR MARIE SIMON'S LACK OF JURISDICTION MOTION
Case No. C-7-04755-JW

1    The liens put a dent in SCEV's conveyance scheme.  Attorney Pierre Clement

2    ("Clement"), the lawyer that represented SCEV against the plaintiffs, knew Defendants

3    Serge Hauchart, Ollivier Lemal, and Patrick Raulet.  Clement also represented Champagne

4    Bricout, a much larger Champagne firm.  In November 2002, Hauchart and Clement

5    retained Marie-Claude Simon in a lucrative fraud known in France as "*l'affaire Bricout*",

6    and from November 2002 on, Marie-Claude Simon was well paid to work against the

7    Plaintiffs (**Dec. of Gidding Ex G**).

8    Marie-Claude Simon testified to this court (¶15), "The only defendant I know is Serge

9    Hauchart, a director of my former client Opson, a company also controlled by Mr. Gidding,

10   who he assisted once during a meeting".  Such is false.

11   From November through April 2002, Hauchart, Clement, and Marie-Claude Simon

12   presided over the disappearance of $20,000,000 from the coffers of Champagne Bricout.

13   When the money ran out, Marie-Claude Simon and Clement drafted a contract, Hauchart

14   signed the contract, and the contract made John Gidding liable for $17,000,000.

15   In April 2003, John Gidding learned about this singular event like everyone else, it

16   made the headlines (**Dec. of Gidding Ex H**).  John Gidding traveled to Champagne to

17   discover by what means he had acquired three chateaux, a national retail chain, seven

18   million bottles of champagne, ten millions of dollars of vineyards, forty subsidiary

19   companies, prime real estate, six functioning wineries, one hundred and eighty rioting

20   employees, and $150,000,000 of debt.

21   When John Gidding arrived at Marie-Claude Simon's offices, Hauchart was waiting

22   for him with Clement.  This is the "one meeting" that Marie-Claude Simon refers to in ¶15

23   of her declaration, and the problem was not, as she claims, the French language as Hauchart

24   is a French citizen and fluent in French. There was no need to translate anything into

25   French.  While John Gidding was asking the Reims police not to arrest him, Defendant

26   Patrick Raulet ("Raulet") the owner of Defendant Compagnie des Vins du Levant

BIRNBERG &
ASSOCIATES

703 MARKET STREET
SUITE 600
SAN FRANCISCO
CA. 94103
TEL (415) 398-1040
FAX (415) 398-2001

27

28   OPPOSITION TO MOTION FOR MARIE SIMON'S LACK OF JURISDICTION MOTION
     Case No. C-7-04755-JW

("Levant") filed criminal charges against Defendant PLB Holdings SA and John Gidding (**FAC Ex 39**).  Hauchart and Simon told Gidding that he needed to settle his claims and get out of France.  Further, Hauchart and Simon told John Gidding that Defendants Jean-Francois and Christophe Rapeneau had already acquired Levant's, Lemal's, and Hauchart's shares of SCEV, and that John Gidding's sequesters on SCEV's assets were costing all of them money (**Dec. of Gidding Ex L**).

A meeting with the Rapeneau's was arranged, John Gidding declined the Rapeneau's offer to restore Pivotal as SCEV's U.S. importer and declined a complex settlement offer that included resolving Casanove-A problems with the stocks of SCEV Champagne they were holding.

Marie-Claude Simon testified to this court (¶15), "I have no relationship with .......Jean-Francois and Christophe Rapeneau ..".  Such is false.  The Rapeneau brothers had lost $2M in the Bricout scandal and were now Hauchart and Simon partners.  John Gidding summed this matter up in his September 22, 2004 letter to the Prosecutor of the French Republic (**FAC Ex 41 p.7**)

Marie Claude Simon had Mrs. Gidding pay for all translations (**Dec. of Gidding Ex D**).  This invoicing shows that Simon never used or paid for the services of Madame Bertrand .  As alleged in the FAC, FIDAL, Clement's law firm had Madame Bertrand translate a forged settlement agreement (**FAC Ex 36**) that removed Defendant Plantagenet Partners SA ("PPSA") and left Defendant PLB Holdings SA ("PLB") (**FAC ex 31**).

PLB, a Luxembourg corporation owned by Cayman Island corporations, was capitalized with 450,000€of cash (**FAC Ex 12 p.6**) and purchased the shares of SCEV.  PPSA, a French corporation, sold PLB's shares to Levant for twice what PLB bought it for (**FAC ¶40, Ex. 13**).  Under article 324-1 of the French Penal Code this is money laundering.  As Patrick Raulet's criminal suit was based on the fraudulent collusion of John Gidding and PLB, and he need to produce a settlement agreement without PPSA.  As

BIRNBERG &
ASSOCIATES

703 MARKET STREET
SUITE 600
SAN FRANCISCO
CA. 94103
TEL (415) 398-1040
FAX (415) 398-2001

OPPOSITION TO MOTION FOR MARIE SIMON'S LACK OF JURISDICTION MOTION
Case No. C-7-04755-JW

1  alleged in the FAC, Anderson had already supplied him with such a forgery but, as the

2  Hartford settlement agreement stipulated that each party notify the other before divulging

3  the agreement (**FAC Ex 5 ¶11**), only Marie-Claude Simon could get the Bertrand

4  Translation into play.

5      On September 12, 2003, Marie-Claude Simon, in furtherance of the criminal scheme

6  to defraud, and knowing that she never intended to file the authentic Hartford agreement,

7  sent a fax to Plaintiff's US attorney, Alice Seebach, asking her to fax and mail copies of the

8  authentic Hartford Settlement back to her office (**FAC Ex 27**). Marie-Claude Simon filed

9  the Bertrand Translation in civil court (**FAC Ex 29**).  Marie-Claude Simon's hidden agenda

10  was to provide Raulet with a Translation he could use in criminal court.  Marie-Claude

11  Simon's Predicate Acts have the same purposes and victims as the Predicate Acts of the

12  other Defendants.  Raulet filed the forged Translation in criminal court and charged John

13  Gidding with more crimes (FAC ex 40).  Simon never spoke to John Gidding again.

14      On the one hand, Marie-Claude Simon is trying to tell this court that she is working

15  for the Plaintiffs adversaries because John Gidding told her to.  On the other hand, Marie

16  Claude Simon is trying to tell this court that she stopped working for the Plaintiffs because

17  John Gidding is not paying her.  Both statements are false and both statements are

18  incompatible with the exercise of her profession.

**IV.   THE RICO STATUTES DO NOT REQUIRE THAT SIMON'S ACTS DAMAGED THE PLAINTIFFS OR THAT SIMON'S PREDICATE ACTS DAMAGED THE PLAINTIFFS, BUT RATHER THAT THE PATTERN OF THE PREDICATE ACTS OF ALL THE DEFENDANTS PROXIMATELY DAMAGED THE PLAINTIFFS.**

23      Regardless of whether a RICO claim is predicated upon state or federal criminal

24  violations (or a combination of both); the defendant need not be criminally convicted before

25  a civil plaintiff can sue under RICO. *Sedima, S.P.R.L. v, Imrex Co., 473 U.S. 479, 493*

BIRNBERG &
ASSOCIATES

703 MARKET STREET
SUITE 600
SAN FRANCISCO
CA, 94103
TEL (415) 398-1040
FAX (415) 398-2001

26

27

28

*(1985)*.  The statute requires only that the criminal activities are chargeable under state or federal law, not that the defendant has already been charged or indicted. 18 U.S.C. §1961(1). Marie-Claude Simon chargeable acts are many but include mail fraud and use of the wires, all in interstate commerce.

## V. CITATION TO NON-PUBLISHED CASES IS NOT ALLOWED BY LOCAL RULES

Moving party cites to several unpublished cases, notably *Coupons, 2006 U.S.* Dist. LEXIS 64017. *Coupons* is not relevant here, and Marie-Claude Claire's reliance on such cases is clearly in violation of local rules.  Northern District Local Rule 3-4(e) specifically states that opinions designated as "Not for Citation" shall not be cited to this Court.  Yet, Marie-Claude Simon cites to several unpublished cases and makes no argument why the cases she cites should be exempted from this rule.  See local rule, below:

**(e) Prohibition of Citation to Uncertified Opinion or Order.** Any order or opinion that is designated: "NOT FOR CITATION," pursuant to Civil L.R. 7-14 or pursuant to a similar rule of any other issuing court, may not be cited to this Court, either in written submissions or oral argument, except when relevant under the doctrines of law of the case, *res judicata* or collateral estoppel.

## VI. DISCUSSION- THERE IS PERSONAL JURISDICTION OVER MARIE-CLAUDE SIMON BECAUSE SHE DIRECTED HER ACTIVITIES TO THE FORUM STATE

There are two kinds of jurisdiction a court can exercise over a non resident defendant: general jurisdiction and specific jurisdiction.  Since general jurisdiction based upon due process and general principles of fair play as a standard, Plaintiffs will not spend a

BIRNBERG &
ASSOCIATES

703 MARKET STREET
SUITE 600
SAN FRANCISCO
CA. 94103
TEL (415) 398-1040
FAX (415) 398-2001

OPPOSITION TO MOTION FOR MARIE SIMON'S LACK OF JURISDICTION MOTION
Case No. C-7-04755-JW

substantial amount of time and focus in on the test for specific jurisdiction,

Specific jurisdiction is analyzed under a three prong test: 1) The non resident defendant must purposefully direct activities or consummate some transaction with the forum or resident thereof; or perform some act which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protection of its laws; 2) the claim must be one which arises out of or relates to the defendant's forum related activities; and 3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable. *Schwarzenegger*, 374 F.3d at 802.; *Brayton Purcell LLP v. Recordon & Recordon*, 361 F. Supp. 2d 1135, 1139-1140 (D. Cal. 2005).

**A.  General Jurisdiction- Minimum Contacts**

There is clearly personal jurisdiction over Marie-Claude Simon, based on her substantial contacts with Northern California.

Where, as here, there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits. See, Fed. R. Civ. P. 4(k) (1) (A); *Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199, 1205 (9th Cir. 2006).

In California, a court may exercise jurisdiction on any basis not inconsistent with the Constitution of the state or of the United States. Cal. Code Civ. P. § 410.10; *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1168 (9th Cir. 2006) (exercise of in personam jurisdiction over an out of state defendant is limited by the Due Process Clause of the Fourteenth Amendment.)

Because California's long arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same. *Yahoo! Inc.,* 433 F.3d at 1205.

For a court to exercise personal jurisdiction over a non resident defendant, that defendant must have at least minimum contacts with the relevant forum such that the

BIRNBERG &
ASSOCIATES

703 MARKET STREET
SUITE 600
SAN FRANCISCO
CA, 94103
TEL (415) 398-1040
FAX (415) 398-2001

exercise of jurisdiction does not offend traditional notions of fair play and substantial

justice. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004); see

also, *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95

(1945).

**B. Specific Jurisdiction- Three Prong Test**

**1.  Prongs One and Two**

The first and second prongs of the three prong test for specific jurisdiction, state that

1) the non resident defendant must purposefully direct activities or consummate some

transaction with the forum or resident thereof; or perform some act which he purposefully

avails himself of the privilege of conducting activities in the forum, thereby invoking the

benefits and protection of its laws; and 2) the claim must be one which arises out of or

relates to the defendant's forum related activities.  *Schwarzenegger*, 374 F.3d at 802.;

*Brayton Purcell LLP v. Recordon & Recordon*, 361 F. Supp. 2d 1135, 1139-1140 (D. Cal.

2005).

Though the Ninth Circuit formerly required a plaintiff to demonstrate each of these

factors to establish specific jurisdiction, now jurisdiction may be established with a lesser

showing of minimum contacts if considerations of reasonableness dictate. *Ochoa v. J.B.*

*Martin & Sons Farms*, 287 F.3d 1182, 1189 (9th Cir. 2002). Under this analysis, there will

be cases in which the defendant has not purposefully directed its activities at the forum

state, but has created sufficient contacts to allow the state to exercise personal jurisdiction if

such exercise is sufficiently reasonable. *Id.*

*Schwarzenegger* particularly relies on two prior cases of this circuit that interpret

*Calder v. Jones*, 465 U.S. 783 (1984): the *Sinatra* and *Bancroft* cases.  In *Sinatra v.*

*National Enquirer, Inc.*, 854 F.2d 1191 (9th Cir. 1988), the National Enquirer published

false stories about by Frank Sinatra, the famous singer, to a Swiss clinic for "youth

regeneration treatments." *Id.* at 1192. The clinic and the National Enquirer had made a deal

BIRNBERG &
ASSOCIATES

703 MARKET STREET
SUITE 600
SAN FRANCISCO
CA. 94103
TEL (415) 398-1040
FAX (415) 398-2001

OPPOSITION TO MOTION FOR MARIE SIMON'S LACK OF JURISDICTION MOTION
Case No. C-7-04755-JW

whereby the clinic would supply bogus information about Sinatra to National Enquirer reporters during interviews conducted in Switzerland in return for the publicity it would receive by being featured in the resulting National Enquirer article. Sinatra sued the National Enquirer and the clinic in California state court for misappropriation of his name, likeness, and photograph. The action was removed to federal district court, and the clinic sought to dismiss for lack of personal jurisdiction.

In application of the three-part *Calder* effects test, the Clinic has directed its activities at California by using Sinatra's name in an effort to promote its business. The Swiss acts or directions that had a California effect consist of: (1) the misappropriation of the value of Sinatra's name through interviews conducted in Switzerland between Clinic employees and Enquirer reporters, in which the Clinic supplied false information about Sinatra's treatment at the Clinic; (2) the Clinic's California advertising efforts to attract patients; and (3) the Clinic's knowledge of Sinatra's residence in California. *Id.* at 1195. We noted that the clinic "treated many California residents," "mounted significant advertising efforts in California" apart from the National Enquirer article, and that the clinic's false statements about Sinatra were "expressly calculated to cause injury in California." *Id.* at 1196, 1198. The court observed without elaboration that "California is the situs of Sinatra's injury." Id. at 1195.

The court concluded that "the misappropriation [of Sinatra's persona] is properly viewed as an event within a sequence of activities designed to use California markets for the [clinic's] benefit." Id. at 1197. "Therefore," the court concluded that the Clinic, through its pursuit of California clients by advertising, part of which involved the misappropriation of Sinatra's name in order to benefit the Clinic through the implied endorsement, possessed sufficient minimum contacts with California to justify the district court's exercise of jurisdiction over it. *Id.* at 1198; accord *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1020 (9th Cir. 2002) (finding purposeful availment of Nevada under *Calder* where defendant "specifically targeted consumers in Nevada by running radio and print

BIRNBERG &
ASSOCIATES

703 MARKET STREET
SUITE 600
SAN FRANCISCO
CA, 94103
TEL (415) 398-1040
FAX (415) 398-2001

OPPOSITION TO MOTION FOR MARIE SIMON'S LACK OF JURISDICTION MOTION
Case No. C-7-04755-JW

advertisements in Las Vegas") (internal quotation marks omitted).

In *Bancroft & Masters, Inc. v. Augusta National, Inc*., 223 F.3d 1082 (9th Cir. 2000), Bancroft & Masters was a small California company that registered the Internet domain name "*www.masters.com*." Augusta National, a Georgia corporation and the host of the famous "Masters" golf tournament, allegedly sent a letter to the official domain name registrar in Virginia, challenging Bancroft & Masters's use of www.masters.com. Bancroft & Masters brought suit against Augusta National in federal district court in California for a declaratory judgment to establish its ownership of the domain name. In response, Augusta National successfully moved the district court to dismiss the action for lack of personal jurisdiction.

Bancroft & Masters appealed, and we applied the *Calder* effects test. We observed that *Calder* "cannot stand for the broad proposition that a foreign act with foreseeable effects in the forum state always gives rise to specific [personal] jurisdiction." *Id*. at 1087; see *Calder,* 465 U.S. at 789 ("The mere fact that [defendants] can 'foresee' that the [allegedly libelous] article will be circulated and have an effect in [the forum state] is not sufficient for an assertion of [specific personal] jurisdiction."); *Burger King*, 471 U.S. at 474 ("Although it has been argued that foreseeability of causing injury in another State should be sufficient to establish such contacts there when policy considerations so require, the Court has consistently held that this kind of foreseeability is not a 'sufficient benchmark' for exercising personal jurisdiction." (quoting *World-Wide Volkswagen*, 444 U.S. at 295) (footnote omitted)).

The Court construed *Calder* to require "something more" than mere foreseeability in order to justify the assertion of personal jurisdiction in California over the Georgia defendant. *Bancroft & Masters*, 223 F.3d at 1087. The intentional act committed by Augusta National was its drafting and mailing of a letter from Georgia to Virginia. The harm was felt by Bancroft & Masters in California. The Court held that in sending this

BIRNBERG &
ASSOCIATES

703 MARKET STREET
SUITE 600
SAN FRANCISCO
CA, 94103
TEL (415) 398-1040
FAX (415) 398-2001

OPPOSITION TO MOTION FOR MARIE SIMON'S LACK OF JURISDICTION MOTION
Case No. C-7-04755-JW

letter, Augusta National had expressly aimed its conduct at California -- even though the letter was actually sent to Virginia -- "because it individually targeted [Bancroft & Masters in California]." *Id*. at 1088 (emphasis added); accord *California Software Inc. v. Reliability Research, Inc.,* 631 F. Supp. 1356, 1361 (C.D. Cal. 1986) (finding personal jurisdiction proper where plaintiffs' complaint was that defendants intentionally and individually targeted them). The Court therefore reversed the district court and held that a California forum could properly assert jurisdiction over Augusta National for its act in sending the letter to Virginia.

To support its holding in *Bancroft & Masters*, the Court cited *Panavision International, L.P. v. Toeppen*, 141 F.3d 1316 (9th Cir. 1998). In *Panavision*, defendant Dennis Toeppen, a resident of Illinois, had registered the Internet domain name "www.panavision.com." *Id*. at 1318-19. "Panavision" was plaintiff's registered trademark, and defendant's alleged plan was to obtain money from plaintiff in exchange for the rights to www.panavision.com. In furtherance of his plan, defendant sent a letter to plaintiff in California demanding $ 13,000 to release his registration of www.panavision.com. *Id*. at 1323. Instead of paying defendant, Panavision sued him in federal district court in California. The Court sustained the exercise of personal jurisdiction. For instance, and similarly here, MCS demanded money from Pivotal and Gidding in California, when the bill was paid previously thus under *Panvision*, jurisdiction is valid on this point alone

When a nonresident defendant raises a challenge to personal jurisdiction, the plaintiff bears the burden of showing that jurisdiction is proper. *Decker Coal Co. v. Commonwealth Edison Co., 805* F.2d 834, 839 (9th Cir. 1986). In the context of a motion to dismiss based upon pleadings and affidavits, the plaintiff may meet this burden by making **a prima facie** showing of personal jurisdiction. *Metropolitan Life Ins. v. Neaves*, 912 F.2d 1062, 1064 n.1 (9th Cir. 1990); *Data Disc*, 557 F.2d at 1285. In determining whether the plaintiff has made a prima facie showing, documents submitted by the plaintiff are construed in the light most

BIRNBERG &
ASSOCIATES

703 MARKET STREET
SUITE 600
SAN FRANCISCO
CA, 94103
TEL (415) 398-1040
FAX (415) 398-2001

OPPOSITION TO MOTION FOR MARIE SIMON'S LACK OF JURISDICTION MOTION
Case No. C-7-04755-JW

favorable to the plaintiff and all doubts are resolved in the plaintiff's favor. *Metropolitan Life*, 912 F.2d at 1064 n.1. Plaintiff has made a prima facie showing.

**2. Prong Three: Exercise of Jurisdiction Unreasonable.**

The third factor is whether the exercise of specific jurisdiction over the defendant would be unreasonable. *Schwarzenegger*, 374 F.3d at 802.; *Brayton Purcell LLP v. Recordon & Recordon*, 361 F. Supp. 2d 1135, 1139-1140 (D. Cal. 2005).

"For jurisdiction to be reasonable, it must comport with 'fair play and substantial justice.' … '[W]here a defendant who purposefully had directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Panavision Intern., L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir.1998). In addressing the reasonableness of the exercise of jurisdiction, seven factors are considered: (1) the extent of a defendant's purposeful interjection; (2) the burden on the defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Id.* No one factor is dispositive; a court must balance all seven. *Id.*

In reference to the first factor to determine reasonableness, the degree of interjection into the forum state, "[e]ven if there is sufficient "interjection" into the state to satisfy the purposeful availment prong, the degree of interjection is a factor to be weighed in assessing the overall reasonableness of jurisdiction under the reasonableness prong." *Panavision*, 141 F.3d at 1323. Here, the First Amended Complaint (FAC) alleges that Marie-Claude Simon did the following acts: She was hired to collect the Los Angeles Superior Court judgment against SCEV. (FAC ¶ 54). She proceeded to collection. (FAC ¶55-71). Simon on her own dismissed the sequester in the Chalon's court. (FAC ¶ 72). Simon refused to communicate

BIRNBERG &
ASSOCIATES

703 MARKET STREET
SUITE 600
SAN FRANCISCO
CA. 94103
TEL (415) 398-1040
FAX (415) 398-2001

OPPOSITION TO MOTION FOR MARIE SIMON'S LACK OF JURISDICTION MOTION
Case No. C-7-04755-JW

-13-

1    with Gidding from September 2003 through March 12, 2004 and Gidding had to hire new

2    counsel. (FAC ¶74).

3        Moreover, until an evidentiary hearing or trial on the merits, the complaint's

4    uncontroverted factual allegations must be accepted as true, and any factual conflicts in the

5    parties' declarations must be resolved in plaintiff's favor. *Harris Rutsky & Co. Ins. Servs. v.*

6    *Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003); *Nuovo Pignone, SpA v.*

7    *STORMAN ASIA M/V* 310 F.3d 374, 378(5th Cir. 2002); *Electronics For Imaging, Inc. v.*

8    *Coyle* 340 F.3d 1344, 1349 (Fed. Cir. 2003). But only "well pled facts of plaintiff's

9    complaint, as distinguished from mere conclusory allegations, must be accepted as true."

10   *Wenz v. Memery Crystal* 55 F.3d 1503, 1505 (10th Cir. 1995).

11

12       Likewise, the Declaration of Marie-Claude Simon is intentionally false. She says that

13   all of her communications with Mr. Gidding were in France or in Luxembourg. (¶12 Dec. of

14   Marie-Claude Simon (hereinafter "MCS"). Yet Mr. Gidding was in San Francisco,

15   California. . MSC states that "through the course of [her] representation of Plaintiffs, it was

16   my understanding that Mr. Gidding resided in Europe with his wife and children." Dec.

17   MCS ¶ 13. Such is false. Simon typed and filed a document with the Greffe du Tribunal de

18   Commerce de CHALONS EN CHAMPAGNE- the French court - and gave John Gidding's

19   address to the Judge and court as 1080 Haight St., San Francisco, California. A copy of this

20   lien is attached to this matters original complaint as **Exhibit 22**. (Dec. of Gidding ¶9.

21   Further, to have the judgment enforced in France, MCS prepared a document or

22   "Exequatur" to have the French Courts recognize the California judgment. This document,

23   Exhibit 23 to the complaint was prepared by MCS and gave Mr. Gidding's address as 1080

24   Haight Street, San Francisco, California. See ¶ 10 Dec. of Dec. of Gidding"

25

BIRNBERG &
ASSOCIATES

703 MARKET STREET
SUITE 600
SAN FRANCISCO
CA. 94103
TEL (415) 398-1040
FAX (415) 398-2001

26

27

28

OPPOSITION TO MOTION FOR MARIE SIMON'S LACK OF JURISDICTION MOTION
Case No. C-7-04755-JW

-14-

The billing attached to the Declaration of MCS is addressed to Mrs. Gidding's company Vinesmith, SA a company in Luxembourg and France. MSC interjected herself into California by receiving monies from California, corresponding with Seebach on the case. She did not use the translation service she claims. MCS caused a significant damage to Gidding when she abandoned the case of a California company and a California resident. She failed to communicate after the sequester and unilaterally released the sequester against SCEV's business. These acts of negligence and malpractice can only be addressed in a court of California. Finally, MCS intentionally filed a settlement agreement that in paragraph 4 left out the solvent party PPSA.

The litigation to validate the California judgment depended on French Judge's appreciation of the fairness of the proceedings. SCEV, the French defendant, claimed that the Plaintiffs and PLB, a liquidated company in Luxembourg, had signed a fraudulent agreement to deprive them of a defense and the right to appeal. The real settlement included PPSA, a thriving company in France. SCEV's lawyers gave Simon a translation of a forged agreement without PPSA, Simon filed the document. SCEV used the translation in criminal court to charge the Plaintiffs with fraud and filed the written accusation as an exhibit in the civil case. Simon's actions validated SCEV's claim of fraud.

Likewise, by submitting the wrong settlement agreement to SCEV, it supports the trumped up criminal defense case proffered by SCEV that Gidding conspired with PLB- and then liquidated and non-existent company to gain a judgment against SCEV in Californian. All of these defenses were raised by SCEV on its motion to set aside the judgment in California and none prevailed. Now SCEV attempts to this again.

BIRNBERG &
ASSOCIATES

703 MARKET STREET
SUITE 600
SAN FRANCISCO
CA. 94103
TEL (415) 398-1040
FAX (415) 398-2001

OPPOSITION TO MOTION FOR MARIE SIMON'S LACK OF JURISDICTION MOTION
Case No. C-7-04755-JW

1

2    In pre-payment for her betrayal, MCS was retained by Defendant Serge Hauchart, the

3    former president of SCEV, and an attorney, Phillippe Clement, representing SCEV against

4    the Plaintiffs, to prepare bogus contracts of sale and to earn enormous fees for doing so.  In

5    her declaration, MCS pretends not to know Serge Hauchart yet the two of them were the

6    principal actors in a fraud that outraged an entire country.

7    Pursuant to *Panavision*, *supra*, a demand letter to another state having an effect in

8    California of damages is significant to confer jurisdiction.

9    Finally the Declaration of Rick Genderson makes it clear that Marie-Claude Simon

10   not only speaks English, she seeks clients in the United States for representation in the

11   courts of France. Thus, the fact that she solicits business here on more than one occasion

12   makes it clear that she does interject herself into this jurisdiction.

13

14   **VII. SERVICE OF PROCESS ON MARIE- CLAUDE SIMON WAS PROPER**

15   Marie-Claude Simon was served the original complaint by mail in English. She is

16   very coy about which complaint she was served. Dec. of MCS ¶19.  The First Amended

17   Complaint was translated but not all of the exhibits were translated.  MCS admits as much.

18   Dec. of MCS ¶20. MCS admits she was personally served with the FAC.  "On February 11,

19   2008 the FAC was delivered to me at my office". Thus compliance with Article 654 is

20   made- notification to the person.  Likewise the obligation contained in Article 688-6, which

21   appears not to be even applicable is the current instance, was nevertheless complied with as

22   the Document is in the language of the country of origin.  MCS admits the FAC was

23   translated. Dec. of MCS ¶20. There is no requirement that the Exhibits be translated.

24   Likewise Ms. Simon opines that she does not understand the difference between the original

25

BIRNBERG &
ASSOCIATES

703 MARKET STREET
SUITE 600
SAN FRANCISCO
CA. 94103
TEL (415) 398-1040
FAX (415) 398-2001

26

27

28

OPPOSITION TO MOTION FOR MARIE SIMON'S LACK OF JURISDICTION MOTION
Case No. C-7-04755-JW

Complaint and the FAC. However, it is offered that she does not need to know as the FAC supersedes the original complaint. A lawyer, Jonathon Polier, licensed and in good standing in New York and in France, who is highly skilled in these matters, and is listed in many web sites as a professional conducting this type of service, supervised the service.

Marie-Claude Simon was served with (a) the Summons and the First Amended Complaint, (b) a translation into French of the Summons and the First Amended Complaint and (c) a listing of the 46 documents upon which the action was founded (in French),all in compliance with the relevant provisions of the French Code of Civil Procedure. Process of service was duly effected on Marie-Claude Simon in accordance with the laws of France.

Due to the volume of the exhibits, instead of using the French process server to serve the exhibits on Marie-Claude Simon, the exhibits to the Summons and the First Amended Complaint were delivered to her at her office. Dec. of J.Polier ¶ 3.

The exhibits to the Summons and the First Amended Complaint can be translated for Marie-Claude Simon (a substantial portion of the exhibits are in French) and the translations can be served or delivered to her.). Plaintiffs' can have this done within two weeks.

Attached to the Declaration of Jonathon Wise Polier, marked Exhibit A and incorporated herein by reference is a true and copy of the proof of personal service, in French. Attached to the Declaration of Jonathon Wise Polier, marked Exhibit B and incorporated herein by reference is a true and correct copy of the listing of the 46 documents/exhibits upon which the action was founded delivered Marie-Claude Simon, in French.

BIRNBERG &
ASSOCIATES

703 MARKET STREET
SUITE 600
SAN FRANCISCO
CA. 94103
TEL (415) 398-1040
FAX (415) 398-2001

OPPOSITION TO MOTION FOR MARIE SIMON'S LACK OF JURISDICTION MOTION
Case No. C-7-04755-JW

.    Article 10 of the November 15, 1965 Hague Convention on the *Service Abroad of Judicial and Extra Judicial Documents in Civil or Commercial Matters* provides a second, non-exclusive option for service of process:

Provided the State of destination does not object, the present Convention shall not interfere with-

(a)  the freedom to send judicial documents, by postal channels, directly to persons abroad,

(b)  the freedom of judicial officers, officials or other competent persons of the State of origin to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination,

(c)  **the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination** [emphasis added].

France does not object to service of process effected in accordance with Article 10(c) of the Convention. Dec. of J.Polier ¶ 6. Marie Claude Simon was served with 86 pages consisting of the Summons and the First Amended Complaint, with a translation into French, and the list of exhibits in French in accordance with Article 10(c) of the Convention, (See Exhibit B Dec. of J.Polier) since the pages were served in accordance with French law by a French Judicial Officer ("*Huissier de Justice*"). The affidavit of service is Exhibit A to the Dec. of J.Polier.

Overall service is valid on Marie-Claude Simon. If she wants all the exhibits translated, then we will do that, but it does not void service that some of the documents

BIRNBERG & ASSOCIATES

703 MARKET STREET
SUITE 600
SAN FRANCISCO
CA, 94103
TEL (415) 398-1040
FAX (415) 398-2001

OPPOSITION TO MOTION FOR MARIE SIMON'S LACK OF JURISDICTION MOTION
Case No. C-7-04755-JW

-18-

were in English.

## VIII. CONCLUSION

For the foregoing reasons, this Court should find that there is sufficient personal jurisdiction over Marie-Claude Simon in Northern California, and should therefore deny her motion to dismiss for lack of personal jurisdiction.


BIRNBERG & ASSOCIATES

Dated: 21 March 2008                                    By:  /s/ Cory A. Birnberg
                                                        Cory A. Birnberg
                                                        Attorneys for Plaintiffs

BIRNBERG &
ASSOCIATES

703 MARKET STREET
SUITE 600
SAN FRANCISCO
CA, 94103
TEL (415) 398-1040
FAX (415) 398-2001

OPPOSITION TO MOTION FOR MARIE SIMON'S LACK OF JURISDICTION MOTION
Case No. C-7-04755-JW