1  BIRNBERG & ASSOCIATES
   CORY A. BIRNBERG (SBN 105468)
2  JOSEPH SALAMA, ESQ. (SBN 212225)
   BIRNBERG & ASSOCIATES
3  703 Market Street, Suite 600
   San Francisco, CA 94103
4  Telephone: (415) 398-1040
   Facsimile: (415) 398-2001

   Attorneys for Plaintiffs
6  JOHN GIDDING, PIVOTAL, INC.

8              UNITED STATES DISTRICT COURT

9             NORTHERN DISTRICT OF CALIFORNIA

10                SAN FRANCISCO DIVISION

12  JOHN GIDDING, PIVOTAL, INC.        ) Case No. C-7-04755-JW
                                       )
13       Plaintiffs,                   ) DECLARATION OF JOHN
                                       ) GIDDING IN OPPOSITION TO
14  v.                                 ) MOTION TO MARIE-CLAUDE
                                       ) SIMON FOR LACK OF
15  DEREK ANDERSON, et al.,            ) PERSONAL JURISDICTION
                                       )
16       Defendants.                   )
                                       ) Date: May 30, 2008
17                                     ) Time: 9:00 a.m.
                                       ) Place: 2, 17th Floor.
18  _____     )

BIRNBERG & ASSOCIATES
703 MARKET STREET
SUITE 600
SAN FRANCISCO
CA, 94103
TEL (415) 398-1040
FAX (415) 398-2001

DECLARATION OF JOHN GIDDING IN OPPOSITION TO MOTION TO DISMISS FOR MARIE-CLAUDE SIMON'S LACK OF PERSONAL JURISDICTION      Case No. C-7-04755-JW

-1-

I, John Giddings, declare:

1. I am an American citizen and a resident of California. I have known Marie-Claude Simon ("Simon") since September 2001, and I have read her declaration.

2. From 1982 through 1992, I resided at 20700 Exhibit Place, Woodland Hills California. From 1992 to 2001, I resided at 1796 La Loma Road, Pasadena, California. From 2001 through today, I reside at 1080 Haight Street, San Francisco, California. I have always held a valid California Drivers license.

3. I pay my State income taxes to California, and I file and pay my Federal income taxes from California.

4. From 1988 through today I have been an employee, officer, director, and shareholder of Pivotal Inc., a California corporation. I am a 55% owner of Pivotal Inc., the other stockholders are California residents.

5. Mrs. Gidding is a French citizen, we were married under a contract of separation of interests, we have separate residences, we have our own companies, and we file our personal income taxes separately. In September 2001, when I first met Marie-Claude Simon ("Simon") my daughter was in grade school in Pasadena, California and my son was at Harvard. Both of my children are US citizens. My children and I travel back and forth from the United States to Europe constantly and we speak French and English fluently.

6. In July 1999, Pivotal & Gidding sued SCEV in California, In August 1999, SCEV sued Pivotal & Gidding in Chalons, France. In June 2000, Gidding sued Champagne Ayala in Reims, France (Ayala and Chateau La Lagune were companies controlled by a

BIRNBERG & ASSOCIATES
703 MARKET STREET
SUITE 600
SAN FRANCISCO
CA, 94103
TEL (415) 398-1040
FAX (415) 398-2001

DECLARATION OF JOHN GIDDING IN OPPOSITION TO MOTION TO DISMISS FOR MARIE-CLAUDE SIMON'S LACK OF PERSONAL JURISDICTION                                                                                                          Case No. C-7-04755-JW

-2-

1  lawyer, Jean-LucMercier, who was controlled by Defendants Jean-Francois and Christophe
2  Rapeneau). All the suits are interrelated. I was represented by Pierre Benichou, my wife's
3  attorney, in Chalons and Reims. Attached as **Exhibit A** is a true and correct copy of
4  Benichou's pleadings in the Chalons Court. I was dismissed from this suit. Pivotal lost.
5  Benichou used Olivier Delvincourt to handle Pivotal's appeal. Pivotal won. When I needed
6  to serve SCEV with documents relative to the California suit, Benichou recommended
7  Simon, who had an office next to Delvincourt. During this time Defendant Patrick Raulet
8  ("Raulet"), the owner of Defendant Compagnie des Vins du Levant ("Levant') acquired
9  80% of the shares of SCEV. Attached as **Exhibit B** is a true and correct copy of the fiscal
10 declaration of Levant.

   9.    Mrs. Gidding comes from a large family living in the Reims, Epernay, and
Chalons, and as such they have known the "Champagne" defendants in this action for
generations. When Raulet began to convey SCEV's stocks of champagne from Chalons to
SA Charles de Cazanove ("Cazanove-A") in Epernay, I was alerted by SCEV's bankers (the
SNVB Bank in Epernay). The SNVB Bank agreed to help stop the conveyance if I would
reconsider settlement with Raulet. I gave Simon this information and she served notice on
Cazanove-A. Attached as **Exhibit C** is a true and correct copy of the notice served on
Cazanove-A. Simon then attached liens to SCEV's assets. As Benichou was handling the
overall matter, Simon invoiced Mrs. Gidding's companies for this work.

   10.   When the settlement talks with Raulet broke down, I needed to choose a lawyer
to validate the California judgment in France. Benichou was now using attorney Henri
Billet, the head of the Reims Bar Association for the Ayala suit, and he felt he was most

BIRNBERG &
ASSOCIATES

703 MARKET STREET
SUITE 600
SAN FRANCISCO
CA, 94103
TEL (415) 398-1040
FAX (415) 398-2001

DECLARATION OF JOHN GIDDING IN OPPOSITION TO MOTION TO DISMISS FOR MARIE-CLAUDE SIMON'S LACK OF PERSONAL JURISDICTION                                                                                          Case No. C-7-04755-JW

-3-

qualified.

However, as Simon could speak and read English and very actively solicited this business, I chose Simon. There were many exchanges of letters, declarations, documents, and telephone calls from Pivotal's offices in North Hollywood to Simon's offices in Reims, during the selection process, and many more were needed to construct the draft of the complaint. The list of this documents that were finally chosen by Simon, and translated at Mrs. Gidding's expense, can be found on the back of the complaint Simon filed (FAC Ex. 23). Simon chose the documents to be translated because she could read English.

11. By this time Simon was perfectly aware that I lived in California and that Mrs. Gidding lived in Luxembourg. Mrs. Gidding paid all of the translators' invoices. Attached as **Exhibit D** is a true and correct copy of Mrs. Gidding's letter to Simon containing the checks for the translators' fees. The invoices Simon uses in her Declaration were for the liens on Cazanove-A, and are invoiced to my wife's company, Vinesmith SA, in Luxembourg. Pivotal paid Simon's fees to validate the California judgment, twice, both times in a timely fashion. Attached as **Exhibit E** are true and correct records of Pivotal paying Simon twice.

11. I do not own or control Opson Holdings SA ("Opson"), I have a symbolic share that allows voting in directors meetings, and I cannot sign alone for Opson. Opson belongs to the Schneider's Liquors in Washington DC. I have done business with Schneiders from 1979 through today.

12. Simon represented Pivotal & Gidding against SCEV, and FIDAL represented SCEV. Phillippe Clement ("Clement") was SCEV's overall lawyer. Clement and

DECLARATION OF JOHN GIDDING IN OPPOSITION TO MOTION TO DISMISS FOR MARIE-CLAUDE SIMON'S LACK OF PERSONAL JURISDICTION                                      Case No. C-7-04755-JW

BIRNBERG & ASSOCIATES
703 MARKET STREET
SUITE 600
SAN FRANCISCO
CA, 94103
TEL (415) 398-1040
FAX (415) 398-2001

1  Defendant Serge Hauchat ("Hauchart") had prepared a "Contract of Sale" to conceal

2  Hauchart's ownership of SCEV (FAC Ex. 14).  Hauchart's principal occupation in 1998

3  was laundering cash for the Republican Party of France.  Attached as **Exhibit F** is a true

4  and correct International News clipping referencing Hauchart as the "Bag Man" for the

5  Secretary of Defense.  The Bank in question, as owned by Ahmed Chakkar, an intimate of

6  Sadamn Hussein.  Ahmed Chakkar and Hauchart were convicted and sentenced to jail in

7  2004.

8  

9  12.     In November 2002, Clement and Hauchart hired Simon to share in the spoils of

10 the largest fraudulent bankruptcy in the history of Champagne, "*L'affaire Champagne

11 Bricout*" as the press styled it.  Attached as **Exhibit G** are true and correct copies of a

12 month of Simon's invoices to Hauchart.  When the string ran out, $20,000,000 had

13 disappeared from Champagne Bricout.  Then, Clement, Simon and Hauchart drafted and

14 signed a contract that made Opson the buyer of Champagne Bricout for $17,000,000, and

15 told the outraged citizens, judges, and police that I had the money.  Attached as **Exhibit H**

16 are true and correct copies of a fraction of the newspaper clippings concerning this fraud.

17 The details of the $100,000,000 of assets I presumably acquired are in the small print, the

18 details of the $150,000,000 of liabilities I presumable acquired are in the large print.  Raulet

19 chose this moment, May 12, 2003, to accuse me of colluding with Defendant PLB Holding

20 SA ("PLB"), and defrauding SCEV in the California litigation (FAC Ex. 40).  Simon's

21 description of these events can be found in paragraph 15 of her declaration.

22 13.     The court put Champagne Bricout into the hands of Jean-Luc Mercier, my

23 adversary in the Champagne Ayala suit, and Jean-Luc Mercier was represented by Henri

DECLARATION OF JOHN GIDDING IN OPPOSITION TO MOTION TO DISMISS FOR MARIE-CLAUDE SIMON'S LACK OF PERSONAL JURISDICTION                                                                          Case No. C-7-04755-JW

BIRNBERG & ASSOCIATES
703 MARKET STREET
SUITE 600
SAN FRANCISCO
CA, 94103
TEL (415) 398-1040
FAX (415) 398-2001

1  Billet, my lawyer in the Champagne Ayala suit. In a courtroom packed with hundred of

2  people, Jean-Luc Mercier accused me of fraud before the assembled judges. I mention all

3  this because my suit to validate the California judgment depended on these judges.

4

5      14. Hauchart and Simon had given the court a plan to restructure Champagne

6  Bricout, and their partners in the plan were Jean-Francois and Christophe Rapeneau, who

7  had secretly acquired 20% of SCEV in April 1999. Attached as **Exhibit I** is a true and

8  correct copy of PLB's transfer of 20% of SCEV to Lemal, dated April 13, 1999 and valued

9  at 3,180,500 French Francs. Attached as **Exhibit J** is a true and correct copy of the

10  commercial paper prepared by Jean-Luc Mercier, dated April 16, 1999 and valued at

11  3,180,500 French Francs. The commercial invoices in Exhibit H do not reflect any

12  transaction but the banking papers are fungible. The company holding the useless invoices,

13  "Axis Bordeaux SARL, belongs to Mrs. Gidding. As a direct result of these two

14  transactions, corrupted officials working for the Treasury Department of France, raided

15  Mrs. Gidding's home and subjected John and Madeleine Gidding to outrage, violence, and

16  threats of retaliation, in an effort to conceal the fact that they had stolen the dossiers relative

17  to SCEV and Ayala. Mrs. could not hold up, signed, and never recovered. John Gidding

18  refused to sign. Mrs. Gidding, like Eva Joly, the judge who indicted Hauchart for money

19  laundering, fled France in fear of her life. In September 2004, in an effort to keep from

20  being indicted, I explain all this to the Prosecutor of the French Republic (FAC Ex. 41).

21  These are the "tax problems" that Simon is referring to her declaration.

22

23      15. In July 2003, Hauchart owned a single share of SCEV. Attached as **Exhibit K**

24  is are true and correct copy of an analysis of the share register of SCEV. With Simon and

BIRNBERG &
ASSOCIATES

703 MARKET STREET
SUITE 600
SAN FRANCISCO
CA, 94103
TEL (415) 398-1040
FAX (415) 398-2001

DECLARATION OF JOHN GIDDING IN OPPOSITION TO MOTION TO DISMISS FOR MARIE-CLAUDE SIMON'S LACK OF PERSONAL JURISDICTION     Case No. C-7-04755-JW

Hauchart in hand, Christophe Rapeneau secretly gathered up all of SCEV's shares in Financier ER, a company that controlled the interests of Champagne Ayala and his own champagne companies. Attached as **Exhibit L** is are true and correct copy of the minutes of SCEV. Hauchart and Simon convened a settlement meeting with the Rapeneau brothers, and instead of money, the distribution rights of SCEV's champagne in the USA was on the table. I refused.

16. By September 2003, Simon had a forged Translation of the Hartford Settlement Agreement and orders to exchange my last sequester on SCEV's commerce with Levant. This would allow the Rapeneau brothers to recover the assets (bottles of champagne) the SCEV had conveyed to Cazanove-A. Simon would never see or talk me again, Simon filed the Translation that implicated me in a new fraud, released the sequesters on SCEV's commerce, and Raulet filed the translation in criminal court (FAC ex 40). Simon's correspondence from then on, her demands to be paid twice, etc., were devices to retain my documents, dissimulate her fraud, and keep me from defending myself in court. On March 4, 2004, Simon's corresponding lawyer, Jacques Frey, tried to cover up Simon's filing of the Translation by telling Mrs. Gidding that nothing had been filed. Attached as **Exhibit M** is are true and correct copy of Mrs. Gidding demands that Simon explain. Simon's declaration before this court is her only reply.

I declare under penalty of perjury the foregoing is true and correct under the laws of the United States and pursuant to 28 U.S.C.§ 1746. Executed this 21st day of March 2008 at San Francisco, California.

By:__/s/John Gidding_____
John Gidding

DECLARATION OF JOHN GIDDING IN OPPOSITION TO MOTION TO DISMISS FOR MARIE-CLAUDE SIMON'S LACK OF PERSONAL JURISDICTION                                                                                    Case No. C-7-04755-JW

-7-

BIRNBERG & ASSOCIATES
703 MARKET STREET
SUITE 600
SAN FRANCISCO
CA, 94103
TEL (415) 398-1040
FAX (415) 398-2001