1  BIRNBERG & ASSOCIATES
   CORY A. BIRNBERG (SBN 105468)
2  JOSEPH SALAMA (SBN 212225)
   BIRNBERG & ASSOCIATES
3  703 Market Street, Suite 600
   San Francisco, CA 94103
4  Telephone: (415) 398-1040
   Facsimile: (415) 398-2001
5
   Attorneys for Plaintiffs
6  JOHN GIDDING, PIVOTAL, INC.

7

8             UNITED STATES DISTRICT COURT

9             NORTHERN DISTRICT OF CALIFORNIA

10            SAN FRANCISCO DIVISION

11

12  JOHN GIDDING, PIVOTAL, INC.        ) Case No. C-7-04755-JW
                                       )
13         Plaintiffs,                 ) PLAINTIFFS' OPPOSITION TO
                                       ) PLATAGENET DEFENDANTS'
14  v.                                 ) MOTION TO DISMISS
                                       )
15  DEREK ANDERSON, et al.,            )
                                       ) Date:   March 28, 2008
16         Defendants.                 ) Time:   9:00 a.m.
                                       ) Courtroom 2, 17th Floor
17  _____)

BIRNBERG &
ASSOCIATES
703 MARKET STREET
SUITE 600
SAN FRANCISCO
CA, 94103
TEL (415) 398-1040
FAX (415) 398-2001

0

PLAINTIFFS' OPPOSITION TO PLANTAGENETS' MOTION TO DISMISS       Case No. C-7-04755-JSW

NOW COME Plaintiffs JOHN GIDDING and PIVOTAL, INC. and do hereby oppose the Plantagenet Defendant's motion to dismiss.

## INTRODUCTION

Plantagenet Defendants' motion characterizes this as a "garden variety commercial dispute." There is nothing, at least in the lives and experiences of Plaintiffs, garden variety about it at all. This is a complex money laundering case involving multiple shell companies[1], many of which are headquartered in the Cayman Islands.

Plantagenet Defendants' motion does a brilliant job of obfuscating the truth of what happened by making good use of the multiple fictitious parties in the case. Plantagenet Defendants' motion relies on the underlying premise that each of the defendants is a separate entity with separate interest. This is far from true. There are, for the purposes of this motion, only three relevant players: Plaintiffs (wine importers), Defendant DEREK ANDERSON/ Plantagenet Defendants (apparently "investment companies"), and SCEV (a champagne producer). Once the cast of characters is simplified in this manner, it becomes much easier to see that this case – a money laundering scheme that takes place over several years using several entities and numerous transactions – is a classic RICO case and that the elements of RICO were, in fact, adequately pled.[2]

## RELEVANT FACTUAL BACKGROUND

Defendant DEREK ANDERSON is in the business of laundering money using his investment companies. ANDERSON has created and assembled numerous entities, PCM, PCA, PCF-1, PCF-2, PLB, and PPSA – all of which are his alter egos - with the purpose of reinvesting monies kept in the Cayman Islands by wealthy individuals. As such, these companies are perfect for money laundering and/or tax evasion. Clients come to ANDERSON possibly to avoid taxes, possibly because their money has a criminal origin, possibly because they are honest persons with money to invest. ANDERSON, through his Plantagenet entities, invests or conveys this money (e.g., buys an

---

[1] As used in this pleading, a shell company is one with no independent management or corporal existence.
[2] Prior counsel for Plaintiffs omitted some factual background from the complaint, possibly trying to simplify the case and make it easier to understand. The unfortunate result is that the case has a tendency to appear to be a collection case, and not a money laundering case.

BIRNBERG & ASSOCIATES
703 MARKET STREET
SUITE 600
SAN FRANCISCO
CA, 94103
TEL (415) 398-1040
FAX (415) 398-2001

1
PLAINTIFFS' OPPOSITION TO PLANTAGENETS' MOTION TO DISMISS    Case No. C-7-04755-JSW

asset on behalf of the client using the money, or sells an asset to the client in exchange for the money). Eventually the money returns to the client from a different entity in an apparently unrelated transaction. ANDERSON's business relies on falsified documents. In fact, there could be no money laundering without falsified documents to cut off the trail to the origin of the money. Nearly every single document submitted in this case is a falsified document, and no doubt every single one was transmitted by mail or wire at some point in time. Many of them are inconsistent with one another, many are signed under penalty of perjury, and most have been filed in one court or another some time in the last nine years.

On January 16, 1999, PLB, one of ANDERSON's shells, bought SCEV (a champagne producer) for 15M francs using as portion of the cash and deposits paid to PLB from Hauchart[3] (3M francs) and Levant/Raulet (15M francs)

On March 2, 2000, PLB transfers 80% of SCEV to Levant/Raulet who pays **Defendant PPSA** 29M francs.

Why did Levant/Raulet pay *PPSA* for only 80% of SCEV rather than PLB? (PLB and PPSA are not subsidiaries of one another or a parent company). How did SCEV somehow double in value in one year? Why would an original investor of PLB who paid 15M francs to fund the purchase of SCEV, spend double that to obtain title one year later from an entity which did not own it? These transactions, on their face, are not legitimate credible transactions, and smell of placement, layering, and integration.[4] Rest assured that at the end of the day, Levant/Raulet got back his

---

[3] Hauchart was later indicted and convicted in France for money laundering.

[4] Placement: *The aims of the launderer are to remove the cash or funds from the location of acquisition so as to avoid detection from the authorities and to transform it into other asset forms* (18M was "placed" at PLB); Layering: *The concealment or disguise of the ownership of the funds by creating complex layers of financial transactions designed to disguise the audit trail and then to transform it into other asset forms* (PLB "layered" 15MF through the purchase and transfer of the shares of SCEV); Integration - *The money is integrated into the legitimate economic and financial system and is assimilated with the other assets in the system* (PPSA received 29MF from Levant/Roulet and integrated the proceeds of the sale with its legitimate commerce by purchasing the shares of SA Pain et Force). *See FFIEC Bank Secrecy Act/Anti-Money Laundering InfoBase, Introduction*; *The 2001 National Money Laundering Strategy*, prepared by the U.S. Department of Treasury, in consultation with the U.S. Department of Justice (available at http://www.ustreas.gov/press/releases/docs/ml2001.pdf ).

BIRNBERG & ASSOCIATES
703 MARKET STREET
SUITE 600
SAN FRANCISCO
CA, 94103
TEL (415) 398-1040
FAX (415) 398-2001

2

PLAINTIFFS' OPPOSITION TO PLANTAGENETS' MOTION TO DISMISS                    Case No. C-7-04755-JSW

money, probably through a newly formed subsidiary, partnering company, or some other indirect way, minus ANDERSON/ Plantagenet Defendants' transaction fees of course.

Plaintiffs' obtained a judgment against SCEV on March 22, 2002. In order for Plaintiffs to enforce the foreign judgment (from LA Superior Court) in France it is necessary for the court to validate it. By doctoring the guaranty contract to make it look like a fraud was committed, and by SCEV alleging collusion between Plaintiffs and PLB, the French court refused to validate the judgment. Plaintiffs were never able to collect the money owed to them. SCEV/Levant/Raulet benefited from this because the money that would have been conveyed to Plaintiffs was part of the 29M francs that Levant/Raulet paid to PPSA to launder. ANDERSON/Plantagenet Defendants benefited from this because they avoided any responsibility for payment of the judgment. Of course, the covenant and Hartford settlement agreement has to be doctored as well in order to match the doctored guaranty.

The argument made by SCEV in French court – that PLB colluded with Plaintiffs to alter the guaranty contract - was entirely fictional, made for the purpose of persuading the French court not enforce Plaintiffs' judgment. SCEV's interests were always 100% aligned with PLB and PPSA's interests. And the interests were: (1) cover up the ongoing scheme of money laundering and (2) usurp Plaintiffs' commerce to fuel the money laundering scheme and prevent him from having enough resources to operate in their industry ever again.

**PREDICATE ACTS ALLEGED IN THE FAC**

The predicate acts of wire and mail fraud used in furtherance of the criminal scheme, first by usurping the Plaintiffs' commerce, and then by doctoring their forged contracts to make it appear that the Plaintiffs' obtained their judgment by fraud, (making it unenforceable in France) are:

(1) On or about February 25, 1999, Lemal and ANDERSON, working from PPSA's headquarters in France, gave Hauchart an inter-office instructing him to breach Pivotal's delivery contracts by raising the price of the champagne, to terminate Pivotal's exclusive distribution of Champagne Le Brun in the United States, and to terminate Gidding's agency for LeBrun. Lemal

3
PLAINTIFFS' OPPOSITION TO PLANTAGENETS' MOTION TO DISMISS     Case No. C-7-04755-JSW

BIRNBERG & ASSOCIATES
703 MARKET STREET
SUITE 600
SAN FRANCISCO
CA, 94103
TEL (415) 398-1040
FAX (415) 398-2001

either faxed or mailed copies of this letter to the Importer and agent who were slated to replace PIVOTAL and GIDDING. Plaintiffs' business was being re-routed to PPSA. *See Lemal Letter*, attached to the Declaration of John Gidding as Exhibit A.

(2) Between May 5 and May 11, 2001, ANDERSON and Raulet used fax lines, back and forth, to remove PPSA's name from a covenant. The signatures are forged. FAC ¶61, ¶62, ex. 25.

(3) Between September 10 and 21, 2001, ANDERSON gathered the materials to produce a falsified settlement agreement removing PPSA. FAC ¶ 75, ex. #36. On or about September 10, 2001, the plaintiffs received an offer to settle from THREE parties: PCM, ANDERSON, and Zappettini. On or around September 15, 2001, Plaintiffs received an offer to settle from FOUR parties: PLB, PCM, ANDERSON, and Zappettini. On or around September 20, 2001, Plaintiffs received an offer to settle from FIVE parties: PPSA, PLB, PCM, ANDERSON, and Zappettini. Hartford signed the last offer on September 21, 2001. FAC ¶34, ex. #5. Plaintiffs had signed, initialed, and accepted all three offers, allowing the moving defendants to manufacture a falsified version of the settlement agreement without PPSA. FAC ex. 36.

(4) On September 24, 2001, the Defendants used the fax lines to remove PPSA from the guaranty contract. FAC ¶41, ex. 10, 11.

(5) On September 28, 2001, ANDERSON faxed a letter to Raulet, replacing PPSA with himself, "…I agreed to indemnify the company with regard to any litigation which might be filed against it…I honored that obligation." FAC ¶47, ex. 15.[5]

(6) On January 7, 2002, Raulet mailed a letter to PCM's office in San Francisco ratifying ANDERSON's fraudulent version of the guaranty contract. FAC ¶48, ex.17.

(7) On September 20, 2002, SCEV filed a falsified guaranty contract with its motion to set aside. These documents are mailed to all parties to the case. FAC ¶39, ex. 8.

---

[5] PPSA should be estopped to contest adequacy of service on ANDERSON given ANDERSON's own statement that he is, in essence PPSA.

4
PLAINTIFFS' OPPOSITION TO PLANTAGENETS' MOTION TO DISMISS        Case No. C-7-04755-JSW

BIRNBERG & ASSOCIATES
703 MARKET STREET
SUITE 600
SAN FRANCISCO
CA, 94103
TEL (415) 398-1040
FAX (415) 398-2001

       (8)      On October 1, 2002, SCEV filed a falsified guaranty contract in support of the motion to set aside, and mailed it to all parties to the case. FAC ¶40-49, ex. 9, 10.

       (9)      On or around September 2003, ANDERSON mailed a falsified Hartford settlement agreement to Raulet. FAC ¶67-72, ex. 5.

Each of these predicates acts was done in furtherance of the open-ended scheme of hiding, protecting, and fueling the money laundering and/or tax evasion operation. Defendants routed Plaintiffs' commerce to PPSA and caused immediate damage to Plaintiffs reputation, goodwill, and client base by causing numerous unfilled orders that had been prepaid. Then by submitting falsified documents to the court in France, Plaintiffs' judgment was never validated and became unenforceable, causing them irreparable harm, and furthering the money-laundering scheme by permitting Plaintiffs' money to support the laundering operation.

## ARGUMENT

### A.  PLB AND PPSA WERE PROPERLY SERVED

Plaintiffs tried to serve PLB and PPSA many different ways, but, as they have been liquidated, serving them has proven to be quite challenging. PLB and PPSA no longer have an address to go to, or a listed agent to serve. Their most recent corporate documents cannot be found. In fact, the court in Luxembourg determined that PLB was altogether unservable, and decided that service would be effectuated by serving Zappettini. *See* opinion of Luxembourg court. FAC, Ex. 31. The Ninth Circuit has upheld service on an organization where it is made on an individual who is not an employee or agent but is "so integrated with the organization that he will know what to do with the papers" rendering it "fair reasonable and just to imply the authority on his part to receive service."[6] *Direct Mail Specialists, Inc. v. Eclat Computerized Technologies, Inc.* (9th Cir. 1988) 840 F.2d 685, 688. In this case, there can be no dispute that ANDERSON knew exactly what to do with the papers because Defendants PPSA and PLB received notice, and

---

[6] Of course, PLB and PPSA are alter egos of ANDERSON,

BIRNBERG & ASSOCIATES
703 MARKET STREET
SUITE 600
SAN FRANCISCO
CA, 94103
TEL (415) 398-1040
FAX (415) 398-2001

retained counsel. It is therefore fair reasonable and just, consistent with this opinion, to imply ANDERSON's authority to receive service on behalf of PPSA and PLB.

**B.   PLAINTIFFS' RICO CAUSE OF ACTION WAS SUFFICIENTLY PLED**

    **1.   The Civil Suit Provision of RICO Should Be Liberally Construed**

Persons "injured in [their] business or property by reason of a violation of" RICO's criminal provisions may bring a civil suit. 18 U.S.C. § 1964(c). This civil suit provision of the RICO statute is to be "liberally construed to effectuate its remedial purposes." Pub.L. 91-452, § 904(a), 84 Stat. 947 (1970). Furthermore, Congress' central purpose in enacting civil RICO was to provide civil relief for criminal activity normally associated with professional, organized criminals, despite that in 1985, only 9% of civil RICO cases fell into this category.[7] *Sedima*, *S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 506 (1985). Because this case is a criminal case involving a money-laundering scheme and the submission of falsified documents to numerous courts, this case falls squarely within the stated Congressional purpose, underscoring the need for liberality in the construction in this case.

    **2.   Predicate Acts of Mail and Wire Fraud Were Sufficiently Pled**

Plantagenet Defendants' motion argues that there were insufficient predicate acts alleged in the complaint. In order to believe this assertion, you must forget that every Plantagenet Defendant is an alter ego of ANDERSON, and you must overlook that SCEV was owned by Levant/Raulet, and that ANDERSON was conspiring with SCEV. Looking at the FAC in this myopic manner (i.e., buying into the charade), the January 7, 2002 letter sent from Raulet to PCM would appear to be completely extraneous to the case. Plaintiffs, however, did plead these allegations in paragraphs 12-17, paragraph 28, and throughout the complaint, respectively. Given these allegations, the January 7, 2002 letter now demonstrates that Raulet was approving ANDERSON's falsified document.

Every single predicate act enumerated above uses mail or fax to destroy Plaintiffs' business and prevent them from collecting their judgment. Every act enumerated above also conceals and

---

[7] This Court has no doubt seen the flood of securities cases that have sprung up as a consequence of civil RICO. These type of questionable cases form the better part of the remaining 91% of cases which, unlike the case at bar, do not involve organized crime.

BIRNBERG & ASSOCIATES
703 MARKET STREET
SUITE 600
SAN FRANCISCO
CA, 94103
TEL (415) 398-1040
FAX (415) 398-2001

6
PLAINTIFFS' OPPOSITION TO PLANTAGENETS' MOTION TO DISMISS                                              Case No. C-7-04755-JSW

preserves the money laundering scheme because it protects PPSA – the entity holding Levant/Raulet's 29M francs to be laundered – from judgment. For this reason, the nine predicate acts enumerated above and alleged in the FAC are sufficient to state a claim pursuant to RICO.[8]

### 3. The Predicate Acts Alleged Were the Proximate Cause of Plaintiffs' Damages

Plantagenet Defendants next argue that there is no possibility that the act of suppressing PPSA from the guaranty agreement could not have harmed Plaintiffs because Plaintiffs had already dismissed PPSA with prejudice. Plaintiffs made no claim against PPSA, and are not complaining about the ability to pursue a previously waived claim against PPSA. PPSA was never a defendant on the judgment. Plaintiffs' claim has always been against SCEV. The effect of removing PPSA as the guarantor, while simultaneously alleging collusion between Plaintiffs' and PLB, was that France refused to deem Plaintiffs' judgment enforceable, rendering it worthless. It is irrelevant whether Plaintiffs could pursue a direct suit against PPSA.

That said, there can be no question that the predicate act of illegally terminating Plaintiffs exclusive contract to import DeBrun champagne, and awarding it to PPSA (the first predicate act above) proximately caused Plaintiffs considerable harm. This portion of Plaintiffs' business represented a profit of approximately $70,000 a month. Similarly, there can be no question the predicate acts of creating and promulgating falsified documents to prevent Plaintiffs from recovering the judgment proximately caused Plaintiffs considerable harm because Plaintiffs never collected the $1.3M judgment.

### 4. The Acts Alleged in the FAC Are Related and Continuous and Project into the Future with a Threat of Harm

---

[8] Plantagenet Defendants cite *Washington v. Recuenco*, 126 S.Ct. 2546 (2006) and *US v. Somsamouth* 352 F.3d 1271 (2003) for the proposition that, in order to prove mail fraud or wire fraud, the documents sent by mail or wire be material and induce reliance. These cases are all about sufficiency of evidence and jury instructions, and have no bearing on the subject of pleading standards. Further, as Plantagenet defendants themselves note later in their motion, alleging reliance is not required when pleading RICO in the Ninth Circuit.

7
PLAINTIFFS' OPPOSITION TO PLANTAGENETS' MOTION TO DISMISS                    Case No. C-7-04755-JSW

BIRNBERG & ASSOCIATES
703 MARKET STREET
SUITE 600
SAN FRANCISCO
CA, 94103
TEL (415) 398-1040
FAX (415) 398-2001

As cited in the moving papers, alleging predicate acts of "past conduct that by its nature projects into the future with a threat of repetition" established open-ended continuity in a RICO case, satisfying the "pattern" element. *Steam Press Holding, Inc. v. Hawaii Teamsters, Allied Workers Union, Local 996*, 302 F.3d 998, 1011 (9th Cir.2002) (citing *Howard v. America Online Inc.*, 208 F.3d 741, 750 (9th Cir.2000). Simply put, it is impossible to read the list of predicate acts alleged in the FAC, and assume they are true, and not expect that the defendants are likely to file a falsified document somewhere, possibly in this Court, or take advantage of other innocent parties, to hide or protect money in the process of being laundered. Plaintiffs were unlucky enough to cross paths with the scheme. The scheme of money laundering will likely continue long after Plaintiffs' case has concluded. For this reason, it is clearly an open-ended scheme and the predicate acts alleged establish a pattern of conduct because they demonstrate a high likelihood of repetition in the same or similar context.

### 5. The Predicate Acts Occurred Over the Course of Four and a Half Years and Accordingly Satisfy the Continuity Requirement of a Close-Ended Scheme

Plantagenet Defendant argue that the only predicate acts that somehow qualify were the two submissions of falsified documents filed with the state court in connection with a motion to set aside, and that these acts were too close in time – a couple of months apart – to establish continuity as a close-ended scheme.

Notwithstanding that this is an open-ended scheme of money laundering that is still ongoing, a close-ended pattern of conduct must generally last at least one year in order to satisfy the continuity requirement of RICO. *Grimmett v. Brown*, 75 F.3d 506 (9th Cir. 1996). Of course, there are nine predicate acts set forth above, and in the FAC, beginning in February of 1999 when GIDDING was replaced as the exclusive distributor for LeBrun wine and continued through and including September of 2003 when ANDERSON mails a forged copy of the settlement agreement to Raulet. This spans four and one half years and is clearly much longer than the one-year period

BIRNBERG & ASSOCIATES
703 MARKET STREET
SUITE 600
SAN FRANCISCO
CA, 94103
TEL (415) 398-1040
FAX (415) 398-2001

8
PLAINTIFFS' OPPOSITION TO PLANTAGENETS' MOTION TO DISMISS          Case No. C-7-04755-JSW

generally required to satisfy the duration element. For this reason, the continuity requirement has been properly pled.

### 6. The FAC Catalogs a Series of Events That Show An Ongoing Pattern of Criminal Activity, Not An Isolated Event Perpetrated Against a Single Victim

Plantagenet Defendants state that this case cannot qualify as a RICO case because there was only one victim. The single-victim inquiry only applies in closed-ended cases.[9] *GICC Capital Corp. v. Technology Finance Group, Inc.,* 67 F.3d 463 (Conn 1995). The reason for this is obvious: Courts, and the legislature for that matter, want to prevent cases that are simple tort or breach of contract cases from being creatively pled as RICO cases. *Sedima*, *S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 506. The cases subject to this scrutiny do not involve organized crime like the case at bar does. Plaintiffs' herein alleged an ongoing open-ended money-laundering scheme that existed before these Plaintiffs got involved and will likely continue to exist after this case has concluded. For this reason, the single-victim inquiry is inapplicable.[10]

## C. CONSPIRACY IS ADEQUATELY PLED

Because the underlying RICO claim was sufficiently pled, the conspiracy claim under section 1962(d) is also sufficiently pled.

## D. BECAUSE THE 12(b)(6) CHALLENGE TO RICO FAILS, THE 12(b)(1) CHALLENGE FOR LACK OF SUBJECT MATTER JURISIDCTION ALSO FAILS

Because the RICO violation was properly pled, there is subject matter jurisdiction in this case because this case concerns a federal question.

///

///

---

[9] All the cases cited by Plantagenet Defendants in support of the single-victim argument are close-ended cases.
[10] Even if it were applicable, the court in France was a victim, the Los Angeles Superior Court was a victim, the Luxembourg court was a victim, both Plaintiffs were victims, and, if you believe any of the unsupported factual assertions in the moving papers, SCEV was also a victim because it lost a guarantor. Moving parties should be estopped from raising this argument concurrently with their assertion that SCEV was victimized by the fraud.

9
PLAINTIFFS' OPPOSITION TO PLANTAGENETS' MOTION TO DISMISS                                   Case No. C-7-04755-JSW

BIRNBERG & ASSOCIATES
703 MARKET STREET
SUITE 600
SAN FRANCISCO
CA, 94103
TEL (415) 398-1040
FAX (415) 398-2001

### E. PLAINTIFFS PLED ALLEGATIONS AGAINST EVERY NAMED DEFENDANT

Plantagenet Defendants' motion to dismiss contends that PCM, PCA, PCF, and PCF II were only named in the case, but are "not further mentioned in the FAC" (Plantagenet Defendants' MPA, 1:25-27). This is false. Each of them was mentioned at least nine times. One or more of these defendants are mentioned in paragraphs 12-15, 34, 36, 66, 71, 75, 123, 126, 128, 129, 133, 136, 139, and 141. Furthermore, these defendants are part and parcel of one another and of ANDERSON. They are functionally interchangeable shell entities.

### F. IN THE ALTERNATIVE, SHOULD THIS COURT WISH TO SUSTAIN THE MOTION, PLAINTIFFS RESPECTFULLY REQUEST LEAVE TO AMEND

After reviewing the entire file, newly appointed Plaintiffs' counsel asserts that the FAC can be modified to be much more descriptive of the conveyance scheme at issue. Because this is an ongoing scheme, new facts and new documents are constantly becoming available that would significantly expand upon what is alleged in the FAC. In the unlikely event that Plantagenet Defendants' motion is sustained, Plaintiffs' respectfully request leave to amend in order to integrate these new facts and documents into a Second Amended Complaint.

BIRNBERG & ASSOCIATES

Dated: 21 March 2008

By: /s/ Cory A. Birnberg
Cory A. Birnberg
Attorneys for Plaintiffs

BIRNBERG & ASSOCIATES
703 MARKET STREET
SUITE 600
SAN FRANCISCO
CA, 94103
TEL (415) 398-1040
FAX (415) 398-2001

10
PLAINTIFFS' OPPOSITION TO PLANTAGENETS' MOTION TO DISMISS    Case No. C-7-04755-JSW