1  MATTHEW F. QUINT, ESQ.
   California Bar No. 54369
2  WILSON & QUINT LLP
   250 Montgomery Street, 11th Floor
3  San Francisco, California 94104
   Telephone: 415.288.6700
4  Facsimile:  415.398.1608
   Email: mfquint@aol.com
5
   Attorneys for Plantagenet Defendants
6

7
                    UNITED STATES DISTRICT COURT
8
                   NORTHERN DISTRICT OF CALIFORNIA
9

10
    JOHN GIDDING, an individual and         )   CASE NO.  C-07-4755 JSW
11  PIVOTAL INC., a California corporation, )
                                            )   **PLANTAGENET DEFENDANTS' REPLY**
12          Plaintiffs,                     )   **MEMORANDUM IN SUPPORT OF**
                                            )   **MOTION TO DISMISS**
13      vs.                                 )
                                            )   Date:     May 30, 2008
14  DEREK ANDERSON, et al., and DOES 1      )   Time:     9:00 A.M.
    through 100, inclusive,                 )   Courtroom: 2, 17th Floor
15                                          )   Judge:    Hon. Jeffrey S. White
            Defendants.                     )
16                                          )
                                            )
17

**TABLE OF CONTENTS**

I.   INTRODUCTION.................................................................................................... 1

II.  As Plaintiffs' Implicitly Admit, The FAC Is Deficient........................................... 3

    A.  PLB And PPSA Were Not Served.............................................................. 4
    B.  The FAC Attacks A Foreign Court's Current Proceedings......................... 4
    C.  Plaintiffs' Exhibits Contradict Plaintiffs' Allegations................................. 6
    D.  The Plaintiffs Cannot Relitigate Their Breach of Contract Claims............. 7

III. The Plaintiffs Should Not Be Allowed To Amend To Plead A New
    Deficient Story....................................................................................................... 7

IV.  CONCLUSION....................................................................................................... 11

# TABLE OF AUTHORITIES

<u>Supreme Court Decisions:</u>

*Bell Atlantic Corp. v Twombly*, 550 U.S. ----, 127 S.Ct. 1955,16
7 L.Ed.2d 929 (, 2007)......................................................................................... 8

*Forman v. Davis*, 371 U.S. 178 (1982)......................................................................... 8

*H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229 (1989).............................. 10

*Sedima, SPRL v. Imrex Co.*, 473 U.S. 479, 506 (1985)................................................ 2

<u>Other Courts:</u>

*Allwaste, Inc. v. Hecht*, 65 F.3d 1523 (9th Cir. 1995)............................................... 10, 11

*Barber v. State of Hawaii*, 42 F.3d 1185 (9th Cir. 1994)............................................ 9

*Brinco Mining Ltd. v. Federal Insurance Co.*, 552 F.Supp. 1233 (D.D.C.1982).................. 6

*Continental Time Corp. v. Swiss Credit Bank*, 543 F.Supp. 408 (S.D.N.Y.1982)................ 5, 6

*Cunard Steamship Co. v. Salen Reefer Services AB*, 773 F.2d 452 (2d Cir.1985)................ 6

*Direct Mail Specialists, Inc. v. Eclat Computerized Technologies, Inc.*,
840 F.2d 685 (9th Cir. 1988)............................................................................... 4

*Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542 (9th Cir.1989)................ 3

*I.J.A., Inc. v. Marine Holdings, Ltd.*, 524 F.Supp. 197 (E.D.Pa.1981)............................... 5, 6

*In re Verifone Sec. Litig.*, 11 F.3d 865 (9th Cir.1993)................................................ 3

*Jackson v. Bank of Hawaii*, 902 F.2d 1385 (9th Cir. 1990)............................................ 8

*Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d 1197 (2d Cir.1970)............................. 6

ii

## I. **INTRODUCTION**

Plaintiffs have responded to the motion to dismiss by, implicitly, admitting that the First Amended Complaint (FAC) does not state a claim. Instead of defending that complaint, Plaintiffs have invented an entirely new and different story of what they call "organized crime" engaged in some sort of international "money laundering scheme." Nothing in either the original, 41-page complaint nor in the more recent 51-page FAC even hints at any such activity. Although Plaintiffs' new counsel contends that "the FAC can be modified to be much more descriptive of the conveyance scheme at issue," and asks for leave to amend to reflect that new story, such an amendment would be futile and a waste of time and money. The new story is not only incoherent and a complete fantasy, but would not state a claim even if it made sense. Plaintiffs cannot fix their broken complaint by adding more deficient and irrelevant allegations.

It is important to step back and remember how Plaintiffs claim they were harmed. Plaintiffs allegedly had a distributorship agreement with SCEV to distribute SCEV's champagne. They claim that agreement was breached. They sued Plantagenet, as it was SCEV's owner at the time. By the time the case was ready to be tried, defendant Levant had purchased SCEV. Hartford Insurance Company, which was defending its insureds (Derek Anderson and the various Plantagenet entities),[1] settled that case on behalf of its insureds. Plaintiffs were paid $150,000 and in return, <u>they released all claims against Anderson and the Plantagenet entities</u>. FAC ¶34, ex. 5. Plaintiffs then proceeded to trial against SCEV and its new owners, and obtained a default judgment when the foreign defendants did not appear. Since then, Plaintiffs have been unable to collect on that judgment in Europe. However, SCEV's efforts to thwart collection of a breach of contract judgment has nothing to do with an alleged "money laundering" scheme.

---

[1] In this brief, except when stated otherwise, the terms "Plantagenet defendants" and "Plantagenet entities" refers to Mr. Anderson and any of the companies sued as defendants that have "Plantagenet" in their names, including the companies that have been abbreviated in these proceedings as PLB and PPSA.

1
PLANTAGENET DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Indeed, this case is just what Plaintiffs try strenuously to pretend it is not – a simple breach of contract case "being creatively pled as [a] RICO case[ ]." Plaintiff's opposition brief at 9:10, citing *Sedima, SPRL v. Imrex Co.*, 473 U.S. 479, 506 (1985). The fact that all Plaintiffs are doing is seeking to recover breach of contract damages against the previously released Plantagenet defendants is established by their so-called "first predicate act," which is "terminat[ing] Pivotal's exclusive distribution of Champagne Le Brun," Plaintiff's opposition brief at 3:25-26. This is the same breach of contract claim asserted, settled and released by Plaintiffs in the original California state court action. Yet the same claim has reappeared here as a part of this "RICO" complaint.

The Plaintiffs' opposition brief crystallizes a central flaw in both the FAC and the implied "Second Amended Complaint" to which the brief alludes. Rather than having anything to do with money laundering or the like, Plaintiffs' actual complaint has always been they have not yet been able collect a judgment in France because SCEV perpetrated a fraud on the French courts in a case still pending in France. If there has been a fraud on the French court, the French court should be allowed to address it. This Court should not be invited to decide what supposedly is going wrong in another court's ongoing proceedings, especially when this Court does not have the complete record from that foreign proceeding before it.

The Plaintiffs' brief also highlights that the basis of both the FAC and the suggested further amendments is nothing more than baseless allegation and wild speculation. Plaintiffs have asserted, in their brief, that, "Nearly every single document submitted in this case is a falsified document ...." Plaintiffs' brief at 2: 4-5. Yet it is Plaintiffs themselves who submitted virtually every document filed in this case to date, including the 46 complaint exhibits and the numerous exhibits to Mr. Gidding's declarations. Plaintiffs' novel approach to litigation is to make wild unfounded allegations, then attach exhibits which refute those very allegations-- and then attack their own exhibits as forged or falsified.

## II. As Plaintiffs' Implicitly Admit, The FAC Is Deficient

By ignoring the story from the FAC and creating a new one in their brief, Plaintiffs implicitly admit the FAC states no claim. In evaluating this motion to dismiss the FAC, however, what is before the Court is not some different hypothetical complaint but only the FAC. Under Rule 12(b)(6), only the well-pleaded factual allegations in Plaintiff's actual complaint are accepted as true; "[c]onclusory allegations of law and unwarranted inferences" are not sufficient to defeat a motion to dismiss. *In re Verifone Sec. Litig.*, 11 F.3d 865, 868 (9th Cir.1993). "Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir.1989). For this reason, moving defendants now move to strike the Declaration of John Gidding In Support Of Opposition To Plantagenet Defendants' Motion To Dismiss (Doc. 57) and Exhibits thereto (Doc. 60). Moving defendants object to the court's consideration of these pleadings as well as any factual allegations or arguments in Plaintiffs' opposition brief which are not supported by factual allegations in the FAC.

Plaintiffs have provided no new support for the FAC, and very little needs to be said in reply. There are a couple of points to make, though, because Plaintiffs' responsive brief highlights two of the many problems with the FAC and with this case generally. First, as far as the motion to dismiss for failure to serve PLB and PPSA, the responsive brief shows Plaintiffs' failure to grasp the requirements of the Federal Rules and the Constitution. Second, as far as the failure of the FAC to state a claim, the Plaintiffs have highlighted that their only real claim for damages is that defendants other than the Plantagenet defendants have, so far, successfully resisted Plaintiffs' attempts to collect on a judgment in a foreign court. Yet rather than resolve those alleged issues in the court where the problems occurred, Plaintiffs seek to attack that court's rulings collaterally in this court.

### A. PLB And PPSA Were Not Served

As noted in their initial brief, neither PLB nor PPSA have been served in this action. Federal Rule 4 only allows service by 1) leaving a copy of the summons and complaint during usual office hours with the person who is apparently in charge of the business organization, and then mailing a copy of that summons and complaint; or 2) serving an officer, managing agent, or agent for service of process. All Plaintiffs did was serve Derek Anderson, who is none of those things.

Plaintiffs have not shown otherwise in their response. Instead they have asserted that because a foreign court in Luxembourg, following its own rules of service (most probably *not* Federal Rule 4, and surely not an attempt to follow the due process requirements of the United States Constitution), allowed service on PLB by serving another individual, Defendant John Zappettini, that fact somehow shows it is acceptable under the federal rules and the Constitution to serve both PLB and PPSA by serving an entirely different individual, Derek Anderson. Unlike the situation in *Direct Mail Specialists, Inc. v. Eclat Computerized Technologies, Inc.*, 840 F.2d 685 (9th Cir. 1988), cited by Plaintiffs, Plaintiffs here did not serve either PLB or PPSA at their place of business. In *Direct Mail*, the service was made on a small company at the offices it shared with another company, and received by a receptionist shared by both companies. The court there noted that "[s]he appears to have been the only employee in the office when the process server arrived, demonstrating that more than minimal responsibility was assigned to her." *Id.* at 688-689. Indeed, such service would comport with California CCP § 415.95, *see* defendant's opening brief at 5-6. Nothing like the service that took place in *Direct Mail* happened here.

### B. The FAC Attacks A Foreign Court's Current Proceedings

The harms Plaintiffs have alleged in the FAC all come down to one thing; they have a judgment against SCEV, are engaged in proceedings in France to collect that judgment, and they

are having a hard time. They allege their collection difficulties exist because SCEV (not the Plantagenet defendants, who are not parties to the judgment in California or the collection action in France) filed altered documents with the French court—specifically, the settlement agreement releasing the Plantagenet entities from the breach of contract case, and the guaranty agreement SCEV's new owners had with one of the Plantagenet entities, PLB. In other words, Plaintiffs allege that SCEV (not the Plantagenet entities) committed a fraud on the French court. As the Plantagenet entitles are not even parties to those French proceedings, the allegations of wrongful conduct do not pertain to them.

A moment's reflection shows additional fatal flaws in Plaintiffs' claim to be harmed. First, there is no evidence that these supposedly altered documents have affected the French proceedings in any way. Indeed, according to Plaintiffs, those proceedings are still ongoing. FAC ¶¶ 79, 82. It is impossible for ongoing proceedings to have been resolved against Plaintiffs since there is no final result. Moreover, there is no logical reason to assume SCEV's supposed suppression of one of its guarantors would affect the enforceability of a judgment by Plaintiffs. The judgment is between Plaintiffs and SCEV, and any attempt to pass that debt along to an indemnitor does not affect the judgment itself. That defies the logic of indemnity.

Second, if the French court is being defrauded, that court is the right place to prove and complain about that fraud. First, as a matter of judicial efficiency, the French court is certainly in the best position to evaluate whether the alleged fraud is significant to its deliberations. *Continental Time Corp. v. Swiss Credit Bank*, 543 F.Supp. 408, 410 (S.D.N.Y.1982) (Lasker, J.); *I.J.A., Inc. v. Marine Holdings, Ltd.*, 524 F.Supp. 197, 198 (E.D.Pa.1981). Furthermore, considerations of fairness to all parties or possible prejudice to any of them counsel that this court allow the French court to decide for itself if it was defrauded. Both the alleged defrauder, SCEV, and the Plaintiffs are in that court. That court has a more complete record of what has been filed

before it, of course; and if there is really any evidence of altered documents, that evidence can be presented there as easily as it can be presented here. *See Continental Time Corp., supra,* 543 F.Supp. at 410; *I.J.A., Inc., supra,* 524 F.Supp. at 198. A third group of concerns relates to comity between nations. *See generally Cunard Steamship Co. v. Salen Reefer Services AB,* 773 F.2d 452, 456-60 (2d Cir.1985). When, as in this case, the foreign action is pending, comity counsels that priority generally goes to the suit first filed. *See Brinco Mining Ltd. v. Federal Insurance Co.,* 552 F.Supp. 1233, 1240-42 (D.D.C.1982); *Continental Time Corp., supra,* 543 F.Supp. at 410; *see also Semmes Motors, Inc. v. Ford Motor Co.,* 429 F.2d 1197, 1202 (2d Cir.1970).

### C. Plaintiffs' Exhibits Contradict Plaintiffs' Allegations

Throughout their FAC and their opposition, Plaintiffs repeatedly misrepresent the contents of documents they themselves have submitted as exhibits. While numerous examples are possible, one crucial example should suffice.

Central to Plaintiffs' entire argument is their contention that the settlement agreement between the parties was doctored to remove PPSA (formerly Plantagenet S.A.R.L.) as a party. Plaintiffs allege that the authentic settlement agreement signed on September 21, 2001 (FAC, Exhibit 5) included PPSA as a released party, that an earlier September 15, 2001 "falsified version of the settlement agreement" (FAC, Exhibit 36, also admittedly signed by Gidding) removed PPSA as a released party, and that parties to the French litigation (not these Defendants) filed the earlier "falsified version" with the French court, thereby – in some incomprehensible manner – causing the French court to deny Plaintiffs the enforcement of their California judgment. Plaintiffs' opposition brief, 4:10-15. In fact, the allegedly "falsified version of the settlement agreement," Exhibit 36, includes PPSA/Plantagenet S.A.R.L. as one of the released parties just

///

///

like the final version of the settlement agreement, Exhibit 5, which Plaintiff admits is authentic.[2] The whole conspiracy exists only in Plaintiffs' deluded fantasies.

### D. The Plaintiffs Cannot Relitigate Their Breach of Contract Claims

Plaintiffs' brief repeated their list of predicate acts from the FAC, but they added one new one. The new one, the "first predicate act," is the act of terminating Plaintiff's contract. Plaintiff's brief at 4. That is to say, Plaintiffs alleged a breach of contract as a predicate act, and moreover, a breach of contract that was the basis of an old lawsuit against these Defendants, the claims in which were long ago settled and released. That assertion speaks volumes. First, it proves the case is really nothing more than an attempt to collect on the original breach of contract claim. Second, it shows that Plaintiffs have no real notion of what a predicate act for RICO is supposed to be. Predicate acts are crimes. Breach of contract is not a crime. It is not, for instance, mail fraud to breach a contract, nor is it mail fraud to instruct someone working for you to breach a contract. (See Plaintiff's brief at 3: 23-25). Third, this allegation shows that Plaintiffs are trying to recover from the Plantagenet entities on claims Plaintiffs have already released.

### III. The Plaintiffs Should Not Be Allowed To Amend To Plead A New Deficient Story

The proposed Second Amended Complaint that Plaintiffs have suggested they would like to file cannot cure the deficiencies in the FAC. In fact the suggested amendments are even less plausible than the story told in the FAC. After two lengthy attempts to state a plausible claim, now Plaintiffs contend, for the first time, that the real gravamen of their claim is something never mentioned or alleged in either their Verified Complaint or their Verified First Amended Complaint: that Defendants are international money launderers! Plaintiffs do not suggest they have any documentation to support this ludicrous allegation. Indeed, according to Plaintiffs, all

---

[2] While the entity formerly known as "Plantagenet S.A.R.L" is variously referred to as "Plantagenet S.A." and "Plantagenet Partners S.A." in both documents, that entity is clearly covered by the release in the allegedly falsified version as well as the admittedly authentic version.

documents that expressly contradict or refute their wild allegations are, by definition, forged or altered. In order for the Plaintiffs to satisfy their "obligation to provide the grounds of his entitlement to relief," they must allege more than "labels and conclusions." *Bell Atlantic Corp. v Twombly*, 550 U.S. ----, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007). Here, all the Plaintiffs have done is add a label "money laundering" to their description of defendants, without any factual allegations, not even speculative ones, to support that label. In their opening brief, moving Defendants cited *Bell Atlantic* for the proposition that factual allegations must be more than speculative and where "the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Id*, at 1974. Here, it is simply not plausible that Plaintiffs forgot to mention in their 41 page Complaint or their 51 page FAC that the entire gravamen of their case was based on the Plantagenet defendants' status as international money launderers.

If Plaintiffs are permitted to file still another amended complaint based on this new fantasy that the Plantagenet Defendants are international money launderers, why not a third amended complaint claiming that the Plantagenet Defendants are international heroin smugglers or a fourth amended complaint alleging that they engage in the trafficking of high priced prostitutes on the east coast to service important business and government leaders? While Fed.R.Civ.P. 11 was designed to discourage sham pleadings such as this, it cannot entirely prevent them. Plaintiffs should not be allowed to keep this charade alive by amending their complaint to assert this new "money laundering" story they have just invented. This spurious sham litigation is costing real defendants real money to defend. The Court should put a stop to it, now.

When amending a pleading would be futile, this Court should not allow such amendment. Such "futility of amendment" is a basis for denial of a request for leave to amend. *Forman v. Davis*, 371 U.S. 178, 182 (1982). See also *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th

Cir. 1990) (motion to amend may be denied if amendment would result in futility for lack of merit, among other reasons); *Barber v. State of Hawaii,* 42 F.3d 1185, 1197-98 (9th Cir. 1994) (district court did not abuse discretion in denying leave to amend where, *inter alia,* amendments would have been futile for lack of merit).

Plaintiffs made no effort to spell out the elements of money laundering or spell out the nature of the supposed scheme. Moreover, as explained below, even if there were such a scheme it would not be enough to save the Plaintiffs' case, as they allege no causal connection between the "money laundering" and the harm they claim to have suffered. Plaintiffs cannot explain how such a money-laundering scheme could have anything to do with the harm Plaintiffs claim to have suffered (inability to collect a judgment) or the alleged predicate acts (filing documents in courts). Indeed, none of the alleged predicate acts have anything to do with money laundering. Apart from their attempt to claim breach of contract damages from the Plantagenet defendants (even though they already settled those claims and released the Plantagenet defendants) the only damages Plaintiffs claim is their difficulty in collecting the breach of contract judgment they have against SCEV. Plaintiffs' brief, under the heading "The Predicate Acts Alleged Were the Proximate Cause of Plaintiffs' Damages," states, "Plaintiffs' claim has always been against SCEV," not the Plantagenet defendants. Plaintiffs' brief at 7. In the next sentence, Plaintiffs detailed their alleged harm: "The effect of [SCEV's] removing PPSA as the guarantor [of claims against SCEV in its agreement of sale], while simultaneously alleging collusion between Plaintiffs and PLB, was that France refused to deem Plaintiffs' judgment enforceable, rendering it worthless." As noted in the motion to dismiss, whatever "alleging" SCEV did or did not do in the French courts, that "alleging" was SCEV's doing, not the Plantagenet entities.

Merely labeling defendants as money launderers (or perhaps they will claim defendant are international drug traffickers) does not transform the predicate acts alleged into anything more

than the FAC first alleged, that they were acts in furtherance of a scheme to frustrate collection of a judgment against SCEV in France. Even if defendants were engaged in "money laundering" (or were international jewel thieves or were in alliance with Goldfinger to rob Ft. Knox, or whatever else Plaintiffs will claim next) that would have nothing to do with the alleged scheme nor would it have anything to do with the supposed harm Plaintiffs have suffered. Thus, the new claims fail the test of "relatedness," in which even if there were multiple predicate acts like those mentioned in the opposition brief, these do not "have the same or similar purposes, results, participants, victims, or methods of commission ...." *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 240 (1989). "At a minimum, a 'pattern' requires that the predicate criminal acts be 'related' and 'continuous.'" *Allwaste, Inc. v. Hecht*, 65 F.3d 1523, 1527 (9th Cir. 1995). Here, even if it were true that the defendants laundered money, that activity had nothing to do with any attempts to avoid collection of a judgment based on breach of contract. Therefore, the predicate acts were not related to the alleged "money laundering" scheme.

One of Plaintiffs' apparent purposes in labeling the Plantagenet entities "money launderers" is to transform the nature of the scheme alleged from a closed-ended scheme to frustrate collection of a judgment through filing two allegedly altered documents to an open-ended one. Thus, Plaintiffs claim they can allege an "open-ended scheme of hiding, protecting and fueling the money laundering and /or tax evasion operation." Plaintiffs' brief at 5: 5-6. However, in trying to answer the logical question — how did the alleged predicate acts further a "money laundering" scheme? — Plaintiffs' explanations are *non sequiturs*. There is no logical connection between a decision to breach a contract to distribute champagne and "money laundering," nor is there any connection between using the Plantagenet companies as "shells" for "money laundering" and SCEV's efforts to avoid collection of a judgment on that breach of contract. Since the Plaintiffs do not actually allege any nexus of connection between themselves and any harm they

have suffered and any such alleged money laundering, they can only try to render the scheme "open-ended" by predicting that "defendants are likely to file a falsified document somewhere..." in the future. Plaintiffs' brief at 8: 7.

First, it is important to note there is no allegation, much less evidence, that these moving defendants have ever filed a falsified document anywhere. Second, predictions of future bad acts based on defendants' alleged nefarious character cannot turn a closed-ended scheme into something else. An open-ended scheme requires at least "past conduct that by its nature projects into the future with a threat of repetition." *Allwaste, Inc. v. Hecht*, 65 F.3d 1523, 1528 (9th Cir. 1995). Unless there is some basis for claiming the money laundering involves filing doctored documents in courts by these moving defendants, there cannot be a related, continuous open-ended scheme here. As there is no basis for claiming such an ongoing pattern, the additional claim that "money laundering" is involved adds nothing to the FAC.

## IV. CONCLUSION

A lot of paper already has been expended, along with real time, money, and judicial resources, on this case. Nothing in the original complaint, the First Amended Complaint, or any hypothetical complaint coming in the future states, or can state, a claim. Accordingly, the moving defendants respectfully request that this Court grant their motion to dismiss for lack of proper service and for failure to state a claim, without leave to amend.

DATED: March 27, 2008.

Respectfully submitted,

WILSON & QUINT LLP

By /s/ Matthew F. Quint
Matthew F. Quint
Attorneys for Defendants Derek Anderson, Plantagenet Capital Management, LLC, Plantagenet Capital America LLC, Plantagenet Capital Fund LP, Plantagenet Capital Fund LP II, PLB Holdings SA, and Plantagenet Partners SA