MATTHEW F. QUINT, ESQ.
California Bar No. 54369
WILSON & QUINT LLP
250 Montgomery Street, 11th Floor
San Francisco, California 94104
Telephone: 415.288.6700
Facsimile: 415.398.1608
Email: mfquint@aol.com

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN GIDDING, an individual and PIVOTAL INC., a California corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>DEREK ANDERSON, et al., and DOES 1 through 100, inclusive,<br><br>Defendants. | CASE NO. C-07-4755 JSW<br><br>**PLANTAGENET DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT**<br><br>Date: May 30, 2008<br>Time: 9:00 A.M.<br>Courtroom: 2, 17th Floor<br>Judge: Hon. Jeffrey S. White |

Defendants Derek Anderson, Plantagenet Capital Management, LLC, Plantagenet Capital America LLC, Plantagenet Capital Fund LP, PLB Holdings SA, and Plantagenet Partners SA (hereinafter, collectively "Plantagenet Defendants") submit the following memorandum of points and authorities in opposition to Plaintiffs' Motion for Leave to File a Second Amended Complaint.

I.   **INTRODUCTION**

In their Complaint and their First Amended Complaint ("FAC"), Plaintiffs allege that ten years ago, Defendant SCEV breached an agreement with them to distribute Le Brun Champagne in the United States. In 1999, Plaintiffs sued SCEV in California State Court for breach of contract, naming the Plantagenet Defendants, among others, as additional defendants. In 2001, Plaintiffs settled with the Plantagenet Defendants and released them from any claims arising out of the alleged breach of the Champagne Le Brun distributorship agreement. Plaintiffs then

proceeded to obtain a judgment against Defendant SCEV. Apparently, Plaintiffs have experienced some difficulty over the past six years collecting that judgment in France. Out of frustration, Plaintiffs filed this action, suing everyone in sight including the parties they had settled with and released years ago, and alleging a vast conspiracy to make their judgment uncollectible.

These Plantagenet Defendants have moved pursuant to Rule 12(d)6 to dismiss Plaintiffs' RICO and conspiracy to violate RICO claims because Plaintiffs have not alleged and cannot allege facts sufficient to state a RICO claim.

Tacitly conceding that the FAC states no cognizable claims under RICO, Plaintiffs now seek leave to file yet another amended complaint alleging a vastly greater conspiracy, this time including entirely new and previously unmentioned French champagne makers, American insurance companies, "corrupted treasury officials" from the French Treasury who allegedly stole plaintiffs' property to assist defendants in their nefarious schemes, and the U.S. Internal Revenue Service. In this new conspiracy, Defendants are allegedly responsible not only for Plaintiffs' inability to collect their judgment, but also for the Plaintiffs' apparent problems with the French tax authorities and the IRS

The Court should deny the Motion for Leave to Amend because any further amendment in this case would be futile. *First American Title Company v. United States*, 520 F.3d, 1051 (9th Circ. 2008). The Court should also deny leave to amend where, as here, the proposed amended pleading is totally and utterly incoherent and incredible: A complaint must "state a claim to relief that is plausible on its face." *Dow Atlantic Corp. v. Twombley*, 127 S.Ct. 1955, 1974 (2007).

II. **NEW ALLEGATIONS CONTAINED IN THE PROPOSED SECOND AMENDED COMPLAINT**

The proposed Second Amended Complaint ("SAC") (1) alleges ten-year old grievances against entirely new parties,(2) continues to assert claims against parties who have previously been

dismissed <u>in this action</u>, (3) makes new and novel allegations against existing defendants, and (4) alleges a vastly greater international criminal conspiracy (which includes Hartford Insurance Company, the French Treasury and the IRS) all designed to deprive Plaintiffs of their damages for breach of decade old distributorship agreements. The allegations in the proposed SAC are self contradictory, implausible and incoherent.

### A.  The New Defendant

Appearing as Defendant for the first time in the SAC is SCEA Chateau Lagune ("Lagune"). Lagune is the producer of Ayala and Montebello Champagnes. SAC, ¶8. Plaintiffs allegedly were the importers and agents for Champagne Ayala and Champagne Montebello in 1998. SAC, ¶¶27, 28. Apparently, Plaintiff somehow lost this business [the SAC is not exactly clear on this point] because, at SAC ¶137, Plaintiffs claim that the vast international conspiracy alleged in the SAC was designed to "deprive plaintiffs Gidding and Pivatol of money and property, that is ... their duly earned commission and consultant fees owed by Lagune."

There is no allegation in the SAC that Plaintiffs have previously ever sought legal redress for the loss of the Lagune business which occurred ten years ago, in 1998. There is no allegation that the Plantagenet Defendants ever had anything whatsoever to do with Lagune. There is no explanation why these Lagune related claims are appearing for the first time in the proposed SAC when Plaintiffs must have known about them for years. It appears that Plaintiffs suddenly recalled that they had lost a business account ten years ago from a previously unmentioned third party and decided to blame that loss on the vast, if incoherent, conspiracy alleged in the proposed SAC.

### B.  Previously Dismissed Parties

On December 27, 2007, Plaintiffs filed their request for dismissal of Defendants SCEV, Levant, Rapeneau and Raulet (Doc.10). It is worthy of note that Defendant SCEV, the judgment debtor in the California State action, is the only defendant that actually owes Plaintiffs any money.

3

PLANTAGENET DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

Notwithstanding the fact they have already been dismissed in this action, Plaintiffs continue to name these parties as defendants in the proposed SAC and to make detailed charging allegations against them.

### C. The New Criminal Enterprise

The proposed SAC changes entirely the previous pleadings' characterization of these moving Plantagenet Defendants. Whereas in the Complaint and the FAC the Plantagenet Defendants were merely alleged to be parties who assisted the French defendant SCEV in avoiding payment of Plaintiffs' California State court judgment, in the proposed SAC, the Plantagenet Defendants have somehow morphed into international money launderers. SAC, ¶30. Although money laundering is nowhere mentioned in either the Complaint or the FAC, it has inexplicably become the entire focus of the SAC and Plaintiffs' attempt to invoke jurisdiction under RICO.

### D. Implausible Allegations

The proposed SAC is full of wildly implausible allegations, such as Defendants' use of the French taxing authorities to further their money laundering scheme; the forgery of documents by Hartford Insurance Company; and the theft of Plaintiffs' documents by corrupt French Treasury officials. Plaintiffs' alleged examples of mail fraud include the mailing of a summons by French Treasury officials, mailings to Plaintiffs by the Internal Revenue Service and the mailing of a court judgment to Plaintiff Pivotal.

In order to fully appreciate the bizarreness and incoherence of the proposed pleading, the Court will need to review it in its entirety. For purposes of brevity, a few examples will have to suffice.

### (i) Criminal Enterprise

— Defendants covered up their alleged money laundering scheme by framing Plaintiffs for tax evasion "of amounts that exactly corresponded to the sums being laundered." To further their scheme, Defendants used "corrupted Treasury officials to steal the documents that could reveal their criminal activity." SAC, ¶35A.

— To assist Defendants in their nefarious crimes, Hartford Insurance Company, Plantagenet's insurer, participated in a scheme to "forge a settlement agreement." SAC, ¶75.

— Defendant Anderson "forged a December 3, 2001 [court] judgment." SAC, ¶81.

— During a seventeen hour search of the home of Plaintiff Gidding's wife in Paris conducted by the French police and eight inspectors, French Treasury officials stole documents and falsified reports – "French Treasury Dept. steals Gidding's dociers and demands 18 million francs in taxes." SAC, ¶102, Exhibits I, K.

### (ii) Scheme To Frame Plaintiffs

As evidence of Defendants' scheme to frame them, Plaintiffs make the following allegations:

— A French court-appointed administrator prepared a report implicating both plaintiffs in a "fiscal fraud." SAC, ¶¶105, 110.

— French Treasury officials mailed a summons to Plaintiff Gidding. SAC, ¶16.

— The IRS subpoenaed Plaintiff Gidding's bank records. SAC, ¶117.

### (iii) Acts Of Mail Fraud

Plaintiffs allege the following acts as examples of the mail fraud and wire fraud necessary to satisfy elements of their RICO claim:

— "The fiscal attaché to the American Embassy [Paris, France] mailed a letter to the IRS (Fresno, California)." SAC, ¶141vi.

5

— French Treasury officials mailed a summons to Giddings. SAC, ¶141vii.

— The IRS mailed a demand to Gidding. SAC, ¶141x.

— Wells Fargo Bank mailed a summons to Gidding. SAC, ¶141xi.

— French Treasury officials mailed a demand to Plaintiff Pivotal. SAC, ¶141xiv.

— The IRS mailed a demand to Pivotal. SAC, ¶141xv.

— SCEV's attorneys mailed a copy of a court judgment to Pivotal. SAC, ¶141xix.

### (iv) Self-Contradictory Allegations

The Complaint and the FAC were based, almost entirely, on the claim that Defendants deprived Plaintiffs of a possible source of payment on their judgment by removing Defendant PPSA's name from a forged "Contract of Guarantee" (Indemnity Agreement). See, *e.g.*, FAC ¶¶44 and 45. Now however, in the SAC, Plaintiff asserts precisely the opposite, alleging that the same Contract of Guarantee was forged to contain PPSA's identity as a guarantor. SAC, ¶42(b).

The proposed SAC also greatly expands upon the number of alleged forged documents. Where the Complaint and the FAC only mentioned a forged Contract of Guarantee and forged settlement agreement, the proposed SAC alleges an additional forged "Contract of Sale" (¶42(a)), a forged "Covenant" (¶42(c)), and a forged court judgment (¶81).

## III. LEAVE TO AMEND SHOULD BE DENIED

The Court should deny the motion for leave to amend a complaint (yet again) because it would be futile to allow the amendment. Plaintiffs are now seeking a second amended complaint, and though the factual allegations pile up in number and in implausibility, the second amended complaint continues to lack any colorable RICO claims. Allowing this filing would be futile. As the Ninth Circuit Court of Appeals recently reiterated, an amendment should not be allowed where it would be futile because the new version also fails to state a claim. *First American Title Insurance Co. v. United States,* 520 F.3d 1051, 1054(9th Cir. 2008)(affirming the refusal to allow

6

title insurers' proposed amendment of their complaint to include previous property owner as a plaintiff in action against the United States, challenging tax assessment and lien on insured properties, and seeking to recover federal estate tax allegedly assessed and collected erroneously or illegally.)

Much like in *Robertson v. Qadri*, 2008 WL 818529 ( N.D.Cal. 2008), where a judge in this district refused to allow multiple attempts to amend a complaint, this Court should deny this motion for leave to amend as well. In *Robertson,* " the Court conclude[d] that Plaintiff's proffered amendment fails to state a cognizable federal claim and thus would be futile. In light of the many opportunities Plaintiff has had to amend his complaint, the motion will be denied." *Id.* at 1. The same applies here-- the second amended complaint does not state a colorable claim, and it would be futile to allow it to be filed. As the *Roberston* court said, quoting *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir.1995), "Futility of amendment can, by itself, justify the denial of a motion for leave to amend." However, "[W]here [a] proposed amendment is insufficient in law and would thus be a useless act, it is proper ... to deny leave to amend." *Baker v. Pac. Far E. Lines, Inc.*, 451 F.Supp. 84, 89 (N.D.Cal.1978). A proposed amendment is insufficient or "futile" if "there is no set of facts which could be proved under the amendment to the pleadings which would constitute a valid and sufficient claim or defense ...." *Id.; see also Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir.1988).

In other words, leave ought to be denied where "the allegations of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.1986); *see also Albrecht v. Lund*, 845 F.2d 193, 195 (9th Cir.1988) ("[I]f a complaint is dismissed for failure to state a claim upon which relief can be granted, leave to amend may be denied ... if amendment of the complaint would be futile."). Here, all the new facts in this second amended complaint fail to cure the basic deficiency

7

of the first two complaints-- putting aside the sheer implausibility of the tales the different complaints tell, there is no RICO cause of action actually plead.

Of course, the court cannot entirely overlook the sheer implausibility and incoherence of the Second Amended Complaint, which is in many ways even more fantastic than the first two versions. A court should not ignore when the factual assertions in that complaint collapse from their own internal contradictions and incoherence, because a complaint must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007). In other words, "Factual allegations must be enough to raise a right to relief above the speculative level." 127 S.Ct.. 1965. Applying this *Twombly* standard to a RICO complaint, a few weeks ago the Seventh Circuit Court of Appeals affirmed the dismissal of an implausible complaint in *Limestone Development Corp. v. Village of Lemont*, --- F.3d ----, 2008 WL 852586 (7th Cir. April 1, 2008). That court noted the concerns expressed in *Twombly*, an antitrust case, are,

> ...as applicable to a RICO case, which resembles an antitrust case in point of complexity and the availability of punitive damages and of attorneys' fees to the successful plaintiff. RICO cases, like antitrust cases, are "big" cases and the defendant should not be put to the expense of big-case discovery on the basis of a threadbare claim.

*Id.* at * 5. Thus, especially for complex cases like RICO, "The old formula-that the complaint must not be dismissed unless it is beyond doubt without merit-was discarded by the *Bell Atlantic* decision. 127 S.Ct. at 1969 and n. 8." *Limestone,* 2008 WL 852586 at * 4. *See also Pobursky v. Madera County*, 2007 WL 4557090, * 15 (E.D.Cal. 2007) where a court in this circuit relied on *Twombly*'s admonition that "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level ..." to dismiss RICO claims against county officers stemming from a putative conspiracy to harass and falsely arrest plaintiffs and take their children into protective custody.

In sum, all that plaintiffs have done with their Second Amended Complaint is add still more details to allegations that, apart from being incredible and implausible, do not state claims under RICO against the Plantagenet defendants. When a complaint, despite attempts to claim all sorts of wrongdoing, does not actually allege the basic structural elements of a RICO claim, it must be dismissed, and an attempt to amend the complaint that does not address these problems must not be permitted. A RICO claim is not something to be taken lightly. Thus, for example, in *Acro-Tech, Inc. v. Robert Jackson Family Trust*, 84 Fed.Appx. 747 (9th Cir. 2003), the Court of Appeals explained that the district court did not abuse its discretion when it denied plaintiffs' leave to amend their Racketeer Influenced and Corrupt Organizations Act (RICO) claim on grounds of futility of amendment and fact that plaintiffs previously amended the complaint, where plaintiffs' "Second Amended Complaint (Corrected)" still failed to meet the requirements of RICO.

## IV. CONCLUSION

This litigation is an abuse of the judicial process. No colorable claim under RICO has or can be stated. For each of the reasons set forth above, this Court should deny Plaintiffs' motion for leave to file their proposed Second Amended Complaint.

DATED: May 9, 2008.

Respectfully submitted,

WILSON & QUINT LLP

By _____
Matthew F. Quint
Attorneys for Defendants Derek Anderson,
Plantagenet Capital Management, LLC, Plantagenet
Capital America LLC, Plantagenet Capital Fund LP,
PLB Holdings SA, and Plantagenet Partners SA

PLANTAGENET DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT