Fred H. Perkins (fhperkins@morrisoncohen.com)
Latisha V. Thompson (lthompson@morrisoncohen.com)
Admitted Pro Hac Vice
MORRISON COHEN LLP
909 Third Avenue, 27th Floor
New York, New York 10022
Telephone: (212) 735-8600
Facsimile: (212) 735-8708

Gail Cohen (093210) (gcohen@barwol.com)
BARGER & WOLEN LLP
633 West Fifth Street, 47th Floor
Los Angeles, California 90071
Telephone: (213) 680-2800
Facsimile: (213) 614-7399

Attorney for Specially-Appearing Defendant
MARIE-CLAUDE SIMON

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

MR. JOHN GIDDING, an individual, and PIVOTAL INC., a California corporation,

Plaintiffs,

vs.

DEREK ANDERSON, an individual; JOHN ZAPPETTINI, an individual; OLIVIER LEMAN, an individual; PLANTAGENET CAPITAL MANAGEMENT LLC, a purported California corporation; PLANTAGENET CAPITAL AMERICA LLC, a purported Delaware corporation; PLANTAGENET CAPITAL FUND LP, a purported Cayman Island corporation; PLANTAGENET CAPITAL FUND LP II, a purported Cayman Island corporation; PLM HOLDINGS SA, a purported Luxembourg corporation; PLANTAGENET PARTNERS SA, a purported French corporation; SA SOCIETE CHAMPENOISE D'EXPLOITATION VINICOLE, a purported French corporation; SERGE HAUCHART, an individual; PATRICK RAULET, an individual; JEAN-FRANCOIS RAPENEAU, an individual; CHRISTOPHE RAPENEAU, an individual; SA COMPAGNIE DES VINS DU LEVANT, a purported French corporation; MARIE-CLAUDE SIMON, an individual; AND DOES 1 through 100 inclusive,

Defendants.

Case No.: No. C 07-04755 JSW

Judge: Hon. Jeffrey S. White

DEFENDANT MARIE CLAUDE SIMON'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT

Date: May 30, 2008
Time: 9:00 a.m.
Place: 2, 17th Floor.

Complaint Filed: 9/14/07

DEFENDANT MARIE CLAUDE SIMON'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT Case No. C 07-04755 JSW

#1263325 v2 \20044 \001

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....... ii

PRELIMINARY STATEMENT ....... 1

ARGUMENT ....... 6

PLAINTIFFS' MOTION SHOULD BE DENIED UNDER RULE 15(A) ....... 6

(a) Plaintiffs' Proposed Amendment Is Futile Because This Court Does Not Have Personal Jurisdiction Over Ms. Simon ....... 6

(b) Plaintiffs Have Demonstrated Bad Faith ....... 14

CONCLUSION ....... 15

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*Amoco Egypt Oil Co. v. Leonis Navigation Co.*, 1 F.3d 848 (9th Cir. 1993) ....13

*Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 107 S. Ct. 1026 (1987)....12

*Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082 (9th Cir. 2000) ....9

*Brand v. Menlove Dodge*, 796 F.2d 1070 (9th Cir. 1986) ....9

*De Simas v. Big Lots Stores, Inc.*, No. C 06-6614 SI, 2007 U.S. Dist. LEXIS 19257 (N.D. Cal. Mar. 2, 2007) ....6

*Doe v. Unocal Corp.*, 27 F. Supp. 2d 1174 (C.D. Cal. 1998), *aff'd*, 248 F.3d 915 (9th Cir. 2001) ....8

*Doe v. Unocal Corp.*, 248 F.3d 915 (9th Cir. 2001) ....8, 9

*FAS Techs. v. Dainippon Screen Mfg.*, No. C 00-01879, 2001 U.S. Dist. LEXIS 7503 (N.D. Cal. May 31, 2001) ....6

*FDIC v. British-American Ins. Co.*, 828 F.2d 1439 (9th Cir. 1987) ....11, 12, 13, 14

*Fru-Con Constr. Corp. v. Sacramento Mun. Util. Dist.*, No. CN. 5-05-583, 2007 U.S. Dist. LEXIS 64017 (E.D. Cal. Aug. 17, 2007) ....11

*Green v. City of Tucson*, 255 F.3d 1086 (9th Cir. 2001) ....6

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 104 S. Ct. 1868 (1984) ....8, 9

*Hirel Connectors, Inc. v. U.S.*, No CV-01-1169, 2005 U.S. Dist. LEXIS 44181 (C.D.Cal. July 15, 2005) ....14

*Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris Inc.*, 23 F. Supp. 2d 796 (N.D. Ohio 1998) ....8

*Lee v. Regal Cruises, Ltd.*, 916 F. Supp. 300 (S.D.N.Y. 1996) ....14

*Martinez v. Newport Beach City*, 125 F.3d 777 (9th Cir. 1997) ....6

*Meinhold v. Sprint Spectrum, L.P.*, No. 2:07-CV-0456, 2007 U.S. Dist. LEXIS 73546 (E.D. Cal. Oct. 2, 2007) ....6

*Oakley, Inc. v. Jofa AB*, 287 F. Supp. 2d 1111 (C.D. Cal. 2003) .......... 8

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797 (9th Cir. 2004) .......... 10

*Sher v. Johnson*, 911 F.2d 1357 (9th Cir. 1990) .......... 7

*Union Pacific R.R. Comp. v. Coast Packing Co.*, 236 F. Supp. 2d 1130 (C.D. Cal. 2002) .......... 14

**STATE CASES**

*Edmunds v. Superior Court*, 24 Cal. App. 4th 221, 29 Cal. Rptr. 2d 281 (4th Dist. 1994) .......... 7, 11

*Shisler v. Sanfer Sports Cars, Inc.*, 146 Cal. App. 4th 1254, 53 Cal Rptr. 3d 335 (6th Dist. 2006) .......... 9

Defendant Marie-Claude Simon ("Ms. Simon") respectfully submits this opposition to Plaintiffs John Gidding ("Gidding") and Pivotal Inc.'s ("Pivotal") Motion for Leave to File a Second Amended Complaint.

**PRELIMINARY STATEMENT**

Plaintiffs' motion for leave to file yet another amended complaint is nothing more than another wholly unsuccessful attempt to turn Plaintiffs' frustration with the French courts and dissatisfaction with Ms. Simon, Plaintiffs' former French counsel, into a contrived international RICO conspiracy. However, as was the case with the Complaint and the First Amended Complaint ("FAC"), Plaintiffs' proposed Second Amended Complaint ("SAC") fails to allege facts sufficient to support the exercise of personal jurisdiction over Ms. Simon, a French citizen. Accordingly, Plaintiffs' motion should be denied because the SAC is futile as it still fails to establish this Court's jurisdiction over Ms. Simon, and thus, would be subject to dismissal.

Plaintiffs have not—and cannot—draft a complaint that would not be subject to dismissal against Ms. Simon for the simple fact that Ms. Simon is not subject to personal jurisdiction in California. It is beyond dispute that Ms. Simon, a citizen of France who has resided continuously in France for her entire life, was retained in France by Plaintiff Gidding to represent Plaintiffs before the French Courts. (Declaration of Marie-Claude Simon in support of her motion to dismiss the First Amended Complaint, filed with this Court on March 3, 2008 ("Simon Decl.") at ¶¶ 1, 7; Declaration of John Gidding in support of Plaintiffs' opposition to the motion to dismiss, filed with this court on March 21, 2008 ("Gidding Decl.") at ¶ 6.) It is equally beyond dispute that Ms. Simon has practiced as a licensed lawyer in France for many years, and has never been licensed to practice law in California, or for that matter held any type of employment in California. (Simon Decl. at ¶¶ 2, 3, 4.) Ms. Simon has no office in California and has never even been to California or to the United States. (*Id.* at ¶¶ 5, 7.) Given these

undeniable facts, no amount of "creative drafting" by Plaintiffs can create the necessary minimum contacts with the state of California to subject Ms. Simon to the Court's jurisdiction. As such, Plaintiffs' proposed complaint, like its predecessors, would be subject to dismissal as against Ms. Simon on the basis of lack of personal jurisdiction, among other things.

In both the initial Complaint filed by Plaintiffs on September 14, 2007, and the First Amended Complaint ("FAC") filed on December 17, 2007, Plaintiffs asserted that the Defendants were involved in a RICO conspiracy designed to deprive "Plaintiffs Gidding and Pivotal of . . . their duly obtained judgment against SCEV in Los Angeles County Superior Court." (*See* FAC ¶ 98.) Specifically, with respect to Ms. Simon, Plaintiffs claimed that her representation of Plaintiffs in France was part of this so-called conspiracy, notwithstanding that Ms. Simon was referred to them by Gidding's then current lawyer, and that Ms. Simon successfully represented Plaintiffs, obtaining three separate orders of sequester on SCEV's assets in France at the behest of Plaintiffs. (*See* Gidding Decl. ¶ 6; FAC ¶ 56.) While the FAC, on its face, alleged a conspiracy difficult to decipher and even harder to believe, one thing was evident -- it utterly failed to allege sufficient minimum contacts by Ms. Simon with the forum to subject her to suit in California. Indeed, the only jurisdictional allegations made at all were that: (i) Ms. Simon "at all relevant times, has been a resident of Reims, France;" (FAC ¶ 23) (ii) "Ms. Simon was Gidding's and Pivotal's legal counsel in France from September 2001 through March 2004;" (*id.*); and (iii) Ms. Simon, in response to a permissible discovery request in the French Action for production of a certain settlement agreement between Plaintiffs and Hartford, sent a fax to Plaintiffs' California Attorneys and requested that they notify Hartford (as per the settlement agreement) that the settlement agreement was to be produced in the French Court. (FAC ¶ 66.) However, since both Ninth Circuit and California law hold that a foreign lawyer's representation

of a California client in a foreign court and communications incident to that representation will not be sufficient for the exercise of jurisdiction, on March 3, 2006, Ms. Simon moved to dismiss the FAC, *inter alia*, on the basis of lack of personal jurisdiction. (*See* Notice of Motion By Defendant Marie-Claude Simon To Dismiss Action For Lack of Personal Jurisdiction and Ineffective Service of Process and Memorandum of Points and Authorities ("Motion to Dismiss").) In connection with the Motion to Dismiss, Ms. Simon submitted her affidavit attesting to the fact that she had no meaningful contacts with the state of California.

On March 21, 2008, Plaintiffs opposed the Motion to Dismiss, submitting the affidavits of John Gidding and Richard Genderson in support of their opposition. (*See* Plaintiffs' Opposition to Dismiss Marie-Claude Simon for Lack of Personal Jurisdiction and Ineffective Service of Process ("Opposition"), Declaration of Richard Genderson and Gidding Decl.) However, neither the Opposition nor the opposing affidavits contradicted the determinative facts that Ms. Simon had never been to California, never practiced law nor advertised her services in California. Indeed, Plaintiffs' opposing papers failed to allege any additional contacts with the forum sufficient for the establishment of personal jurisdiction over Ms. Simon. (*Id.*) On March 28, 2008, Ms. Simon filed her reply. (*See* Reply Memorandum of Points and Authorities in Further Support of Motion by Defendant Marie-Claude Simon to Dismiss ("Reply").) Ms. Simon's motion to dismiss the FAC has been fully briefed, is currently pending before this Court and is scheduled for oral argument on May 30, 2007. For the reasons set forth in the Motion to Dismiss and in the Reply, it is clear that Ms. Simon is not subject to jurisdiction in California.

On April 25, 2008, prior to the Court hearing argument on Ms. Simon's motion to dismiss the FAC, Plaintiffs filed the instant motion for an order granting leave to file the SAC. However, the SAC does nothing -- because it can do nothing -- to fix the jurisdictional

short-comings of Plaintiffs' prior complaints. While the SAC substitutes Plaintiffs' initial theory of a criminal enterprise organized to deprive Plaintiffs of their judgment against SCEV with that of an alleged "international money laundering scheme," Plaintiffs have in no way pleaded any additional activities by Ms. Simon with the forum sufficient for the exercise of this Court's jurisdiction. (*See* SAC ¶ 1.) Plaintiffs have not -- and cannot -- allege that Ms. Simon has ever been to California, practices law in California or has ever advertised her services in California. Indeed, the SAC simply alleges the same type of contact with the forum alleged in the FAC—those between a foreign lawyer and agents of the client in connection with the foreign lawyer's representation in the foreign court—rejected by the Ninth Circuit and California courts as an insufficient basis by which to establish personal jurisdiction. Indeed, the SAC fails to allege any additional contact between Ms. Simon and California, other than those meager facts alleged in the FAC, and as such, cannot withstand a motion to dismiss.[1]

Further, the SAC only contains a small number of allegations even purporting to involve Ms. Simon, none of which militate in favor of the exercise of jurisdiction over Ms. Simon. Indeed, to the contrary, several of the new allegations set forth in the SAC clearly show that the exercise of jurisdiction over Ms. Simon in California would be unreasonable. Specifically, Plaintiffs in the SAC now contend that:

- In addition to Ms. Simon's representation of Plaintiffs in France, she also represented a Washington D.C. corporation and a New York corporation in France. (SAC ¶ 25.)
- Plaintiffs initiated two proceedings in France against Ms. Simon and others in 2005, relating to such representation, at least one of which is predicated on claims

[1] Plaintiffs also recognize that the SAC fails to allege additional contacts by Ms. Simon with the forum. (*See* Motion to Amend at 9 ("should the court grant leave to amend … Defendants motions to dismiss will be moot, save for the motions to dismiss based on alleged lack of personal Jurisdiction").)

of money laundering and fraud, like those raised in the SAC. (SAC ¶ 35(b), Ex. J[2].)

- The French government and Plaintiffs have been working to "put together more pieces of the money laundering scheme." (SAC ¶ 37.)

- "Defendants [sic] [alleged] money laundering took place outside the United States." (SAC ¶ 4.)

- The alleged money laundering conspiracy implicates corrupt French Treasury officials, who purportedly stole the documents necessary to substantiate Plaintiffs' claims, and wrongfully notified the IRS of false claims against Gidding. (SAC ¶¶ 114-135.).

- Plaintiffs have been aware of the purported money laundering scheme since January 16, 2004, when "Gidding wrote to the French Treasury Officials and summed up the Defendants [*sic*] involvement in money laundering and corruption." (SAC ¶ 127.)

These new allegations raised for the first time in the SAC, bizarre as they may be, make clear that Plaintiffs' "claims" are a matter for the French courts, involving overwhelmingly French actors and conduct allegedly committed in France. Indeed for this very reason, Plaintiffs initially filed their complaints of money laundering in France. (*See* SAC ¶ 35(b), Ex. J.)

Moreover, Plaintiffs' assertion that the proposed amendment was necessitated by newly discovered facts concerning the alleged "international money laundering scheme" is completely contradicted by the very proposed amendment. Indeed, the SAC specifically alleges that Gidding was fully aware of the Defendants' purported money laundering activities by at least January 16, 2004. (SAC ¶ 127 ("On or about January 16, 2004, Gidding wrote to the French Treasury officials and summed up the Defendants [*sic*] involvement in money laundering and corruption.").) Moreover, by July of 2005, Plaintiffs lodged a complaint against Ms. Simon and others in France, alleging claims of money laundering and corruption. (SAC ¶ 35(b), Ex. J.)

---

[2] A copy of a certified translation of Exhibit J to the SAC, is attached as Exhibit A to the Declaration of Danielle Gill, submitted herewith.

Given that Plaintiffs, by their own admission, were fully aware of the operative facts of the conspiracy alleged in the SAC, more than 3 years prior to the filing of the instant action, Plaintiffs' delay in amending the FAC until faced with motions to dismiss by various Defendants is evidence of Plaintiffs' bad faith.

**ARGUMENT**

**PLAINTIFFS' MOTION SHOULD BE DENIED UNDER RULE 15(A).**

Plaintiffs' motion for leave to amend their complaint yet again should be denied under Rule 15(a). Although Rule 15(a) provides that leave to amend "shall be freely given when justice requires," leave to amend is not appropriate where, *inter alia*, the proposed amendment is futile or where there is a showing of bad faith or dilatory motive on the part of the movant. *Martinez v. Newport Beach City*, 125 F.3d 777, 785 (9th Cir. 1997), *overruled* on other grounds by *Green v. City of Tucson*, 255 F.3d 1086 (9th Cir. 2001); *Meinhold v. Sprint Spectrum, L.P.*, No. 2:07-CV-0456, 2007 U.S. Dist. LEXIS 73546 (E.D. Cal. Oct. 2, 2007) (same); *De Simas v. Big Lots Stores, Inc.*, No. C 06-6614 SI, 2007 U.S. Dist. LEXIS 19257, at *6 (N.D. Cal. Mar. 2, 2007) (recognizing that leave to file an amended complaint "may be denied if the proposed amendment is futile or would be subject to dismissal."). Here, the proposed amendment is both futile and made in bad faith.

(a) Plaintiffs' Proposed Amendment is Futile Because This Court Does Not Have Personal Jurisdiction Over Ms. Simon.

Plaintiffs' motion should be denied because the SAC is futile in that it fails to allege facts necessary to support the exercise of personal jurisdiction over Ms. Simon. A proposed amendment is futile where the allegations of the amended complaint are insufficient to support the exercise of personal jurisdiction. *FAS Techs. v. Dainippon Screen Mfg.*, No. C 00-01879, 2001 U.S. Dist. LEXIS 7503, at 18 (N.D. Cal. May 31, 2001) ("[Defendant's] motion for leave

to amend to add new claims which have no nexus to California is denied. Such an amendment would be futile as [defendant] has not demonstrated that the Court has venue or personal jurisdiction with respect to such claims"). Here, the SAC, like its predecessors, fails to allege any facts suggesting that Ms. Simon has the requisite contacts with California to support general or specific jurisdiction. In fact, like its predecessors, the SAC confirms that Ms. Simon "was or is a resident of France" and that at all "relevant times she was practicing lawyer in Reims, France." (SAC at ¶ 25.) The only contacts with the forum even alleged in the SAC are that: (i) Ms. Simon represented Gidding, who claims to be a California resident, and Pivotal, a California corporation, in proceedings in France; and (ii) Ms. Simon faxed Seebach a request for copies of a settlement agreement in connection with the ongoing proceeding in France.[3] (SAC ¶¶ 25, 91.) However, these facts were also alleged in the FAC (FAC ¶¶ 23,67), and as fully set forth in Simon's Motion to Dismiss, both the Ninth Circuit and California Courts have conclusively held that a foreign lawyer's representation of a California client in a foreign court, along with communications incident to that representation are insufficient to establish specific jurisdiction. (Reply at 7-9, citing *Edmunds v. Superior Court*, 24 Cal. App. 4th 221, 29 Cal. Rptr. 2d 281 (4th Dist. 1994); *Sher v. Johnson*, 911 F.2d 1357 (9th Cir. 1990).

Unable to allege any additional contacts with the forum, Plaintiffs now assert that Ms. Simon represented a Washington D.C. corporation, Schneiders Group LLC and a New York Corporation, Windstock & Importing Corporation, in France. (SAC ¶¶ 25.) Even if true, these facts have no relevance to the jurisdictional analysis as the requisite test for the application of

[3] Remarkably, Plaintiffs now contend that Ms. Simon and another partner at her firm "pretended" that a copy of the settlement agreement was required to be produced in the French Action, directly contradicting their admission in the FAC that the settlement agreement was requested pursuant to permissible French discovery. (*Compare* SAC ¶¶ 87, 90 *with* FAC ¶ 66). Plaintiffs provide no explanation for this blatant contradiction. Plaintiffs' willingness to play fast and loose with their factual allegations, further speak to their bad faith.

personal jurisdiction over a defendant revolve around the defendant's contacts with the forum. *Doe v. Unocal Corp.*, 248 F.3d 915, 925 (9th Cir. 2001) (holding that a court cannot assert personal jurisdiction over a defendant who does not have certain minimum contacts with the forum such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S. Ct. 1868 (1984) (same). Plaintiffs' allegations concerning Ms. Simon's representations of other parties who are not residents of the forum in a foreign country are thus completely irrelevant to the jurisdictional analysis.

Moreover, as with the predecessor complaints, Plaintiffs' styling of their claims as a violation of RICO in no way absolves Plaintiffs of establishing Ms. Simon's contact with California. *Doe v. Unocal Corp.*, 27 F. Supp. 2d 1174, 1183 (C.D. Cal. 1998), *aff'd*, 248 F.3d 915 (9th Cir. 2001) (rejecting plaintiffs' attempt to base jurisdiction on a theory of national contacts, and holding that even under RICO a plaintiffs must establish a foreign defendant's minimum contacts with the forum state); *see also Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris Inc.*, 23 F. Supp. 2d 796, 806 (N.D. Ohio 1998) ("Since the RICO statute does not authorize international service of process, to establish personal jurisdiction over [foreign defendant], the plaintiffs in the instant case must rely on the forum state's long-arm statute.").

Plaintiffs have failed to allege any other facts which are even remotely related to Ms. Simon's contact with the forum or the propriety of this Court's exercise of personal jurisdiction over Ms. Simon. As such, Plaintiffs have utterly failed to meet their burden of establishing jurisdiction over Ms. Simon. *Oakley, Inc. v. Jofa AB*, 287 F. Supp. 2d 1111, 1113 (C.D. Cal. 2003). In order to establish personal jurisdiction over the defendant, plaintiffs must demonstrate that the defendant's contacts with the forum are sufficient to subject her to the general or specific

jurisdiction of the court); *Doe v. Unocal Corp.*, 248 F.3d 915 (9th Cir. 2001) (holding that the burden of demonstrating that the Court has jurisdiction over the defendant rests solely with the plaintiff).

Ms. Simon, however, has clearly established that she is not subject to general or specific jurisdiction in this Court. To establish general jurisdiction, a plaintiff must demonstrate that the defendant has systematic and continuous contacts with the forum State. *Helicopteros*, 466 U.S. at 414 n.9, 104 S. Ct. at 1868; *Unocal Corp.*, 248 F.3d at 923; *see also Shisler v. Sanfer Sports Cars, Inc.*, 146 Cal. App. 4th 1254, 1259, 53 Cal Rptr. 3d 335, 338 (6th Dist. 2006) (finding no general jurisdiction where Florida corporation "has no physical presence in California, is not registered to do business here, and has never intentionally directed its marketing efforts to California residents"). "The standard for establishing general jurisdiction is 'fairly high' and requires that the defendant's contacts be of the sort that approximate physical presence." *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) *quoting Brand v. Menlove Dodge*, 796 F.2d 1070, 1073 (9th Cir. 1986). As set forth in the Simon Affidavit, there can be no question that Ms. Simon does not have systematic and continuous contacts with the forum:

- Ms. Simon, a French citizen, has continuously resided in France for her entire life. (Simon Decl. ¶¶ 1, 7)
- Ms. Simon has never practiced law or held any type of employment in California or anywhere in the United States. (Simon Decl. ¶¶ 3, 4.)
- Ms. Simon has no U.S. income and pays no U.S. income tax. (Simon Decl. ¶ 6)
- Ms. Simon has no office in California and has never even been to the United States, much less California. (Simon Decl.¶ 5.)
- Ms. Simon neither advertises her services nor solicits business in California. (Simon Decl. ¶ 5.)

- Ms. Simon's business transactions with Plaintiffs were for legal services, procured, accepted and rendered exclusively in France. (Simon Decl. ¶¶ 9-14).

Given these uncontroverted facts, there is no reasonable way Plaintiffs could draft – nor have they drafted -- a complaint alleging facts sufficient to subject Ms. Simon to personal jurisdiction in California on a general basis.

Likewise, it is clear that Ms. Simon is not subject to specific jurisdiction. In order to establish specific jurisdiction over Ms. Simon, Plaintiffs would have to prove that: (1) Ms. Simon purposefully directed her activities toward residents of the forum state or purposefully availed herself of the privilege of conducting activities in the forum state, thus invoking the benefits and protections of its laws; (2) the controversy relates to or arises out of Ms. Simon's contact with the forum; and (3) the exercise of jurisdiction is reasonable. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). A review of the SAC easily establishes that Plaintiffs remain unable to assert allegations sufficient to meet the Ninth Circuit standard.

First, Plaintiffs have alleged no additional contacts by Ms. Simon with the forum. Accordingly, the SAC fails to demonstrate that Ms. Simon is subject to personal jurisdiction in California for the same reasons as the FAC. (*See* Motion to Dismiss.)

Second, the SAC admits that the money laundering scheme at the heart of its new RICO conspiracy "took place outside the United States" (SAC ¶ 37), conclusively establishing that the instant controversy does not relate to or arise out of Ms. Simon's contact with the forum.

Third, the SAC's allegations that the alleged conspiracy involves corrupt French Treasury officials, is being investigated by French authorities and is the subject of a prior complaint filed

by Plaintiffs against Ms. Simon in France, [4] conclusively establish that California has no nexus to the claim at issue, that an appropriate alternative forum to hear the matter exists and thus that the exercise of jurisdiction would be unreasonable. The law is clear the where the exercise of jurisdiction would be unreasonable, specific jurisdiction will not be said to exist. *Fru-Con Constr. Corp. v. Sacramento Mun. Util. Dist.*, No. CN. 5-05-583, 2007 U.S. Dist. LEXIS 64017 (E.D. Cal. Aug. 17, 2007). In addressing the reasonableness of the exercise of jurisdiction, the Ninth Circuit considers seven factors: (1) the extent of the defendant's purposeful interjection, (2) the burden on defendant in defending in the forum, (3) the extent of conflict of sovereignty with defendant's state, (4) the forum's interest in the dispute, (5) the most efficient forum, (6) the importance of the forum to plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum. *FDIC v. British-American Ins. Co.*, 828 F.2d 1439, 1442 (9th Cir. 1987). Here, each of these factors establishes that the exercise of specific jurisdiction over Ms. Simon, given the allegations of the SAC, would be unreasonable.

The first factor clearly favors Ms. Simon as the extent to which Ms. Simon purposefully interjected herself into California's affairs is non-existent or minimal at most: Ms. Simon has never been to California, has never practiced law in California and has no offices in California. Indeed, even according to Plaintiffs, Ms. Simon's only nexus to California are communications incident to her representation of Plaintiffs in France -- circumstances under which courts have found the exercise of jurisdiction to be unreasonable. *E.g.*, *Edmunds*, 24 Cal. App. 4th at 233 (finding the exercise of jurisdiction over a foreign lawyer representing a California client in a

---

[4] As a point of clarification, the proceedings against Ms. Simon in France were initiated by complaints filed by Plaintiff Gidding. (*See* Gill Decl. Ex. A, translation of Exhibit J to the SAC.). Contrary to the contentions of Paragraph 35 (b) of the SAC, no actions by Simon "gave the Prosecutor of the French Republic cause to join two criminal actions". (SAC ¶ 35.) Rather, as the Order clearly provides, the civil claims initiated by Plaintiffs were joined because the complaints were filed by the same civil parties and include the same facts. (*See* Gill Decl. Ex. A ("Whereas these two complaints were filed by the same civil parties and including the same facts, it appears necessary to combine these complaints into a single proceeding").)

foreign lawsuit unreasonable where the lawyer had no connection with California other than his work for plaintiffs and his payment therefore). Moreover, as set forth in the SAC, "the Defendants money laundering took place outside the United States". (SAC ¶ 37.)

The second factor also weighs heavily in favor of Ms. Simon. Under this factor, the primary concern is for the defendant's burden. *British-American*, 828 F.2d at 1444. The burden to Ms. Simon of defending herself in California is great as she resides and works in France and has never been to the United States. *See Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 114, 107 S. Ct. 1026, 1033 (1987) ("[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders."). Under these circumstances, the burden of travel to California for depositions, conferences, mediation, and trial is substantial in addition to the difficulties presented by Ms. Simon not being able to readily comprehend English.

The third factor, conflict of sovereignty with defendant's state, also weighs in favor of Ms. Simon. It is well recognized that "a foreign nation presents a higher sovereignty barrier than another state within the United States." *British-American*, 828 F.2d at 1444. The SAC alleges a conspiracy involving corrupt French Treasury officials, (SAC ¶ 35), and actually goes so far as to accuse the French Treasury officials of stealing documents in furtherance of the alleged scheme. (SAC ¶ 102.) Given that Plaintiffs' new conspiracy has grown infinitely larger and now implicates the French government there can be no doubt that the exercise of jurisdiction by this court would present a conflict of sovereignty with the defendant's state.

The fourth factor, the forum's interest in the dispute, also weighs in favor of Ms. Simon. While this forum has an interest in protecting its residents, the significant contacts Gidding has

with France (Gidding Decl. ¶ 5), coupled with the fact that the French government is allegedly investigating the claims of money laundering and virtually all of the alleged actions took place in France under the jurisdiction of the French courts shows that any interest in protecting Mr. Gidding solely as a California resident is minimal.

The fifth factor, the most efficient forum, also weighs strongly in favor of Ms. Simon. The SAC sets forth a vast money laundering conspiracy, including the sale of a French bakery, corrupt French officials, and in the case of Ms. Simon, a French lawyer committing a fraud upon the courts of France during the course of a proceeding in France. Specifically, as to Ms. Simon, Plaintiffs allege that she represented Plaintiffs in France (SAC ¶ 25) and that she submitted a fraudulent document to the French court (SAC ¶ 70.) It is obvious that the most efficient forum in which to litigate complaints against alleged wrongful conduct occurring in France involving French officials and alleged fraud committed against the French courts by a member of the French Bar is in the Courts of France -- the place where the acts complained of occurred and where the witnesses are located, and where plaintiffs have already filed complaints. *See British-American Ins. Co.*, 828 F.2d at 1444 (noting that the location of the evidence and witnesses are factors to be considered when evaluating the most efficient forum).

To evaluate the sixth factor, importance of the forum to plaintiff's interest in convenient and effective relief, courts consider whether plaintiff will be able to litigate in an alternative forum. *Id.* at 1444-45. Here, Plaintiffs have confirmed that not only are they able to litigate in an alternative forum, but they have in fact initiated proceedings in France based on the same or similar facts. (SAC ¶ 35 (b).)

As for the final factor, existence of an alternative forum, Plaintiffs bear the burden of establishing that no alternative forum is available. *See Amoco Egypt Oil Co. v. Leonis*

*Navigation Co.*, 1 F.3d 848, 853 (9th Cir. 1993); *British-American*, 828 F.2d at 1445. Plaintiffs cannot meet this burden, as the existence of an alternative forum has been established by the very fact that Plaintiffs filed their initial complaint against Ms. Simon and others for money laundering in France in 2005. (SAC Ex. J; Gill Decl. Ex. A).

(b) Plaintiffs Have Demonstrated Bad Faith.

Plaintiffs' motion should be denied based on their bad faith, as evidenced by Plaintiffs' blatant forum shopping and their unexplained delay in amending the FAC. *See Union Pac. R.R. Comp. v. Coast Packing Co.*, 236 F. Supp. 2d 1130, 1133 (C.D. Cal. 2002) (finding amendment unwarranted due to possible bad faith, where the "amendment cannot be the result of newly discovered evidence as Plaintiff had the relevant documents in its possession before it even brought this action"); *Lee v. Regal Cruises, Ltd.* 916 F. Supp. 300, 209 (S.D.N.Y. 1996) (finding bad faith where plaintiff's proposed amendment alleged a whole new theory of causation, based on facts already known to it in response to defendant's dispositive motion, which highlighted significant flaws in plaintiff's theory); *Hirel Connectors, Inc. v. U.S.*, No CV-01-1169, 2005 U.S. Dist. LEXIS 44181 (C.D. Cal. July 15, 2005) (finding bad faith where plaintiffs were engaged in forum shopping and there was no connection between the alleged "new evidence" and the necessity of amending the complaint).

Here, Plaintiffs' motion to amend is clearly brought in bad faith. Although plaintiffs claim that the new allegations of the SAC are based on facts newly discovered during the week of February 11, 2008, the alleged conspiracy in the SAC goes back more than 10 years. Indeed, Exhibit J to the SAC, when translated, shows that Plaintiffs raised claims against Ms. Simon for money laundering back in 2005, years before even the initial complaint was filed. (SAC ¶ 35(b), Ex. J.) Moreover, Plaintiffs admit that they knew all about the alleged scheme as early as

January of 2004 (*See* SAC ¶ 127 ("On or about January 16, 2004, Gidding wrote to the French Treasury officials and summed up the Defendants [*sic*] involvement in money laundering and corruption").) There is no justifiable reason, having been fully aware of these facts for more than 3 years before the September 14, 2007 filing of this action, why Plaintiffs did not include these facts in the initial complaint or the FAC. Indeed, it appears that Plaintiffs have alleged these "new facts" known to them for years in a last ditch attempt to resuscitate claims, which have been shown to be meritless.

## CONCLUSION

For all the reasons stated above and in Ms. Simon's prior submissions, Ms. Simon requests that this Court deny Plaintiffs' Motion for Leave to File a Second Amended Complaint.

Dated: New York, New York
May 16, 2008

BARGER & WOLEN LLP

By: /s/
Gail Cohen (09310)
650 California Street, 9th Floor
San Francisco, California 94108
Telephone: (415) 434-2800
Facsimile: (415) 434-2533

-and-

MORRISON COHEN LLP

By: [signature]
Fred Perkins
Latisha Thompson
*Admitted Pro Hac Vice*
909 Third Avenue
New York, New York 10022-4731
Telephone: (212) 735-8600
Facsimile: (212) 735-8708

Attorneys for Defendant
*MARIE-CLAUDE SIMON*