**BIRNBERG & ASSOCIATES**
**CORY A. BIRNBERG (SBN 105468)**
**BIRNBERG & ASSOCIATES**
**703 Market Street, Suite 600**
**San Francisco, CA 94103**
**Telephone: (415) 398-1040**
**Facsimile: (415) 398-2001**

**Attorneys for Plaintiffs**
**JOHN GIDDING, PIVOTAL, INC.**

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| **JOHN GIDDING, PIVOTAL, INC.** ) | Case No. C-7-04755-JW |
| ) | |
| Plaintiffs, ) | **REPLY TO PLANTAGENET** |
| ) | **DEFENDANTS' OPPOSITION TO** |
| v. ) | **PLAINTIFF'S MOTION FOR AN** |
| ) | **ORDER GRANTING LEAVE TO** |
| **DEREK ANDERSON, et al.,** ) | **FILE A SECOND AMENDED** |
| ) | **COMPLAINT** |
| Defendants. ) | |
| ) | **FRCP Rule 15(a)** |
| ) | |
| ) | Date: May 30, 2008 |
| ) | Time: 9:00 a.m. |
| ) | Place: Courtroom 2, 17th Floor, 450 |
| | Golden Gate Ave., San Francisco, |
| | California |

NOW COME Plaintiffs JOHN GIDDING and PIVOTAL, INC. (hereinafter "Plaintiffs") and do hereby submit to this Court their reply to Plantagenet Defendants' opposition to Plaintiffs' motion for an order granting leave to file a second amended complaint in this matter.

**REPLY TO PLANTAGENET DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR AN ORDER GRANTING LEAVE TO FILE A SECOND AMENDED COMPLAINT**

-1-                                                                                Case No. C-7-04755-JW

BIRNBERG & ASSOCIATES
703 MARKET STREET
SUITE 600
SAN FRANCISCO
CA, 94103
TEL (415) 398-1040
FAX (415) 398-2001

## I.  INTRODUCTION

In their opposition, Plantagenet Defendants make many conclusory statements regarding Plaintiffs' proposed second amended complaint (hereinafter "SAC"). While Plantagenet Defendants claim that the SAC alleges a "vast conspiracy" that is not "plausible on its face," Plaintiffs maintain that the SAC states a cause of action for RICO upon which relief may be granted, and that it contains sufficient, in fact more than is required by statute, facts to allege the conspiracy, conveyance scheme, and enterprise upon which a RICO claim must be based.

Plantagenet Defendants apparently take issue with the new facts alleged in the SAC, and with several entities that Plaintiffs mention, such as French champagne makers, American insurance companies and French treasury officials. Plantagenet Defendants, apparently, do not comprehend the RICO statute and what is necessary, and not necessary, in stating a cause of action there-under. The RICO statute was originally enacted to fight organized crime by creating liability in parties for acts that otherwise might not meet all the elements of a tort. As such, it is not necessary that the Plaintiffs match up the moving parties, i.e. the Plantagenet Defendants, with each act of racketeering alleged, or match each pleaded act with damages to itself. The second amended complaint ("SAC") focuses on the whole conspiracy, part of a larger enterprise, not directed at these plaintiffs and the existence of which was recently confirmed and fleshed out by the Prosecutor of the French Republic. The addition of the various previously-unmentioned entities/individuals is a method by which Plaintiffs flesh out the conspiracy as a whole; Plaintiffs are not intending to sue these entities/individuals, but mention them in the SAC as conduits of schemes and

BIRNBERG & ASSOCIATES
703 MARKET STREET
SUITE 600
SAN FRANCISCO
CA, 94103
TEL (415) 398-1040
FAX (415) 398-2001

**REPLY TO PLANTAGENET DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR AN ORDER GRANTING LEAVE TO FILE A SECOND AMENDED COMPLAINT**

conspiracies upon which Plaintiffs base its RICO cause of action against the named defendants. This is permissible under RICO.

Plantagenet Defendants further allege that Plaintiffs' SAC RICO cause of action is merely an attempt, borne out of frustration, to collect on Plaintiffs' uncollectible judgment against former Defendant SCEV. This could not be further from the truth. Prior to this litigation, Plaintiffs did indeed attempt to collect its judgment against SCEV. However, in doing so, they uncovered a conspiracy involving Defendants (directed at money laundering and not specifically against these Plaintiffs) that is the subject of a criminal investigation in France. Plantagenet Defendants would have the Court believe that Plantagenet Defendants' acts, as alleged in the SAC, are implausible. However, Plantagenet Defendants themselves were the subject of a second criminal investigation in France for the crimes of money laundering, corruption, fraud, and forgery. Three weeks after the first investigation ended, Defendant Serge Hauchart, fresh out of jail, joined forces with Plantagenet, and Plantagenet slated Plaintiff's commerce in Champagne to fund their criminal scheme. The Plaintiffs, ignorant of the criminal enterprise confronting them, sued to protect their commerce and, when they prevailed in civil court, found themselves beset by a bewildering array of tax and criminal suits. In defeating the criminal and tax suits the Plaintiffs discovered that these suits revolved around the operations of a criminal enterprise. Plaintiffs thereafter filed this suit, and have cooperated with the French Prosecutor in a subsequent criminal investigation in which Defendants were involved in many of the same criminal activity, which is how Plaintiffs learned of many of the facts and complex schemes that are alleged in the SAC. There is nothing implausible or incredible in the SAC, since all of it is based in fact and was carried over from the criminal investigations in France.

**REPLY TO PLANTAGENET DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR AN ORDER GRANTING LEAVE TO FILE A SECOND AMENDED COMPLAINT**

-3-                                                        Case No. C-7-04755-JW

BIRNBERG & ASSOCIATES
703 MARKET STREET
SUITE 600
SAN FRANCISCO
CA, 94103
TEL (415) 398-1040
FAX (415) 398-2001

In fact, the SAC uses the facts and evidence garnered by the second criminal investigation to reaffirm and embellish the continuity and relationship between the predicate acts that proximately damaged the Plaintiffs. The Plaintiffs allegations of fact, similar to those used by France in their case against Hauchart, are above and beyond the standard envisioned by the *Twombly* court. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007) (erroneously cited by Plantagenet Defendants as *Dow Chemical Corp. v. Twombly*).

The proposed SAC alleges newly discovered and supplemental facts that will significantly expand upon what is alleged in the First Amended Complaint, and that are necessary to apprise Defendants of the facts that form the basis of the allegations in the complaint; equity, fairness and justice dictate this. In addition, the SAC adds a new party, and Defendant fails to make any argument in its opposition that the addition of this new party is prejudicial at this early stage of litigation.

Lastly, the cases cited in Plantagenet Defendants' opposition are all clearly distinguishable from the case at bar, are inapposite and in some cases are no longer good law. Plantagenet Defendants fail to establish that amendment in this case would be futile, and therefore, since justice so requires, Plaintiffs again request that this court grant its motion to file its SAC.

## II.     NEW ALLEGATIONS IN THE PROPOSED SAC

Contrary to Plantagenet Defendants' assertions, the SAC maintains the allegations made in the original and first amended complaint ("FAC"), but illustrates the connection between the predicate acts and the workings of the conspiracy by pleading additional

**REPLY TO PLANTAGENET DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR AN ORDER GRANTING LEAVE TO FILE A SECOND AMENDED COMPLAINT**

-4-                                                      Case No. C-7-04755-JW

predicate and wrongful acts. The FAC only described the underlying crime of money laundering, while the SAC is far more detailed and in essence, calls a spade a spade.

### A.  The New Defendant

The addition of SCEA Chateau Lagune (hereinafter "Lagune") to the SAC is necessary to establish the pattern of racketeering alleged therein, and in fact, there is plenty of evidence to that demonstrates a connection between the Plantagenet Defendants and Lagune. The Plaintiffs' deposition testimony in the Los Angeles litigation shows that Plantagenet was more informed about Lagune's forged invoices than was Lagune. In November 1998, Lagune issued bogus invoices in Plaintiff John Giddings' name, the totals of which corresponded to the amounts that the Plantagenet Defendants intended to launder through the shares of SCEV. Later, in April 1999, both Defendant Derek Anderson and Lagune adjusted the invoices and the SCEV stock transfers to a higher, but identical, amount. By December 1999, Plantagenet had already sent their employees to Lagune's headquarters in Champagne to collect documents and testimony that could help them in the Los Angeles litigation. Indeed, Plantagenet was more concerned with the Plaintiff's litigation against Lagune (and its subsidiaries Champagne Ayala and Champagne Montebello) then with their "contractual" defense of SCEV's interests.

Plaintiffs suspected that Lagune was involved since 2005, though it was not until the current French criminal investigation that this was confirmed. SAC exhibit J indicates that, as early as June 2005, the suspected money launderers included Lagune, Defendants Patrick Raulet, Serge Hauchart, Compagnie des Vins du Levant, and Marie-Claude Simon. After confirming what Plaintiffs suspected in 2005, they added these allegations in the SAC, closely tracking and following the present criminal investigation. New Defendant

**REPLY TO PLANTAGENET DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR AN ORDER GRANTING LEAVE TO FILE A SECOND AMENDED COMPLAINT**

-5-                                                        Case No. C-7-04755-JW

BIRNBERG & ASSOCIATES
703 MARKET STREET
SUITE 600
SAN FRANCISCO
CA, 94103
TEL (415) 398-1040
FAX (415) 398-2001

"Lagune" is all that is remains of SA Champagne Ayala (liquidated), Societe Generale de Champagne ("Champagne Montebello - liquidated), COFICEB (the Ducellier-Rapeneau Holding company - liquidated), and Alain Ducellier (deceased).

Therefore, Plaintiffs now seek to add Lagune as defendants, especially since Lagune is not prejudiced by the addition at this early stage of litigation.

### B.   Previously Dismissed Parties

Plaintiffs are well aware that Defendants SCEV, Levant, Rapeneau and Raulet were dismissed on or about December 27, 2007. They are not defendants for the SAC and will be stricken as defendants from the SAC caption. ***However***, the participation of these entities/individuals in the conspiracy and actions still remain, though they are no longer defendants herein. It is necessary for Plaintiffs to continue to mention these entities/individuals in the allegations in the SAC, in order to establish the RICO cause of action. Though Defendant Plantagenet argues valiantly that these allegations are unsubstantiated, the dismissed defendants paid Plaintiffs $1.3 million on allegation of breach of contract in the Los Angeles action, they settled the RICO case as well, and related actions in France (including criminal actions) [1] to buy their peace. Though these defendants have been dismissed from the present suit by virtue of their settlement, the remaining defendants participated with the settling defendants in the criminal enterprise. They have a similar liability.

Plaintiffs will rectify this simple mistake in the caption, though it does not change the allegations against the remaining defendants, and the dismissed defendants are in fact dismissed without prejudice (which the Plantagenet Defendants concede to in their

---

[1] In a criminal action in France, there is civil liability. The civil liability attached to the criminal proceeding was waived and released by the settlement.

**REPLY TO PLANTAGENET DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR AN ORDER GRANTING LEAVE TO FILE A SECOND AMENDED COMPLAINT**

-6-                             Case No. C-7-04755-JW

BIRNBERG & ASSOCIATES
703 MARKET STREET
SUITE 600
SAN FRANCISCO
CA, 94103
TEL (415) 398-1040
FAX (415) 398-2001

opposition). There is no reason why the defendants dismissed without prejudice could not be named again, and the Plantagenet Defendants cite no reasons to the contrary. However, Plaintiffs do not intend to name these defendants again here and will remove them from the caption. Further, they will not be referred to in the SAC as defendants therein, but where they are part of the allegations and the criminal conspiracy, they will be referred to as either wrongdoers or participants. They are a necessary part of the association, joined in purpose and part of the overall structure (and for those reasons bought their peace) and they are necessarily mentioned in the SAC, though they are no longer defendants herein.

### C. The New Criminal Enterprise

Plantagenet Defendants mischaracterize their role between the FAC and the SAC. The Plantagenet Defendants did not suddenly "morph" from mere assistance in SCEV's schemes in the FAC, to being "money launderers" in the SAC. Rather, the SAC alleges additional facts consistent with what was alleged in the FAC. The FAC alleged that the Plantagenet Defendants engaged in a series of acts that would be considered money laundering, though Plaintiff did not in fact label these actions as "money laundering." The FAC never uses the term "money laundering," though the alleged actions of the Plantagenet Defendants therein amount to such in France. In the SAC, Plaintiffs have taken several cues from the French criminal investigation, such as calling the totality of Plantagenet's actions "money laundering." The same series of acts are alleged in the FAC as in the SAC, and the same facts (though the SAC has fleshed out these acts some what). Plaintiff is alleging no new schemes here, but is rather labeling the Plantagenet Defendants' actions as money laundering, in order to be consistent with the nomenclature used in the French criminal investigation. It is important to note that the RICO predicate acts are not based on

BIRNBERG & ASSOCIATES

703 MARKET STREET
SUITE 600
SAN FRANCISCO
CA, 94103

TEL (415) 398-1040
FAX (415) 398-2001

**REPLY TO PLANTAGENET DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR AN ORDER GRANTING LEAVE TO FILE A SECOND AMENDED COMPLAINT**
-7-  Case No. C-7-04755-JW

actual money laundering, rather on mail fraud and wire fraud. Plaintiffs' choice of words, especially when merely used to describe as a whole the Plantagenet Defendants' actions are merely stylistic, though the underlying facts and schemes alleged are the same between the FAC and the SAC.

### D.  **Plausible Allegations**

The allegations considered by Plantagenet to be "implausible" are part and parcel of Defendant Hauchart's modus operandi, and indeed he has found his way into French legal textbooks on the subject of money laundering. The French Republican Party's constant use of corrupted treasury officials, trumped up tax charges, forged contracts, etc. is a matter of established fact in France. Further, the abundant documentary and forensic evidence supporting each and every allegation in the SAC was sufficient to have the tax and criminal suits against the Plaintiff's dismissed. Plantagenet Defendants' pretensions of "implausibility" can be similarly dismissed

The SAC defines the Enterprise as an association-in-fact of money launders, because the Defendants are accused of having committed the crime of money laundering as per the French statutes rather than those of the United States. This Enterprise has (1) a common goal of laundering 3,000,000 French Francs through the purchase and sale of SCEV, United States v. Johnson, 430 F.3d 383, 391-92 (6th Cir. 2005); (2) an ascertainable structure, as the Plantagenet Defendants launder the money that is supplied by the remaining defendants, and (3) continues to act as a unit up to the filing of this complaint. Further, the SAC establishes that the Enterprise is separate and distinct from the pattern of racketeering.

BIRNBERG & ASSOCIATES
703 MARKET STREET
SUITE 600
SAN FRANCISCO
CA, 94103
TEL (415) 398-1040
FAX (415) 398-2001

**REPLY TO PLANTAGENET DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR AN ORDER GRANTING LEAVE TO FILE A SECOND AMENDED COMPLAINT**
-8-     Case No. C-7-04755-JW

For instance, the 3,000,000 Francs (3MF) came to moving Defendant PLB Holdings SA's ("PLB") Luxembourg Bank in two parts, 0.5MF in cash and a 2.5MF deposit from Defendant Patrick Raulet, the owner of Defendant Compagnie des Vine du Levant,  PLB Holdings SA then purchased the shares of SCEV for 3MF and gave 0.5MF of these shares to Defendant Olliiver Lemal.  Finally Defendant Compagnie des Vins du Levant (owned by Patrick Raulet) overpaid moving Defendant Plantagenet Partners SA for 80% of the shares of SCEV.  At the same time, the owners of new Defendant Chateau La Lagune, in order to dissimulate the money laundering, issued bogus invoices in Plaintiff John Gidding's name for corresponding amounts, i.e. in 0.5MF and 2.5MF.  Finally, the Enterprise continued functioning as a until the minority owners of Ch. La Lagune (Defendants Jean-Francois and Christophe Rapeneau) re-assumed all 100% of the shares of SCEV.

The Enterprise, in addition to its alleged criminal activities, carries out legitimate activities, such as the manufacture and sale of Champagne or even the legitimate trading of shares in other companies. *Diamonds Plus, Inc. v. Kolber*, 960 F.2d 770 n.5 (8th Cir. Ark. 1992).

The examples cited by the moving parties confirm the Enterprise's coherence and unity of structure and are no way "implausible" given that the Defendants are acting in unison.  Hence the sums of money laundered by the Defendants coincide perfectly with the demands for taxes, as the same corrupted officials who made the tax demands sent their agents to the Gidding home to clean up the evidence

It is sufficient that the Defendant's caused the mails and/or the wires to be used in pursuit of their criminal schemes for such acts to be considered as "predicate acts".  RICO and the mail fraud/wire fraud statutes do not require that the Defendants themselves used

**REPLY TO PLANTAGENET DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR AN ORDER GRANTING LEAVE TO FILE A SECOND AMENDED COMPLAINT**

BIRNBERG & ASSOCIATES
703 MARKET STREET
SUITE 600
SAN FRANCISCO
CA, 94103
TEL (415) 398-1040
FAX (415) 398-2001

the mails and/or that the parties who did use the mails (i.e. the IRS, Embassy officials, etc.) be named as "Defendants".

The Plantagenet Defendants' practice of altering forged documents, post-dating misstatements of material fact, and perjuring themselves in support of their frauds, surpasses the capacity of the terms ordinarily used to necessary to describe "forgery". Defendants SCEV, Compagnie des Vins du Levant, Patrick Raulet, and Jean-Francois Rapeneau, settled out rather than produce an original of any document. As Defendant Derek Anderson employed money launderers to direct his operations, it is not to be expected that any documents describing authentic transactions even exist.

### III.   LEAVE TO AMEND

The Federal Rules of Civil Procedure require that leave to amend should be freely given "when justice so requires." FRCP 15 (a)(2); see *Lone Star Ladies Invest. Club v. Schlotzsky's Inc.* (5th Cir. 2001) 238 F3d 363, 367 [policy favoring leave to amend "a necessary companion to notice pleading and discovery"]. This policy is to be applied with "extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.* (9th Cir. 2003) 316 F3d 1048, 1052; *Moore v. Baker* (11th Cir. 1993) 989 F2d 1129, 1131 ["justifying reasons must be apparent for denial of a motion to amend"].

Here, Plantagenet Defendants cite to several cases in an attempt to support its assertion that amendment should not be granted, because it would be futile. While futility of amendment is a basis upon which a Court may justifiably deny leave to amend (See *Bonin v. Calderon,* 59 F.3d 815, 845 (9th Cir.1995)), **no such futility exists here**. Further, the cases that Defendant cites are clearly distinguishable, are inapposite, and in one particular case is no longer good law.

Plantagenet Defendants cite to several cases in which the Court denied leave to amend for futility of amendment, based on statutory futility, rather than on futility of

BIRNBERG &
ASSOCIATES

703 MARKET STREET
SUITE 600
SAN FRANCISCO
CA, 94103

TEL (415) 398-1040
FAX (415) 398-2001

**REPLY TO PLANTAGENET DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR AN ORDER GRANTING LEAVE TO FILE A SECOND AMENDED COMPLAINT**

1  alleging facts sufficient to state a cause of action. In *First Am. Title Ins. Co. v. United States*, 520 F.3d 1051 (9th Cir. Wash. 2008), the court denied a title insurers' proposed amendment of their complaint to include a previous property owner as a plaintiff in an action against the United States, seeking to recover, among other things, a federal tax overpayment by a deceased individual. Rather than denying leave to amend because of the inability to state a claim upon which relief may be granted (based on the facts pled in the complaint), the court actually denied the amendment because the tax code only allows a refund to be made to the person who actually made the overpayment. Therefore, since the previous owner was not the one who made the overpayment, she could not collect the refund, and amending to add her as a new party would have been futile.

Here, there is no such statutory limitation (beyond the necessity of sufficiently stating a RICO cause of action upon which relief may be granted) that would render the amendment "futile." *First American* is inapplicable to the case at bar, and fails to support Plantagenet Defendants' assertions.

Plantagenet Defendants cite to *Robertson v. Qadri*, 2008 WL 818529 (N.D.Cal. 2008), in which the court denied Plaintiff leave to file a *fourth amended complaint*, in part because the Plaintiff presented no new facts but only new theories, and provided no satisfactory explanation for his failure to fully develop his contentions originally. *Id*, citing *Bonin,* 59 F.3d at 845. Here, Plaintiffs have only moved for leave to amend *once before*, rather than *three previous times* as in *Robertson.* Further, in *Robertson*, the Plaintiff did not present new facts, but only new theories with no explanation for its failure to develop theses contentions in the first complaint.

Here, Plaintiff alleges a myriad of newly-discovered and supplemental facts to support the predicate acts in the RICO causes of action. Additionally, Plaintiffs fully explained in their motion for leave to amend the reason for their failure to fully develop these contentions originally. Namely, Plaintiffs' former counsel apparently drafted the FAC in a simplistic manner that, while sufficient to state all causes of action, nonetheless

BIRNBERG & ASSOCIATES
703 MARKET STREET
SUITE 600
SAN FRANCISCO
CA, 94103
TEL (415) 398-1040
FAX (415) 398-2001

**REPLY TO PLANTAGENET DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR AN ORDER GRANTING LEAVE TO FILE A SECOND AMENDED COMPLAINT**

failed to allege facts that Plaintiffs deem important to this case. In addition, Plaintiffs' February 2008 cooperation with the French government apprised Plaintiffs of additional facts relating to Defendants' schemes to launder money, to fund the businesses used in the laundering, and to frame Plaintiffs. Further, the allegations of other facts consistent with the challenged pleading, if necessary, can cure any deficiencies in the pleadings here, in contrast to *Robertson*. *Robertson v. Qadri*, 2008 WL 818529 at 1. The case at bar is clearly distinguishable from *Robertson*, and *Robertson* fails to support Plantagenet Defendants' contentions.

Defendant further relies on *Baker v. Pacific Far E. Lines, Inc.*, 451 F. Supp. 84, 89 (N.D. Cal. 1978), which is no longer good law, and even if it was, it would be inapplicable. In 1978, the Baker court denied a longshoreman's motion to amend his Longshoremen's and Harbor Workers' Compensation Act ("LHWCA") complaint against his employer, to include negligence against his employer (who was also the owner of the vessel upon which the longshoreman was injured). See 33 U.S.C. § 901 *et seq.* At that time, the LHWCA disallowed a longshoreman from bringing a separate negligence cause of action against an employer, because the LHWCA provided the exclusive remedy for an injury of a "maritime worker"[2]. Again, this was a statutory limitation that rendered the addition of a negligence cause of action futile. Here, there is no such statutory limitation, as discussed in more detail in *First American* above.

Plantagenet Defendants' reliance on *Baker* is further misplaced, because *Baker* was over-ruled **20 years ago**. The 1984 amendments to the LHWCA added 33 U.S.C. §905(b) which allowed negligence actions against a shipowner who was also the stevedore employer. At the time *Baker* was brought, such negligence actions in tandem with LHWCA actions were not allowed by statue. This was therefore a good reason to not allow an amendment and grounds for futility of amendment, because the exclusive remedy at that

---

[2] See 33 U.S.C. § 902- The term "employee" means any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harbor-worker including a ship repairman, shipbuilder, and ship-breaker.

**REPLY TO PLANTAGENET DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR AN ORDER GRANTING LEAVE TO FILE A SECOND AMENDED COMPLAINT**

-12-                                                                                         Case No. C-7-04755-JW

BIRNBERG & ASSOCIATES
703 MARKET STREET
SUITE 600
SAN FRANCISCO
CA, 94103
TEL (415) 398-1040
FAX (415) 398-2001

time for a longshoreman who was injured aboard a ship after the 1972 amendments was only to claim benefits under worker's compensation. The new 1984 amendments, while removing tort exposure to shipowner employers of ship builders, ship repairers and shipbreakers, (33 U.S.C. § 904(b)) allowed longshoremen to bring a separate tort action (in negligence under 33 U.S.C. § 905(b)) against a Longshore employer (a stevedore) Now, the employer wears two hats, one as shipowner and the other as employer of longshore workers, so they can be liable under the LHWCA, and at the same time can be sued for negligence. See *Gravatt v. City of New York*, 2000 AMC 2705 (226 F. 3d 108(2nd Cir. 2000)). Therefore, not only was the case inapplicable to the case at bar back in 1978, but after the 1984 amendments, *Baker* is no longer good law.

Though Defendant cites to *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393 (9th Cir. Cal. 1986), the Ninth Circuit actually found that the **district court abused its discretion by dismissing plaintiff's RICO counts** with prejudice, where defendants had not filed a responsive pleading and the district court did not determine that the allegation of other facts could not possibly cure the deficiencies. Again, Plantagenet Defendants' reliance on *Schreiber* is misplaced, and is completely inapposite.

Finally, Defendants' reliance on *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955 (U.S. 2007), *Acro-Tech, Inc. v. Robert Jackson Family Trust*, 84 Fed. Appx. 747 (9th Cir. Or. 2003), and most importantly, the recent Seventh Circuit decision of *Limestone Development Corp. v. Village of Lemont*, 520 F.3d 797 (7th Cir. Ill. 2008) is misplaced, and the decisions of those courts are inapposite and not controlling here. Relying heavily on *Twombly* (though pointing out that *Twombly* should not be "overread"[3]), the Court in Limestone dismissed a property developer's RICO suit against a village, various village officials, and adjoining landowners, for failure to state a claim. The alleged Enterprise in *Limestone* did not have a structure of any kind, and nowhere in the complaint was there a reference to a system of governance, an administrative hierarchy, or any unity of purpose. RICO requires

---

[3] *Limestone Development Corp. v. Village of Lemont*, 520 F.3d at 803.
**REPLY TO PLANTAGENET DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR AN ORDER GRANTING LEAVE TO FILE A SECOND AMENDED COMPLAINT**

-13-                                                                 Case No. C-7-04755-JW

BIRNBERG & ASSOCIATES
703 MARKET STREET
SUITE 600
SAN FRANCISCO
CA, 94103
TEL (415) 398-1040
FAX (415) 398-2001

proof of an ongoing structure of persons associated through time, joined in purpose, and organized in a manner amendable to hierarchical or consensual decisions making. *Limestone Development Corp. v. Village of Lemont*, 520 F. 3d at 805. The various associates must as a continuing unit. *Id*. The court dismissed the RICO claim in *Limestone*, because the complaint "contain[ed] no hint of structure," and there were no structural features. Plaintiff there had only alleged a series of specific acts of fraud by several defendants against then. There was no enterprise and no structure.

Quoting *Twombly*, the *Limestone* court stated that a complaint must always allege enough facts to state a claim to relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly, supra,* 127 S.Ct. at 1974. How many facts are enough will depend on the type of case. Id. In a complex antitrust or RICO case a fuller set of factual allegations than found in the sample complaints in the civil rules' Appendix of Forms may be necessary to show that the plaintiff's claim is not "largely groundless." Id., quoting <u>Phillips v. County of Allegheny,</u> <u>515 F.3d 224, 231-32 (3d Cir.2008)</u>

The present SAC alleges this "fuller set of facts" that the *Limestone* court found lacking in that case.  Here, the defendants have developed a structural scheme that involves money laundering for their benefit. It is a close association of parties. Their daily money laundering activities are not directed at Plaintiffs, though Plaintiffs happened to be one small spoke in the larger wheel of an independent goal- to launder money. The Plantagenet Defendants had a larger enterprise for their own purposes of selling and transferring assets so that there would be no taxes and the origin of initial funds would be concealed. The latter is the "Enterprise" which the Defendants seem to ignore, and which was distinctly lacking in the *Limestone* case. In this larger scheme, Plaintiffs were caught up into it in one small action of this Enterprise and were damaged thereby. The SAC, in contrast to *Limestone*, alleges that the "Enterprise" functions as a continuous unit that laundered money over a period of minimally seven years, which activity required the active participation of all the members of the Enterprise. Further, the money laundering was the

BIRNBERG & ASSOCIATES

703 MARKET STREET
SUITE 600
SAN FRANCISCO
CA, 94103

TEL (415) 398-1040
FAX (415) 398-2001

**REPLY TO PLANTAGENET DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR AN ORDER GRANTING LEAVE TO FILE A SECOND AMENDED COMPLAINT**

1  principal focus of the Enterprise, and Plantagenet Defendants provided the hub and the
2  major spokes of the conspiracy. The damage to the Plaintiffs was a logical consequence of
3  the Plantagenet Defendants' need to dissimulate their illegal activity.
4      It follows that Defendants' reliance on *Acro-Tech* is similarly misplaced. As in
5  Limestone, the Ninth Circuit in *Acro-Tech* upheld the district court's dismissal of and denial
6  of a motion to amend that plaintiff's RICO cause of action, for failure to adequately plead
7  "enterprise." *Acro-Tech, Inc. v. Robert Jackson Family Trust*, 84 Fed. Appx. at 747. As
8  described above, Plaintiffs in the present case have more than adequately pled Enterprise,
9  such that *Acro* is distinguishable.

10  **IV. CONCLUSION**

11
12      Plantagenet Defendants attempt to distract this Court from the complex scheme of
13  predicate acts that form a RICO cause of action in the SAC, by citing to inapplicable cases,
14  and to a case that is no longer good law. The SAC is a complete document in every sense of
15  the word, sufficiently pleads a RICO cause of action, and specifically pleads "Enterprise," in
16  contrast to the complaints that were dismissed by the *Limestone* and *Acro-Tech* courts.
17  Plaintiffs request that this Court grant leave to file a second amended complaint.

18
19                                     BIRNBERG & ASSOCIATES

20  Dated: 16 May 2008                          By: /s/ Cory A. Birnberg
21                                                      Cory A. Birnberg
                                                    Attorneys for Plaintiffs

BIRNBERG & ASSOCIATES
703 MARKET STREET
SUITE 600
SAN FRANCISCO
CA, 94103
TEL (415) 398-1040
FAX (415) 398-2001

**REPLY TO PLANTAGENET DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR AN ORDER GRANTING LEAVE TO FILE A SECOND AMENDED COMPLAINT**
                                                                             -15-                                       Case No. C-7-04755-JW