Pictet - Gildong
Conclusions n°2
7 septembre 2005

Δ°20

9601

# MEMORIAL
### Journal Officiel
### du Grand-Duché de
### Luxembourg



# MEMORIAL
### Amtsblatt
### des Großherzogtums
### Luxemburg

## RECUEIL DES SOCIETES ET ASSOCIATIONS

Le présent recueil contient les publications prévues par la loi modifiée du 10 août 1915 concernant les sociétés commerciales et par la loi modifiée du 21 avril 1928 sur les associations et les fondations sans but lucratif.

| C — N° 201 | 24 mars 1999 |
|---|---|

## SOMMAIRE

Alron S.A., Luxembourg . . . . . . . . . . . . . . page 9642
Annibal Holding S.A., Luxembourg . . . . . . . 9640
Aupair, A.s.b.l., Aizingen . . . . . . . . . . . . . . 9636
Auto World International S.A., Luxembourg . 9618
BHF-Bank International AG, Luxembourg . . . 9641
Bouquet, S.à r.l., Luxembourg . . . . . . . . . . 9641
Brugama S.A., Luxembourg . . . . . . . . . . . . 9643
Chippendale Holding S.A., Luxembourg . . . . 9601
Compagnie Luxembourgeoise de Matériaux S.A.,
  Luxembourg . . . . . . . . . . . . . . . . . . . . . 9644
D.C.I.-D.C. International S.A., Luxembourg . . 9642
Dela-EuroStocks, Fonds Commun de Placement . 9612
Dyspel, A.s.b.l., Schuttrange . . . . . . . . . . . 9638
Eastern and Financial Trust Company S.A., Luxem-
  bourg . . . . . . . . . . . . . . . . . . . . . . . . . . . 9644
Ely International S.A., Luxembourg . . . . . . . 9643
Hydra Investissements S.A., Luxembourg . . . 9642
Interspar Verwaltungsgesellschaft S.A., Senninger-
  berg . . . . . . . . . . . . . . . . . . . . . . . . . . . 9612
Investhold S.A., Strassen . . . . . . . . . . . . . 9644
Investissements Multisectoriels Européens S.A., Lu-
  xembourg . . . . . . . . . . . . . . . . . . . . . . . 9644
(Jean) Lamesch et Cie, S.à r.l., Steinsel . . . 9602
Luxband, Sicav, Luxembourg . . . . . . . . . . . 9647
Luxcash, Sicav, Luxembourg . . . . . . . . . . . 9646
Lux-Top 50, Sicav, Luxembourg . . . . . . . . . 9647
Lysidor S.A., Luxembourg . . . . . . . . . . . . . 9648
Masimera Holding S.A., Luxembourg . . . . . . 9646
Paraiso Holding S.A., Luxembourg . . . . . . . 9646
Pierdal S.A., Steinfort . . . . . . . . . . . . . . . 9633
PLB Holdings S.A., Luxembourg . . . . . . . . . 9618
Positron S.A., Luxembourg . . . . . . . . . . . . 9614
Prorenta, Sicav, Luxembourg . . . . . . . . . . . 9645
R-CD, R-Control Désinfections S.A., Luxembourg . 9626
RP Holdings S.A., Luxembourg . . . . . . . . . . 9624
Sandino S.A., Luxembourg . . . . . . . . . . . . . 9643
SBT Star Bulk & Tankers AG, Luxembourg . . 9629
Setas International S.A., Luxembourg . . . . . . 9648
SG Privinvest Active, Sicav, Luxembourg . . . 9602
SGZ-Bank International S.A., Luxemburg . . . 9612
Sniper Holding S.A., Luxembourg . . . . . . . . 9622
Sovereign Financial & Design Conception S.A.
  Holding, Luxembourg . . . . . . . . . . . . . . . 9645
US Money Market Fund, Fonds Commun de Place-
  ment . . . . . . . . . . . . . . . . . . . . . . . . . . . 9611
Yabauchan International S.C.A., Luxembourg . 9645
Yidinvest S.A., Luxembourg . . . . . . . . . . . . 9642

Exhibit C Incorporation of PLB

**PLB HOLDINGS S.A., Société Anonyme.**
Registered office: L-1840 Luxembourg, 4, boulevard Joseph II.

—

STATUTES

In the year one thousand nine hundred and ninety-nine, on the seventh day of January.
Before Us, Maître Jean-Joseph Wagner, notary, residing in Sanem (Grand Duchy of Luxembourg).

There appeared:

1.- The company PLANTAGENET CAPITAL FUND LP. (CAYMAN), with registered office in Ugland House, P.O. Box 309, Grand Cayman, Cayman Islands, British West Indies,

duly represented by Mr Christophe Blondeau, private employee, residing in Petit-Nobressart (Luxembourg), by virtue of a proxy dated December 29, 1998.

2.- The company PLANTAGENET CAPITAL FUND II LP. (CAYMAN), with registered office in Ugland House, P.O. Box 309, Grand Cayman, Cayman Islands, British West Indies,

duly represented by Mr Christophe Blondeau, prenamed, by virtue of a proxy dated December 29, 1998.

3.- The company PLANTAGENET CAPITAL AMERICA LLC (DELAWARE), with registered office in 15 East North Street, Dover Kent County, Delaware 19901 (USA),

duly represented by Mr Christophe Blondeau, prenamed, by virtue of a proxy dated December 29, 1998.

The prenamed proxies, after having been signed ne varietur by the appearing person and the notary executing remain annexed to the present deed for the purpose of registration.

Such appearing person, acting in his hereabove stated capacities, has drawn up the following articles of a joint stock company which the prenamed parties intend to organize among themselves.

**Name - Registered Office - Duration - Object - Capital**

Art. 1. Between the above-mentioned persons and all those that might become owners of the shares created hereafter, a joint stock company is herewith formed under the name of PLB HOLDINGS S.A.

Art. 2. The registered office is in Luxembourg City.

The company may establish branches, subsidiaries, agencies or administrative offices in the Grand Duchy of Luxembourg as well as in foreign countries by a simple decision of the board of directors.

Without any prejudice of the general rules of law governing the termination of contracts, in case the registered office of the company has been determined by contract with third parties, the registered offices may be transferred to any other place within the municipality of the registered office, by a simple decision of the board of directors. The registered office may be transferred to any other municipality of the Grand Duchy of Luxembourg by a decision of the shareholders' meeting.

If extraordinary events of a political, economic or social character, likely to impair normal activity at the registered office or easy communication between that office and foreign countries shall occur, or shall be imminent, the registered office may be provisionally transferred abroad until the complete cessation of these abnormal circumstances. Such temporary measure shall, however, have no effect on the nationality of the company which, notwithstanding the provisional transfer of its registered office, shall remain a Luxembourg company.

9617

One of the executive organs of the company, which has powers to commit the company for acts of daily management, shall make this declaration of transfer of the registered office and inform third parties.

Art. 3. The company is established for an unlimited period.

Art. 4. The purposes for which the company is formed are all transactions pertaining directly or indirectly to the taking of participating interests in any enterprises in whatever form, as well as the administration, the management, the control and the development of such participating interests.

The company may particularly use its funds for the setting-up, the management, the development and the disposal of a portfolio consisting of any securities and patents of whatever origin, participate in the creation, the development and the control of any enterprise, acquire by way of contribution, subscription, underwriting or by option to purchase and any other way whatever, any type of securities and patents, realize them by way of sale, transfer, exchange or otherwise, have developed these securities and patents, grant to the companies in which it has participating interests any support, loans, advances or guarantees.

In general, the company may take any measure to safeguard its rights and make any transactions whatsoever, which are directly or indirectly connected with its purposes and which are liable to promote their development or extension.

Art. 5. The subscribed capital of the company is fixed at four hundred and fifty thousand (EUR 450,000.-), divided into three thousand (3,000) shares without a par value.

The shares are in registered or bearer form, at the option of the shareholders, subject to the restriction foreseen by law.

The company may, to the extent and under the terms permitted by law, redeem its own shares.

For the period foreseen herebelow, the authorized capital is fixed at eight hundred thousand EURO (EUR 800,000.-) to be divided into shares without a par value.

The authorized and the subscribed capital of the company may be increased or reduced by a decision of the general meeting of shareholders voting with the same quorum as for the amendment of the articles of incorporation.

Furthermore, the board of directors is authorized, during a period of five years ending on the January, 2004, to increase in one or several times the subscribed capital, within the limits of the authorized capital. Such increased amount of capital may be subscribed for and issued in the form of shares with or without an issue premium, to be paid up in cash, by contribution in kind, by compensation with uncontested, current and immediately exercisable claims against the company, or even by incorporation of profits brought forward, of available reserves or issue premiums, or by conversion of bonds in shares as mentioned below.

The board of directors is especially authorized to proceed to such issues without reserving to the then existing shareholders a preferential right to subscribe to the shares to be issued.

The board of directors may delegate to any duly authorized director or officer of the company, or to any other duly authorized person, the duties of accepting subscriptions and receiving payment for shares representing part or all of such increased amounts of capital.

After each increase of the subscribed capital performed in the legally required form by the board of directors, the present article is, as a consequence, to be adjusted to this amendment.

Moreover, the board of directors is authorized to issue ordinary or convertible bonds, or bonds with warrants, in bearer or other form, in any denomination and payable in any currency or currencies. It is understood that any issue of convertible bonds or bonds with warrants can only be made under the legal provisions regarding the authorized capital, within the limits of the authorized capital as specified hereabove and specially under the provisions of art. 32-4 of the company law.

The board of directors shall fix the nature, price, rate of interest, conditions of issue and repayment and all other terms and conditions thereof.

A register of registered bonds will be kept at the registered office of the company.

### Board of Directors and Statutory Auditors

Art. 6. The company is administered by a board of not less than three members, shareholders or not, who are elected for a term which may not exceed six years by the general meeting of shareholders and who can be dismissed at any time by the general meeting.

If the post of a director elected by the general meeting becomes vacant, the remaining directors thus elected, may provisionally fill the vacancy. In this case, the next general meeting will proceed to the final election.

Art. 7. The board of directors chooses among its members a chairman. If the chairman is unable to be present, his place will be taken by one of the directors present at the meeting designated to that effect by the board.

The meetings of the board of directors are convened by the chairman or by any two directors.

The board can only validly debate and take decisions if the majority of its members are present or represented, proxies between directors being permitted with the restriction that a director can only represent one of his colleagues.

The directors may cast their vote on the points of the agenda by letter, telegram, telex or telefax, confirmed by letter.

Written resolutions approved and signed by all directors shall have the same effect as resolutions voted at the directors' meetings.

Art. 8. Decisions of the board are taken by an absolute majority of the votes cast.

Art. 9. The minutes of the meetings of the board of directors shall be signed by all the directors having assisted at the debates.

Copies or extracts shall be certified true by one director or by a proxy.

Art. 10. The board of directors is vested with the broadest powers to perform all acts of administration and disposition in the company's interest. All powers not expressly reserved to the general shareholders' meeting by the law of

9618

August 10th, 1915, as subsequently modified, or by the present articles of incorporation of the company, fall within the competence of the board of directors.

**Art. 11.** The board of directors may delegate all or part of its powers concerning the daily management to members of the board or to third persons who need not be shareholders of the company. The delegation to a member of the board is subject to a previous authorization of the general meeting of shareholders.

**Art. 12.** Towards third parties, the company is in all circumstances committed either by the joint signatures of two directors or by the individual signature of the delegate of the board acting within the limits of his powers.

**Art. 13.** The company is supervised by one or several statutory auditors, shareholders or not, who are appointed by the general meeting, which determines their number and their remuneration, and who can be dismissed at any time.

The term of the mandate of the statutory auditor(s) is fixed by the general meeting of shareholders for a period not exceeding six years.

### General meeting

**Art. 14.** The general meeting represents the whole body of shareholders. It has the most extensive powers to carry out or ratify such acts as may concern the corporation. The convening notices are made in the form and delays prescribed by law.

**Art. 15.** The annual general meeting will be held in the municipality of the registered office at the place specified in the convening notice on the second Friday of the month of May at 11.00 a.m.

If such day is a holiday, the general meeting will be held on the next following business day.

**Art. 16.** The directors or the auditor(s) may convene an extraordinary general meeting. It must be convened at the written request of shareholders representing twenty per cent of the company's share capital.

**Art. 17.** Each share entitles to the casting of one vote. The company will recognize only one holder for each share; in case a share is held by more than one person, the company has the right to suspend the exercise of all rights attached to that share until one person has been appointed as sole owner in relation to the company.

### Business Year - Distribution of Profits

**Art. 18.** The business year begins on January 1st and ends on December 31st of each year.

The board of directors draws up the annual accounts according to the legal requirements.

It submits these documents with a report of the company's activities to the statutory auditor(s) at least one month before the statutory general meeting.

**Art. 19.** At least five per cent of the net profit for the financial year have to be allocated to the legal reserve fund. Such contribution will cease to be compulsory when the reserve fund reaches ten per cent of the subscribed capital.

The remaining balance of the net profit is at the disposal of the general meeting.

Advances on dividends may be paid by the board of directors in compliance with the legal requirements.

The general meeting can decide to assign profits and distributable reserves to the amortization of the capital, without reducing the corporate capital.

### Dissolution - Liquidation

**Art. 20.** The company may be dissolved by a decision of the general meeting voting with the same quorum as for the amendment of the articles of incorporation.

Should the company be dissolved, the liquidation will be carried out by one or several liquidators, legal or physical persons, appointed by the general meeting which will specify their powers and remunerations.

### General Dispositions

**Art. 21.** The law of August 10, 1915 on Commercial companies as subsequently amended shall apply insofar as these articles of incorporation do not provide for the contrary.

*Transitory dispositions*

The first financial year begins on the date of incorporation of the company and ends on December 31st, 1999.

The first annual general meeting shall be held in 2000.

The first directors and the first auditor(s) are elected by the extraordinary general shareholders' meeting that shall take place immediately after the incorporation of the company.

By deviation from article 7 of the articles of incorporation, the first chairman of the board of directors is designated by the extraordinary general shareholders' meeting that designates the first board of directors of the company.

*Subscription and Payment*

The three thousand (3,000) shares have been subscribed to as follows:

| | |
|---|---|
| 1.- PLANTAGENET CAPITAL FUND L.P. (CAYMAN), five hundred and sixty-one shares . . . . . . . . . . . | 561 |
| 2.- PLANTAGENET CAPITAL FUND II L.P. (CAYMAN), thousand seven hundred and ninety shares . . . . | 1,790 |
| 3.- PLANTAGENET CAPITAL AMERICA LLC (DELAWARE), six hundred and forty-nine shares . . . . . | 649 |
| Total: three thousand shares . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 3,000 |

The subscribed shares have been entirely paid up in cash, so that the company has now at its disposal the sum of four hundred and fifty thousand EURO (EUR 450,000.-) as was certified to the notary executing this deed.

*Verification*

The notary executing this deed declares that the conditions prescribed in art. 26 of the law on commercial companies of August 10th, 1915 as subsequently amended have been fulfilled and expressly bears witness to their fulfilment.

9619

*Expenses*

The amount of the expenses for which the company is liable as a result of its formation is approximately fixed at three hundred thousand Luxembourg Francs.

*Valuation*

For the purposes of registration, the subscribed corporate capital is valued at LUF 18,152,955.- (eighteen million hundred fifty-two thousand nine hundred fifty-five Luxembourg Francs).

*Extraordinary General Meeting*

The above-named parties, acting in the hereabove stated capacities, representing the whole of the subscribed capital, considering themselves to be duly convened, then held an extraordinary general meeting and unanimously passed the following resolutions:

*First resolution*

The number of directors is fixed at three (3).

The following have been elected as directors, their mandate expiring at the general meeting which will be called to deliberate on the accounts as at December 31st, 2003:
a) Mr C. Derek Anderson, Investment Banker, residing at 20, Kite Hill Lane, Mill Valley, CA 94941 (USA).
b) Mr John J. Zappettini, Investment Banker, residing at 2, Maple Avenue, Atherton California, 94027 (USA).
c) Mr Harold H. Robinson 111, lawyer, residing at 3442, Piner Road Santa Rosa, California, 95401 (USA).
Mr C. Derek Anderson, prenamed, has been elected as chairman of the board of directors by the extraordinary general meeting.

*Second resolution*

The following has been appointed as statutory auditor, its mandate expiring at the general meeting which will be called to deliberate on the accounts as at December 31st, 2003:
The company DELOITTE & TOUCHE, Luxembourg.

*Third resolution*

The company's registered office is located at L-1 840 Luxembourg, 4, boulevard Joseph II.

The undersigned notary who understands and speaks English, states herewith that on request of the above appearing person, the present deed is worded in English followed by a French translation; on the request of the same appearing person and in case of divergences between the English and the French text, the English version will be prevailing. Whereof the present notarial deed was drawn up in Luxembourg, on the day named at the beginning of this document. The document having been read to the appearing person, known to the notary, by his surname, Christian name, civil status and residence, the said person appearing signed together with Us, the notary, the present original deed.

Suit la traduction en langue française du texte qui précède:

L'an mil neuf cent quatre-vingt-dix-neuf, le sept janvier.
Par-devant Maître Jean-Joseph Wagner, notaire de résidence à Sanem (Grand-Duché de Luxembourg).

Ont comparu:

1.- La société PLANTAGENET CAPITAL FUND LP, (CAYMAN), avec siège social à Ugland House, P.O. Box 309, Grand Cayman, Cayman Islands, British West Indies,
ici représentée par Monsieur Christophe Blondeau, employé privé, demeurant à Petit-Nobressart (Luxembourg), spécialement mandaté à cet effet par procuration en date du 29 décembre 1998.
2.- La société PLANTAGENET CAPITAL FUND II LP, (CAYMAN), avec siège social à Ugland House, PC, Box 309, Grand Cayman, Cayman Islands, British West Indies,
ici représentée par Monsieur Christophe Blondeau, prénommé, spécialement mandaté à cet effet par procuration en date du 29 décembre 1998.
3.- La société PLANTAGENET CAPITAL AMERICA LLC (DELAWARE), avec siège social au 15 East North Street, Dover Kent County, Delaware 19901 (USA),
ici représentée par Monsieur Christophe Blondeau, prénommé, spécialement mandaté à cet effet par procuration en date du 29 décembre 1998.

Les prédites procurations, paraphées ne varietur par le comparant et le notaire instrumentant, resteront annexées aux présentes avec lesquelles elles seront soumises à la formalité de l'enregistrement.

Lequel comparant, ès qualités qu'il agit, a arrêté ainsi qu'il suit les statuts d'une société anonyme que les parties prémentionnées vont constituer entre elles.

Dénomination - Siège - Durée - Objet - Capital

Art. 1er. Entre les personnes ci-avant désignées et toutes celles qui deviendraient par la suite propriétaires des actions ci-après créées, il est formé une société anonyme sous la dénomination de PLB HOLDINGS S.A.

Art. 2. Le siège de la société est établi à Luxembourg-Ville. Par simple décision du conseil d'administration, la société pourra établir des filiales, succursales, agences ou sièges administratifs aussi bien dans le Grand-Duché de Luxembourg qu'à l'étranger.

Sans préjudice des règles du droit commun en matière de résiliation contractuelle, au cas où le siège de la société est établi par contrat avec des tiers, le siège de la société pourra être transféré sur simple décision du conseil d'administration à tout autre endroit de la commune du siège. Le siège social pourra être transféré dans toute autre localité du pays par décision de l'assemblée.

9620

Lorsque des événements extraordinaires d'ordre politique, économique ou social, de nature à compromettre l'activité normale au siège social ou la communication aisée de ce siège avec l'étranger, se sont produits ou seront imminents, le siège social pourra être transféré provisoirement à l'étranger jusqu'à cessation complète de ces circonstances anormales, sans que toutefois cette mesure puisse avoir d'effet sur la nationalité de la société, laquelle, nonobstant ce transfert provisoire du siège, restera luxembourgeoise.

Pareille déclaration de transfert du siège social sera faite et portée à la connaissance des tiers par l'un des organes exécutifs de la société ayant qualité de l'engager pour les actes de gestion courante et journalière.

Art. 3.  La société est établie pour une durée illimitée.

Art. 4.  La société a pour objet toutes les opérations se rapportant directement ou indirectement à la prise de participations sous quelque forme que ce soit, dans toute entreprise, ainsi que l'administration, la gestion, le contrôle et le développement de ces participations.

Elle pourra notamment employer ses fonds à la création, à la gestion, à la mise en valeur et à la liquidation d'un portefeuille se composant de tous titres et brevets de toute origine, participer à la création, au développement et au contrôle de toute entreprise, acquérir par voie d'apport, de souscription, de prise ferme ou d'option d'achat et de toute autre manière, tous titres et brevets, les réaliser par voie de vente, de cession, d'échange ou autrement, faire mettre en valeur ces affaires et brevets, accorder aux sociétés auxquelles elle s'intéresse tous concours, prêts, avances ou garanties.

Elle prendra toutes les mesures pour sauvegarder ses droits et fera toutes opérations généralement quelconques, qui se rattachent à son objet ou qui le favorisent.

Art. 5.  Le capital souscrit est fixé à quatre cent cinquante mille EURO (EUR 450.000,-), divisé en trois mille (3.000) actions, sans désignation de valeur nominale.

Les actions sont nominatives ou au porteur au choix de l'actionnaire, sous réserve des restrictions prévues par la loi. La société peut, dans la mesure et aux conditions prescrites par la loi, racheter ses propres actions.

Le capital autorisé est, pendant la durée telle que prévue ci-après, de huit cent mille EURO (EUR 800.000,-) qui sera représenté par des actions sans désignation de valeur nominale.

Le capital autorisé et le capital souscrit de la société peuvent être augmentés ou réduits par décision de l'assemblée générale des actionnaires statuant comme en matière de modification des statuts.

En outre, le conseil d'administration est autorisé, pendant une période de cinq ans prenant fin le janvier 2004, à augmenter en une ou plusieurs fois le capital souscrit à l'intérieur des limites du capital autorisé avec émission d'actions nouvelles. Ces augmentations de capital peuvent être souscrites avec ou sans prime d'émission, à libérer en espèces, en nature ou par compensation avec des créances certaines, liquides et immédiatement exigibles vis-à-vis de la société, ou même par incorporation de bénéfices reportés, de réserves disponibles ou de primes d'émission, ou par conversion d'obligations comme dit ci-après. Le conseil d'administration est spécialement autorisé à procéder à de telles émissions sans réserver aux actionnaires antérieurs un droit préférentiel de souscription des actions à émettre.

Le conseil d'administration peut déléguer tout administrateur, directeur, fondé de pouvoir ou toute autre personne dûment autorisée, pour recueillir les souscriptions et recevoir paiement du prix des actions représentant tout ou partie de cette augmentation de capital.

Chaque fois que le conseil d'administration aura fait constater authentiquement une augmentation du capital souscrit, il fera adapter le présent article.

Le conseil d'administration est encore autorisé à émettre des emprunts obligataires ordinaires, avec bons de souscription ou convertibles, sous forme d'obligations au porteur ou autre, sous quelque dénomination que ce soit et payables en quelque monnaie que ce soit, étant entendu que toute émission d'obligations, avec bons de souscription ou convertibles, ne pourra se faire que dans le cadre des dispositions légales applicables au capital autorisé, dans les limites du capital autorisé ci-dessus spécifié et dans le cadre des dispositions légales, spécialement de l'article 32-4 de la loi sur les sociétés. Le conseil d'administration déterminera la nature, le prix, le taux d'intérêt, les conditions d'émission et de remboursement et toutes autres conditions y ayant trait.

Un registre des obligations nominatives sera tenu au siège social de la société.

## Administration - Surveillance

Art. 6.  La société est administrée par un conseil composé de trois membres au moins, actionnaires ou non, nommés pour un terme qui ne peut excéder six ans par l'assemblée générale des actionnaires et toujours révocables par elle.

En cas de vacance d'une place d'administrateur nommé par l'assemblée générale, les administrateurs restants ainsi nommés ont le droit d'y pourvoir provisoirement. Dans ce cas, l'assemblée générale, lors de la première réunion, procède à l'élection définitive.

Art. 7.  Le conseil d'administration élit parmi ses membres un président. En cas d'empêchement du président, l'administrateur désigné à cet effet par les administrateurs présents, le remplace.

Le conseil d'administration se réunit sur la convocation du président ou sur la demande de deux administrateurs.

Le conseil d'administration ne peut valablement délibérer et statuer que si la majorité de ses membres est présente ou représentée, le mandat entre administrateurs étant admis sans qu'un administrateur ne puisse représenter plus d'un de ses collègues.

Les administrateurs peuvent émettre leur vote sur les questions à l'ordre du jour par lettre, télégramme, télex ou téléfax, ces trois derniers étant à confirmer par écrit.

Une décision prise par écrit, approuvée et signée par tous les administrateurs, produira effet au même titre qu'une décision prise à une réunion du conseil d'administration.

Art. 8.  Toute décision du conseil est prise à la majorité absolue des membres présents ou représentés.

9621

**Art. 9.** Les procès-verbaux des séances du conseil d'administration sont signés par les membres présents aux séances.

Les copies ou extraits seront certifiés conformes par un administrateur ou par un mandataire.

**Art. 10.** Le conseil d'administration est investi des pouvoirs les plus étendus pour faire tous les actes d'administration et de disposition qui rentrent dans l'objet social. Il a dans sa compétence tous les actes qui ne sont pas réservés expressément par la loi et les statuts à l'assemblée générale.

**Art. 11.** Le conseil d'administration pourra déléguer tout ou partie de ses pouvoirs de gestion journalière à des administrateurs ou à des tierces personnes qui ne doivent pas nécessairement être actionnaires de la société. La délégation à un administrateur est subordonnée à l'autorisation préalable de l'assemblée générale.

**Art. 12.** Vis-à-vis des tiers, la société est engagée en toutes circonstances par les signatures conjointes de deux administrateurs ou par la signature individuelle d'un délégué du conseil dans les limites de ses pouvoirs.

**Art. 13.** La société est surveillée par un ou plusieurs commissaires, actionnaires ou non, nommés par l'assemblée générale qui fixe leur nombre et leur rémunération.

La durée du mandat de commissaire est fixée par l'assemblée générale. Elle ne pourra cependant dépasser six années.

### Assemblée générale

**Art. 14.** L'assemblée générale réunit tous les actionnaires. Elle a les pouvoirs les plus étendus pour décider des affaires sociales. Les convocations se font dans les formes et délais prévus par la loi.

**Art. 15.** L'assemblée générale annuelle se réunit dans la commune du siège social, à l'endroit indiqué dans la convocation, le second vendredi du mois de mai à 11.00 heures.

Si la date de l'assemblée tombe un jour férié, elle se réunit le premier jour ouvrable qui suit.

**Art. 16.** Une assemblée générale extraordinaire peut être convoquée par le conseil d'administration ou par le(s) commissaire(s). Elle doit être convoquée sur la demande écrite d'actionnaires représentant le cinquième du capital social.

**Art. 17.** Chaque action donne droit à une voix.

La société ne reconnaît qu'un propriétaire par action. Si une action de la société est détenue par plusieurs propriétaires en propriété indivise, la société aura le droit de suspendre l'exercice de tous les droits y attachés jusqu'à ce qu'une seule personne ait été désignée comme étant à son égard propriétaire.

### Année sociale - Répartition des bénéfices

**Art. 18.** L'année sociale commence le premier janvier et finit le trente et un décembre de chaque année.

Le conseil d'administration établit les comptes annuels tels que prévus par la loi.

Il remet les pièces avec un rapport sur les activités de la société un mois au moins avant l'assemblée générale ordinaire au(x) commissaire(s).

**Art. 19.** Sur le bénéfice net de l'exercice, il est prélevé cinq pour cent au moins pour la formation du fonds de réserve légale; ce prélèvement cesse d'être obligatoire lorsque la réserve aura atteint dix pour cent du capital social.

Le solde est à la disposition de l'assemblée générale. Le conseil d'administration pourra verser des acomptes sur dividendes sous l'observation des règles y relatives.

L'assemblée générale peut décider que les bénéfices et réserves distribuables seront affectés à l'amortissement du capital sans que le capital exprimé soit réduit.

### Dissolution - Liquidation

**Art. 20.** La société peut être dissoute par décision de l'assemblée générale, statuant suivant les modalités prévues pour les modifications des statuts.

Lors de la dissolution de la société, la liquidation s'effectuera par les soins d'un ou de plusieurs liquidateurs, personnes physiques ou morales, nommés par l'assemblée générale qui détermine leurs pouvoirs.

### Disposition générale

**Art. 21.** La loi du 10 août 1915 et ses modifications ultérieures trouveront leur application partout où il n'y a pas été dérogé par les présents statuts.

*Dispositions transitoires*

Le premier exercice social commence le jour de la constitution de la société et se termine le 31 décembre 1999.

La première assemblée générale annuelle se tiendra en 2000. Les premiers administrateurs et le(s) premier(s) commissaires(s) sont élus par l'assemblée générale extraordinaire des actionnaires suivant immédiatement la constitution de la société.

Par dérogation à l'article 7 des statuts, le premier président du conseil d'administration est désigné par l'assemblée générale extraordinaire désignant le premier conseil d'administration de la société.

*Souscription et paiement*

Les trois mille (3.000) actions ont été souscrites comme suit par:

| | |
|---|---|
| 1.- PLANTAGENET CAPITAL FUND L.P. (CAYMAN), cinq cent soixante et une actions ........... | 561 |
| 2.- PLANTAGENET CAPITAL FUND II L.P. (CAYMAN), mille sept cent quatre-vingt-dix actions ....... | 1.790 |
| 3.- PLANTAGENET CAPITAL AMERICA LLC (DELAWARE), six cent quarante-neuf actions ........ | 649 |
| Total trois mille actions ................................................. | 3.000 |

Les actions ont été intégralement libérées par des versements en espèces, de sorte que la somme de quatre cent cinquante mille EURO (EUR 450.000,-) se trouve dès à présent à la libre disposition de la société.

9622

La preuve de tous ces paiements a été donnée au notaire soussigné qui le reconnaît expressément.

*Constatation*

Le notaire instrumentant a constaté que les conditions exigées par l'article 26 de la loi du 10 août 1915 sur les sociétés commerciales ont été accomplies.

*Frais*

Les parties ont évalué les frais incombant à la société du chef de sa constitution à environ trois cent mille francs luxembourgeois.

*Evaluation*

Pour les besoins de l'enregistrement, le capital social souscrit est évalué à LUF 18.152.955,- (dix-huit millions cent cinquante-deux mille neuf cent cinquante-cinq francs luxembourgeois).

*Assemblée générale extraordinaire*

Et à l'instant les comparants, ès qualités qu'ils agissent, se sont constitués en assemblée générale extraordinaire à laquelle ils se reconnaissent dûment convoqués et après avoir constaté que celle-ci était régulièrement constituée, ils ont à l'unanimité des voix, pris les résolutions suivantes:

*Première résolution*

Le nombre d'administrateurs est fixé à trois (3).

Sont appelés aux fonctions d'administrateurs, leur mandat expirant à l'assemblée générale statuant sur les comptes au 31 décembre 2003.

a) Monsieur C. Derek Anderson, Investment Banker, demeurant 20, Kite Hill Lane, Mill Valley, CA 94941 (USA).
b) Monsieur John J. Zappettini, Investment Banker, demeurant 2, Maple Avenue, Atherton California, 94027 (USA).
c) Monsieur Harold H. Robinson III, avocat, demeurant 3442, Piner Road, Santa Rosa, California, 95401 (USA).

L'assemblée générale extraordinaire nomme Monsieur C. Derek Anderson, prénommé, aux fonctions de président du conseil d'administration.

*Deuxième résolution*

Est appelée aux fonctions de commissaire aux comptes, son mandat expirant à l'assemblée générale statuant sur les comptes au 31 décembre 2003:
La société DELOITTE & TOUCHE, Luxembourg.

*Troisième résolution*

Le siège social de la société est fixé à L-1840 Luxembourg, 4, boulevard Joseph II.

Le notaire soussigné qui comprend et parle l'anglais, constate par les présentes qu'à la requête de la personne comparante les présents statuts sont rédigés en anglais, suivis d'une version française; à la requête de la même personne et en cas de divergences entre le texte anglais et le texte français, la version anglaise fera foi.

Dont acte, passé à Luxembourg, les jour, mois et an qu'en tête des présentes.

Et après lecture, le comparant prémentionné a signé avec le notaire instrumentant le présent acte.

Signé: C. Blondeau, J-J. Wagner.

Enregistré à Esch-sur-Alzette, le 8 janvier 1999, vol. 839, fol. 40, case 5. — Reçu 181,530 francs.

*Le Receveur* (signé): Ries.

Pour expédition conforme, délivrée aux fins de la publication au Mémorial, Recueil des Sociétés et Associations.

Behaux, le 14 janvier 1999.                                                                J-J. Wagner.

(03250/239/421)  Déposé au registre de commerce et des sociétés de Luxembourg, le 19 janvier 1999.