John GIDDING  
1080 Haight Street  
San Francisco, California  
94117 USA

San Francisco, September 22, 2004

PIVOTAL Inc.  
2467 Warm Springs Road  
Glen Ellen, CA  
95442 USA

Prosecutor of the French Republic  
Court of "Grand Instance" of PARIS  
4 boulevard du Palais  
75004 Paris, France

**Ref:** **CRIMINAL COMPLAINT, dated May 12, 2003 brought by**  
COMPAGNIE DES VINS DU LEVANT, a corporation  
SCEV (Societe Champenoise d'Exploitation Vinicole), a corporation

**ACCUSED**: Champagne Albert Le Brun / Gidding Pivotal

Mr. Prosecutor of the Republic,

My name is John Gidding, I am an American citizen and a director of Pivotal Inc., a corporation organized and existing under the laws of the United States. Pivotal and Gidding are the accused persons in the above referenced complaint.

The Plaintiffs have brought charges of Breach of Trust and Fraud in connection with a Judgment obtained in California, for breach of contract, against one of the Plaintiffs, SCEV, the owner of a Champagne brand called "Albert Le Brun".

This ACCUSATION resembles Patrick Raulet's perjurious statements made before the Courts of California, despite his understanding of the "legal sanctions for perjury" [Exhibit 3]. The real purpose of this ACCUSATION is to conceal Mr. Raulet's business dealings in the Cayman Islands, since exposed before the Tax Court of Amiens [Exhibit 4 page 8], and to evade, by fraud, the execution of the California judgment he did not appeal [Exhibit 5, page 5].

**A.** **Mr. Patrick Raulet**

The corporation Compagie des Vins du Levant is the sole stockholder of SCEV, thus Mr. Patrick Raulet is the President of both of the corporate Plaintiffs.

proof: [Exhibit 6]

**B.** **Object of Complaint: Champagne Albert Le Brun / Gidding Pivotal**

Exhibit H Translation of Letter to Prosecutor

    The California Judgment was rendered on December 6, 2001, in favor of myself and Pivotal Inc.  The award was for $1,327,243, plus $209,300 in prejudgment interest, and 10% interest.
proof: [Exhibit 2]

    SCEV was notified of this Judgment, and the Judgment became definitive on March 27, 2002, the date after which SCEV had 60 days to appeal.
proof: [Exhibit 7]

    SCEV did not appeal the Judgment and, as a consequence, the Judgment became executory on May 26, 2002.
proof: [Exhibit 8]

    A demand to render the California Judgment executory in France was filed in the Court of "Grande Instance" of Chalons-en-Champagne on September 5, 2002.
proof: [Exhibit 9]

    This Judgment, after conversion into Euros and the addition of the accumulated interest has a value of 2,121,509€ on September 5, 2002.
proof: [Exhibit 19]

**C.**    **Concerning the accusations of Breach of Trust and Fraud**

    **C/1**    There was nothing "Held in Trust"

The complaint alludes to a "Contract of Guaranty with PLB Holdings, a Luxembourg corporation, owned 100% by Plantagenet Capital Managment LLC, a California corporation".  Mr. Raulet is attempting to put value on his own turpitude.

    Plantagenet Cayman I and II, Cayman Island Corporations, hold 78% of the stock of PLB Holding.  Plantagenet Capital Managment LLC, a California corporation, holds 0% of the stock of PLB Holding.
proof: [Exhibit 11]

    The "Contract of Guaranty", according to its Article 1.15, expired on March 31, 2002.
proof: [Plaintiffs Exhibit 5, article 1.15]

    PLB Holdings was of no further use after March 31, 2000, and was liquidated 8 days later, or 20 months before the Californian Judgment, or 3 years before the present complaint.
proof: [Exhibit 12]

    **C/2**    <u>There was nothing "Taken"</u>

As there was nothing "Held in Trust", nothing could have been "Taken"

> The Covenant to the Contract of Guaranty, falsely dated "March 2, 2000", is a forgery fabricated around May 9, 2001, by successive exchanges of fax. The signatures of Mr. Raulet and Mr. Anderson are not authentic. This ruse cannot validate the expired Contact of Guaranty.

<u>proof</u>: [Exhibit 13, Plaintiff's Exhibits 3 and 6, Anderson no. 19]

    **C/3**    <u>SCEV suffered no prejudice</u>

Mr Raulet did nothing, <u>he was completely inert</u>, for 164 days, between the Judgment (December 6, 2001) and the last day to appeal (May 25, 2002). SCEV suffered no prejudice.

> Mr. Anderson, subsequent to his resignation as a director of SCEV [Exhibit 6], was appointed to represent SCEV in the California litigation. In order to represent SCEV during the settlement negotiations, Anderson presented a "Power of Attorney".

<u>proof</u>: [Exhibit 14]

    **C/4**    <u>Compagnie des Vins du Levant suffered no prejudice</u>

    Despite his Power of Attorney, Mr. Raulet has accused me of fraudulently colluding with an inexistent PLB Holdings, and the person he mandated to represent him, despite his own guaranty, which states: "I agree to indemnify any third party for any claims arising out of their confidence in this Power of Attorney." I am a just such a third party as well as the object of this ACCUSATION, which ACCUSATION stemmed from my confidence in the Power of Attorney. In consequence of which I have been deprived of the Judgment, definitive and executory, the prejudice is entirely mine.

    **C/5**    <u>Without Breach of Contract and Prejudice there is no Fraud.</u>

**D.**    **Concerning the conveyance of SCEV's assets.**

> In November 2001, after 2 years and 5 months of litigation, SCEV voluntarily withdrew from the California litigation, 6 days before the trial.

<u>proof</u>: [Exhibit 15, page 4 & 5, no. 2]

> In May 2002, SCEV did not appeal the judgment.

<u>proof</u>: [Exhibit 8]

> In June 2002, Mr. Raulet conveyed SCEV's assets to Charles de Cazanove.

<u>proof</u>: [Exhibit 16]

In July 2003, the conveyance scheme was stopped by liens ordered by the Court of "Grande Instance" of Chalons-en-Champagne.

proof: [Exhibit 17]

Despite the Courts injunction, Mr. Raulet completed the conveyance, by making two back to back sales of SCEV, one to Charles de Cazanove and the other to the Rapeneau brothers, who then became the owners of SCEV, baptized Charles de Cazanove.

proof: [Exhibit 18]

The artifice by which: (1) SCEV changed name and became SA Charles de Cazanove; and (2) Charles de Cazanove became the property of the Rapeneau brothers; results from the collaboration of Mr. Raulet with Mr. Serge Hauchart and Mr. Philippe Clement esq., the architects of the "back-to-back" sale of SCEV on December 18, 1998.

proof: [Exhibit 19, 20, 21]

In December 1998, Mr. Hauchart and Mr. Clement esq. allowed PLB to purchase SCEV before PLB even existed [see dates on Exhibit 21 and 11]. Mr. Raulet has taken advantage of this artifice to deceive the Reims Court of Appeals about the initial purchaser of SCEV, the Plantagenet Cayman corporations.

proof: [Exhibit 15, page 1]

This artifice is similar to the "back-to-back" sales used by Mr. Hauchart in the "Fondo" affair, and by Mr. Hauchart and Mr Philippe Clement esq. in the "Finaciere Martin - Champagne Bricout" affair.

proof: [Exhibit 22. 23, 24]

E.   **Cayman Islands**

When the Californian litigation revealed the ties between Mr. Raulet and the Cayman Islands, SCEV made a motion to the court (no. 226 on April 12, 2001) to suppress all mention of "Cayman based entities".

proof: [Exhibit 25]

The criminal complaint indicates "that SA Finance du Levant and SCEV, on January 7, 2000, activated their Contract of Guaranty with PLB." The list of exhibits is even more explicit on this subject, but both are inexact.

proof: [Plaintiff's Exhibit 14]

The Plaintiff's PRETEND that their "activation of the Contract of Guaranty" was addressed to PLB, while in reality it was addressed to Mr. Anderson in the USA and did not even mention PLB. In his own letter of January 7, 2002, Mr. Raulet only says "the contract - nothing but the contract - only the contract."

proof: [Exhibit 26]

> **Two EXPERIENCED businessmen, BETWEEN THEMSELVES, cannot pretend to be bound by an <u>expired</u> Contract of Guaranty, and even less by one with <u>forged</u> signatures on a <u>forged</u> Covenant.**

Mr. Raulet's silence on the subject of Plantagenet Cayman, the real stockholder of PLB Holdings, is not explicable. Did Mr. Raulet "activate his Contract of Guaranty in the Cayman Islands?

**F.    Marie-Claude Simon**

In July 2002, Mrs. Seebach esq., alerted by the questions asked by Plantagenet's lawyers on the subject of Champagne Ayala, notified the 19th Brigade of the French Fiscal services, about the theft of documents committed by their agents, presumably corrupted.

proof: [Exhibit 26]

In September 2002, Mrs. Simon esq., my lawyer against SCEV, accepted to represent SA Financier Martin. Mr. Hauchart, the former president of SCEV, was elected as the president of Financier Martin by Mr. Clement esq. and Mr. Pierre Martin.

proof: [Exhibit 28][Plaintiff's Exhibit 5, article 1.16]

In March 2003, Mrs. Simon, who had become the accomplice of Mr. Raulet, did not produce the "Hartford Settlement" in court, despite my demand. Her treason allowed Mr. Raulet to accuse me of "fraudulent collusion" with PLB Holdings before the Court of "Grande Instance" of Chalons-en-Champagne, with the support of a new Exhibit "43 - proof of a criminal complaint, dated March 12, 2003, addressed to the Prosecutor of the Court of 'Grande Instance' of Paris", an, by so doing, completed his fraud.

proof: [Exhibit 29]

Ms Simon esq. after having been paid twice, completed her treason by blocking the SCEV files and pleadings until March 2004, which allowed Mr.Raulet to complete the conveyance of SCEV's assets to the Rapeneau brothers (who were left with important debts after the fraudulent bankruptcy of SA Financier Martin).

proof: [Exhibit 30, 31, 32]

## CONCLUSION

This ACCUSATION is fraudulent and backed up by forgeries and Mr. Raulet's false statements.

This ACCUSATION was made to deceive the Court of "Grande Instance" of Chalons-en-Champagne in their deliberations on the validity of the California Judgment.

Equipped with an Contract of Guaranty that expired on March 31, 2000, with PLB Holdings liquidated on April 8, 2000, and a forged Covenant dated May 9, 2001, what kind of criminal pursuits did Mr. Raulet have in mind (under Articles 113-7 and 113-8 of the Penal Code) on May 12, 2003?

SCEV's demand, before the California Court, to suppress all evidence of Cayman Island Entities, did not work.  The creation of a forged Covenant the next month showed the M. Raulet and M. Anderson could not take the risk of being found in flagrant violation of the money laundering laws.

The ACCUSATION is the fraudulent means by which Mr. Raulet hopes to evade the Californian judgment and to hide his dealings in the Cayman Islands.

I attest to the untruthfulness of the description of the events used by Mr. Raulet to accuse "Gidding Pivotal" of "fraudulent collusion" before the Court of "Grande Instance" ofChalons-en-Champagne, and the prejudice this has caused me.

Mr. Raulet's ACCUSATION, has deprived me of a definitive, executory, and unappealled Judgment valued at 2,121,509€ on September 22, 2004.  Mr. Raulet, according to the terms of his Power of Attorney, should indemnify me.

Concerning the ACCUSATION, I accept the jurisdiction of the French, particularly Paris, court.

I would be grateful, Mr. Prosecutor of the Republic, if you would take my audition as I believe this would be in the best interests of justice.

Thank You,
John Gidding / Pivotal.