United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JOHN GIDDING, an individual and
PIVOTAL, INC., a California corporation,

    Plaintiffs,

v.

DEREK ANDERSON, et. al,

    Defendants.

No. C 07-04755 JSW

**ORDER GRANTING MOTION TO DISMISS FOR IMPROPER SERVICE AND GRANTING MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

    Now before the Court are two motions: (1) Defendants PLB Holdings SA ("PLB") and Plantagenet Partners SA ("PPSA") motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(5) for failure to effectuate sufficient service of process; and (2) Defendants Derek Anderson, Plantagenet Capital Management LLC, Plantagenet Capital America LLC, Plantagenet Capital Fund LP, Plantagenet Capital Fund II LP, PLB, and PPSA's (collectively "the Plantagenet Defendants") motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. These motions are now fully briefed and ripe for decision. Pursuant to Civil Local Rule 7-1(b), the Court finds that the motion to remand which has been noticed for hearing on Friday, August 29, 2009 at 9:00 a.m., is appropriate for decision without oral argument. Accordingly, the hearing date is HEREBY VACATED.

Having considered the parties' papers, the relevant legal authority, and the record in this case, the Court HEREBY GRANTS PLB's and PPSA's motion to dismiss for ineffective service of process and GRANTS the Plantagenet Defendants' motion to dismiss for failure to state a claim upon which relief can be granted.

## BACKGROUND

Plaintiff, John Gidding, a California resident, and his company, Pivotal, Inc., a corporation organized under the laws of California bring suit pursuant to the Racketeer and Corrupt Organizations Act ("RICO"). The second amended complaint ("SAC") contains allegations of various events occurring in three countries over a several year period and against eleven defendants. The SAC raises new allegations under RICO of an international money laundering conspiracy and the French Treasury's cooperation with the Internal Revenue Service to frame Plaintiffs for tax evasion. (SAC ¶¶ 34, 36-38.) Two of the defendants, PLB and PPSA, are foreign entities. (SAC ¶¶ 17-18.) PLB incorporated and operated under the laws of Luxembourg until its liquidation in 2000. (C. Derek Anderson Declaration ("Anderson Decl.") in Support of Defendants' original motion to dismiss filed January 29, 2008, ¶ 4; SAC ¶ 55.) PPSA incorporated and operated under the laws of France until is liquidation in 2006. (Anderson Decl. ¶ 5.) Both PLB and PPSA move to dismiss for insufficient service of process pursuant to Rule 12(b)(5). The remaining defendants move to dismiss for failure to state a claim.

The Court addresses additional facts as necessary in the remainder of this Order.

## ANALYSIS

**A.    PLB's and PPSA's Motion to Dismiss for Improper Service.**

   **1.    Legal Standard.**

Federal courts cannot exercise personal jurisdiction over a defendant without proper service of process. *Omni Capital Int'l, Ltd. v. Wolff & Co.*, 484 U.S. 97, 104 (1987). Insufficient service can result in dismissal under Rule 12(b)(5). To determine whether service of process was proper, courts look to the requirements of Federal Rule of Civil Procedure 4 ("Rule 4"). Rule 4(h) governs service over domestic and foreign corporations.

### 2. Service on PLB and PPSA Was Improper Pursuant to Rule 4(h)(1).

Rule 4(h)(1) requires that a plaintiff serve a domestic or foreign corporation in a judicial district in the United States in one of two ways. *See* Fed. Rule Civ. Proc. 4(h)(1). The first method allows service to be effectuated in the manner prescribed by Rule 4(e)(1) for serving an individual. *Id.* Rule 4(e)(1) effects service of process in accordance with the law of the state in which the district court is located or in which service is effectuated. Under California law, a summons may be served on a corporation by delivering a copy of the summons and the complaint "[t]o the person designated as agent for service of process," or "[t]o the president or other head of the corporation, a vice president, a secretary or assistant secretary, a treasurer or assistant treasurer, a general manager, or a person authorized by the corporation to receive a service of process ...." Cal. Code Civ. Proc. § 416.10. If a corporation cannot be served directly under Section 416.10, substitute service may be effected. Cal. Code Civ. Proc. § 415.20(a) (detailing the process for substitute service of an entity). Plaintiffs must, however, be reasonably diligent in their attempts at direct service before substitute service is permitted. *Evartt v. Sup. Ct. of Stanislaus County*, 89 Cal. App. 3d 795, 799 (1979). The burden is on the plaintiff to show reasonable diligence. *Id.* at 801.

Rule 4(h)(1) also allows service to be effectuated upon a corporation by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other authorized agent for service of process. In the Ninth Circuit, "service of process is not limited solely to officially designated officers, managing agents, or agents appointed by law for the receipt of process." *Direct Mail Specialists v. Eclat Computerized Technologies, Inc.*, 840 F.2d 685, 688 (9th Cir. 1988). Service may be made "'upon a representative so integrated with the organization that he will know what to do with the papers.'" *Id.* (citing *Top Form Mills, Inc. v. Sociedad Nacionale Industria Applicazioni Viscosa*, 428 F. Supp. 1237, 1251 (S.D.N.Y. 1977)). Service on an individual who holds a position that indicates authority within the organization generally is sufficient. *Direct Mail Specialists*, 840 F.2d at 688. The determination of whether an individual holds sufficient authority in an organization is largely factual. *Id.*

3

On the basis of the following facts, the Court determines that Anderson does not have sufficient authority to accept service of process for Defendants PLB and PPSA. Plaintiffs contend that they perfected service in accordance with both methods because, they contend, Mr. Anderson is an active officer, a managing agent or general manager of the PLB entities. (Opp. Br. at 10.) In support of this assertion, Plaintiffs argue that the Plantagenet website and various Securities and Exchange Commission documents demonstrate that Anderson is an agent of the multiple Plantagenet entities. (Opp. Br. at 9; Declaration of John Gidding in Opposition to Defendants' Motion to Dismiss ("Gidding Decl.") ¶¶ 4-5, 7-9, Exs. A, C (Plantagenet Website and Securities and Exchange Commission Information).) In response, the Plantagenet Defendants contend that Anderson was not an officer, managing agent, or agent for service of process for either PLB or PPSA. (Br. at 9.) In support of this assertion, the Plantagenet Defendants argue that while Anderson once had ownership interest in PPSA and PLB, that interest no longer exists, and he has not been associated with either company since their liquidations in 2000 and 2006. (*Id*. at 8; Anderson Decl. ¶¶ 4-5).) Moreover, the Plantagenet Defendants concede that Anderson is an "officer, shareholder, or partner" in Plantagenet Capital Management LLC, Plantagenet Capital America LLC, Plantagenet Capital Fund LP, and Plantagenet Capital Fund LP II, and that he has, therefore, accepted service on their behalf. (Reply Br. at 14.) In light of these facts, the Court concludes that the Plaintiffs improperly served Defendants PPSA and PLB in accordance with Rule 4(h)(1), because at the time of service, Anderson was not an officer, manager, or legally designated process agent for PPSA or PLB, nor so integrated with either corporation as to know what to do with the papers.

### 3. Service on PLB and PPSA Was Improper Pursuant to Rule 4(h)(2).

Rule 4(h)(2) also applies to this action because both PLB and PPSA are foreign corporations. Rule 4(h)(2) provides that a foreign corporation may be served in "a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery ...." Rule 4(f) governs service of an individual in a foreign country and states that service abroad is to be effected "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by

4

the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." Fed. R. Civ. P. 4(f)(1).

The Hague Service Convention is a multi-national treaty that governs service of summons on persons in signatory foreign countries. *Volkswagenwerk Aktiengeschellschaft v. Schlunk, et al.*, 486 U.S. 694, 698 (1988). Requests for service must conform to a model form attached to the Hague Convention. *The Hague Convention*, art. 3, Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. 6638, 658 U.N.T.S. 163. The form, as well as all relevant documents, should be sent "by the judicial officer or authority in the state in which the documents originate to the designated central authority of the country in which the recipient is located." *Cippolla v. Picard Porsche Audi, Inc.*, 496 A.2d 130, 131-132 (R.I. 1985); *see The Hague Convention*, art. 4, Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. 6638, 658 U.N.T.S. 163). "Once a central authority receives a request in the proper form, it must serve the documents by a method prescribed by the internal law of the receiving state or by a method designated by the requester and compatible with that law. The central authority must then provide a certificate of service that conforms to a specific model." *Schlunk*, 486 U.S. at 698; *see The Hague Convention* arts. 5-6, Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. 6638, 658 U.N.T.S. 163. The Hague Convention pre-empts all state and federal service rules in those countries that signed the treaty. *See Schlunk*, 486 U.S. at 699 ("by virtue of the Supremacy Clause, U.S. Const., Art. VI, the Convention pre-empts inconsistent methods of service prescribed by state law in all cases to which it applies"). Fifty-five countries have signed the Hague Convention, including the United States, France, and Luxembourg. *The Hague Convention*, Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. 6638, 658 U.N.T.S. 163.

The Court finds that Plaintiffs failed properly to serve PLB and PPSA in accordance with the Hague Convention. In support of its decision, the Court relies upon *Schlunk*, the controlling case on compliance with the Hague Convention. *See* 286 U.S. at 696. There, the Supreme Court noted in its standard of review that in the majority of lower courts, "the Hague Service Convention does not apply if a foreign national is served properly through its agent in [the United States]." *Id*. at 698. Other lower court decisions throughout the country have taken

5

a stricter approach and held that the Hague Service Convention is the exclusive means of serving a foreign corporation. *See, e.g., Cippolla v. Picard Porsche Audi, Inc.*, 496 A.2d 130, 131-32 (R.I. 1985). Here, Plaintiffs contend that they did not have to adhere to the Convention because they served Anderson, whom they maintain is an active officer of PLB and PPSA, in California. (Opp. Br. at 11.) However, given the Court's determination that Anderson is not a proper agent for service of process for either PLB or PPSA, this service was ineffective. Therefore, the provisions guiding service abroad as outlined by the Hague Convention apply.

Plaintiffs, however, did not follow the Hague Convention and the process it requires. Plaintiff Gidding states that he has traveled to Luxembourg and Paris "a number of times since filing the original complaint in September 2007" in order to serve PLB and PPSA. (Gidding Decl. ¶ 2.) These steps taken by Gidding, however, clearly do not follow the Hague Convention, which specifies that the person seeking to serve an entity in a foreign State must notify the Central Authority in that State. *The Hague Convention* art. 2, Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. 6638, 658 U.N.T.S. 163. The purpose of the designated Central Authority is to locate the entity to be served, and transmit the request to that entity. *Id.*; *see Schlunk*, 486 U.S. at 698 ("[the Hague Convention] was intended to provide a simpler way to serve process abroad, to assure that defendants sued in foreign jurisdictions would receive actual and timely notice of suit"). Further, Gidding acknowledges that "[he has] been unable to discover any means of serving a liquidated Luxembourg company, such as PLB, or a liquidated French company, such as PPSA, other than serving their presumed 'beneficiary owner', [sic] Derek Anderson." (*See* Gidding Decl. ¶ 2.) However, in order to effect proper service upon PLB and PPSA under the Hague Convention, as the Central Authority will "itself serve the document or shall arrange to have it served by an appropriate agency." *The Hague Convention* art. 5 Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. 6638, 658 U.N.T.S. 163. Accordingly, because the Hague Convention ensures that proper service upon foreign defendants will be effected in accordance with Rule 4(h)(2), and because Plaintiffs failed to follow Rule 4(h)(2) and contact the appropriate central authorities in France and Luxembourg, the Court finds that Plaintiffs have

6

1  not properly served either PLB and PPSA. The Court therefore dismisses Defendants PLB and
2  PPSA under Rule 12(b)(5) for insufficient service of process.

**B.    The Plantagenet Defendants' Motion to Dismiss for Failure to State a Claim.**

**1.    Legal Standard.**

Rule 12(b)(6) motions challenge the legal sufficiency of the claims asserted in the complaint. A motion to dismiss should not be granted unless it appears beyond a doubt that a plaintiff can show no set of facts supporting his claim. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Under this liberal standard, motions to dismiss are viewed with disfavor, and are rarely granted. *Hall v. City of Santa Barbara*, 833 F.2d 1270, 1274 (9th Cir. 1986). The complaint is viewed in a light most favorable to the nonmoving party, and all factual allegations therein are taken as true. *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1989). Federal Rule of Civil Procedure 12(b)(6) permits dismissal upon the plaintiff's "failure to state a claim upon which relief can be granted." A district court should grant a motion to dismiss if the plaintiff has "not pled enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1964-65 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (internal citations omitted). "Conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 926 (9th Cir. 1996). "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl.*, 127 S. Ct. at 1965. "On a motion to dismiss, the court accepts the facts alleged in the complaint as true." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). The court construes all allegations of material fact in the light most favorable to the nonmoving party. *Fed'n. of African Amer. Contractors*, 96 F.3d at 1207.

**2.    The Plaintiffs Fail to State a Claim Under RICO.**

The essential elements of a civil RICO violation under 18 U.S.C. § 1962(c) are:

"(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985); *see also Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 620 (9th Cir. 2004). "'Racketeering activity' is defined in 18 U.S.C. § 1961(1)(B) as including any act 'indictable' under certain enumerated federal criminal statutes, including 18 U.S.C. §1341, which makes mail fraud a criminal offense." *Yokohama Tire*, 358 F.3d at 620 (citing *Schreiber Distrib. Co. v. Serv-Well Furniture Co.,* 806 F.2d 1393, 1399 (9th Cir. 1986)). To allege a violation of mail fraud under § 1341, "it is necessary to show that (1) the defendants formed a scheme or artifice to defraud; (2) the defendants used the United States mails or caused a use of the United States mails in furtherance of the scheme; and (3) the defendants did so with the specific intent to deceive or defraud." *Id.* (citing *Schreiber*, 806 F.2d at 1400). To be considered part of the fraud, the use of the mails need not be an essential element of the scheme. *Schmuck v. United States*, 489 U.S. 705, 710 (1989). "It is sufficient for the mailing to be 'incident to an essential part of the scheme' or 'a step in [the] plot.'" *Id.* (citing *Badders v. United States*, 240 U.S. 391, 394 (1916)).

Although plaintiffs need not plead "racketeering injury," they must demonstrate that their business or property was injured *by reason of* the alleged RICO violation. In other words, plaintiffs must allege that their injury was proximately caused by a RICO violation. *Chaset v. Fleer/Skybox Int'l*, 300 F.3d 1083, 1086 (9th Cir. 2002). In order to establish proximate cause, plaintiffs must demonstrate that there exists a "direct relation between the injury asserted and the injurious conduct alleged." *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 266 (1992).

In this case, it is completely unclear to the Court what Plaintiffs purport to allege. Although the second amended complaint is replete with conduct Plaintiffs contend constitutes money laundering, in their opposition to the motion to dismiss, Plaintiffs insist that they do not allege that the Plantagenet Defendants are liable for money laundering or that any money laundering contrary to United States law occurred. As such, the Court cannot determine what Plaintiffs contend is the underlying fraudulent conduct underpinning the RICO claims. The

8

Court cannot discern the underlying fraudulent scheme upon which Plaintiffs purport to sue the Plantagenet Defendants pursuant to RICO.

Further, in order to establish a RICO injury, Plaintiffs must demonstrate that their business or property was injured by reason of the alleged RICO violation. Plaintiffs must allege that their injury was proximately caused by a RICO violation. *Fleer/Skybox*, 300 F.3d at 1086; *see also Holmes*, 503 U.S. at 266 (plaintiffs must demonstrate that there exists a "direct relation between the injury asserted and the injurious conduct alleged."). Plaintiffs attempt to set forth their damages claims as follows:

> The Plaintiffs have alleged that the "Scheme to Fund the Enterprise" was the cause of the loss of their commerce in Champagne Le Brun (SAC ¶¶ 58-101) and that the "Scheme to Frame" was the cause of the loss of their commerce in Champagne Ayala and Montebello. (SAC ¶¶ 102-136).

(Opp. Br. at 17.) From this, the Plantagenet Defendants and the Court discern that Plaintiffs are alleging that some wrongful conduct contained in the complaint caused Plaintiffs to lose (1) the rights to the SCEV distributorship business in Le Brun Champagne and (2) the rights to the Lagune distributorship in Ayala and Montebello Champagnes. All parties apparently agree that the first category of damages was released by the Settlement and Release Agreement that the Plantagenet Defendants signed with Plaintiff in September 2001. (*See* Opp. Br. at 4; Reply Br. at 3.) In this written settlement, Plaintiffs agreed to release the Plantagenet Defendants from "...all claims, demands, damages, debts ... actions and causes of action of any kind and nature whatsoever whether not known or unknown from the suspected or unsuspected which Plaintiffs now have, or at any time heretofore ever had owned or held or may hereafter have, own or hold relating to the Claims [in the Action]." (FAC, Ex. 5.) Because, as a matter of law and the agreement of the parties, this element of damages is not chargeable to the Plantagenet Defendants, the RICO claim against them cannot be premised upon the loss of the Le Brun distributorship business.

The second source of damages Plaintiffs allege they suffered as a result of the Plantagenet Defendants' RICO violations is the loss of the Ayala and Montebello Champagnes distributorship. However, there is simply nothing in the second amended complaint that indicates that the Plantagenet Defendants were in any way involved in the Plaintiffs' loss of the

9

1 distributorship of the Ayala and Montebello Champagnes. Because this element of damages is
2 not chargeable to the Plantagenet Defendants, the RICO claim against them cannot be premised
3 upon the loss of the Ayala and Montebello Champagnes distributorship business. Plaintiffs
4 have failed to demonstrate that their business or property was injured by reason of the alleged
5 RICO violation.

6 Accordingly, the Court finds that Plaintiffs fail to satisfy the requirement to plead
7 proximate cause and therefore the RICO cause of action against the Plantagenet Defendants
8 fails as a matter of law on this basis as well.

9 Because the Court is unable to discern the actual factual premises for the causes of
10 action currently pled in the second amended complaint, it cannot determine as a matter of law
11 that Plaintiffs would be unable to plead facts that might support a cause of action for RICO.
12 Therefore, the Court grants the Plantagenet Defendants' motion to dismiss, with leave to
13 amend. Should Plaintiffs elect to file an amended complaint, they shall do so by no later than
14 September 26, 2008 and any response thereto shall be filed not later than twenty days thereafter.

15 Plaintiffs have twice failed to file a pleading setting forth "a short and plain statement of
16 the claim showing that the pleader is entitled to relief, ... and a demand for judgment for the
17 relief the pleader seeks." Fed. R. Civ. P. 8(a). Rather, Plaintiffs' complaint is disjointed to the
18 point of being incoherent and unintelligible. It is thus unclear to the Court the legal theories on
19 which Plaintiffs seek relief, what relief they are, in fact, seeking, or the underlying factual basis
20 for the suit. In the third amended complaint, if any, Plaintiffs are instructed to set forth the legal
21 bases clearly and succinctly, and to follow strictly the required elements of making out a claim
22 under the Racketeer and Corrupt Organizations Act, if that indeed is the basis for federal court
23 jurisdiction in this matter.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS PLB and PPSA's motion to dismiss for insufficiency of service. In addition, the Court GRANTS the Plantagenet Defendants' motion to dismiss for failure to state a claim upon which relief can be granted, with leave to amend. Should Plaintiffs elect to file a third amended complaint, they shall do so by no later than September 29, 2008 and any response from defendants shall be filed no later than twenty days thereafter.

**IT IS SO ORDERED.**

Dated: August 27, 2008

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE