1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                    FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9

10

11                                                    No. C 07-04755 JSW

JOHN GIDDING, an individual and
12   PIVOTAL, INC., a California corporation,

13            Plaintiffs,                              **ORDER GRANTING MOTION TO
                                                      DISMISS FOR FAILURE TO
14      v.                                            STATE A CLAIM**

15   DEREK ANDERSON, et. al,

16            Defendants.
     _____/

17

18          Now before the Court is the motion to dismiss pursuant to Federal Rule of Civil

19   Procedure 12(b)(6) for failure to state a claim upon which relief can be granted filed by

20   Defendants Derek Anderson, Plantagenet Capital Management LLC, Plantagenet Capital

21   America LLC, Plantagenet Capital Fund LP, Plantagenet Capital Fund LP II (collectively "the

22   Plantagenet Defendants").  Having considered the parties' papers, the relevant legal authority,

23   and the record in this case, the Court HEREBY GRANTS the Plantagenet Defendants' motion

24   to dismiss.

25                                    **BACKGROUND**

26          Plaintiff John Gidding, a California resident, and his company, Pivotal, Inc., a

27   corporation organized under the laws of California, bring suit pursuant to the Racketeer

28   Influenced and Corrupt Organizations Act ("RICO").  The third amended complaint ("TAC")

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

1  contains allegations of various events occurring in three countries over a several year period and

2  against ten defendants, including the Plantagenet Defendants, PLB Holdings SA ("PLB"),

3  Plantagenet Partners SA ("PPSA"), SCEA Chateau Le Lagune ("Lagune"), Serge Hauchart,

4  John Zappettini, and Olivier Lemal.

5      Plaintiffs contend that all defendants collectively violated RICO and conspired to violate

6  RICO by devising and executing several different schemes in which they used the wires and

7  mails of the United States to defraud Plaintiffs.  The TAC alleges a variety of wrongdoings by

8  Defendants including inducing "Gidding to enter into an illegal transaction[,]" causing "a

9  lawyer, charged with defending the Plaintiff's interest, to betray the Plaintiffs[,]" ruining

10 Gidding's agency with the wineries for which he distributed wine,[1] causing "the Prosecutor of

11 the French Republic to press criminal charges against Gidding," and committing "other

12 frauds."[2]  (TAC at ¶¶ 121-22.)  Plaintiffs clarify, in their opposition to the motion to dismiss,

13 that their alleged injuries are predicated upon two underlying fraudulent schemes by

14 Defendants.[3]  First, Plaintiffs claim that Defendants used the wires and mails of the United

15 _____

16     [1] Plaintiffs claim that Defendants' wrongdoing caused Plaintiffs to lose their
distributor contract with SA Societe d'Exploitation Campenoise Vinicole ("SCEV"), a
17 French champagne producer.  This Court has already addressed that claim in its order
dismissing Plaintiffs' second amended complaint for failure to state a claim.  (Order Granting
18 Motion to Dismiss for Improper Service and Granting Motion to Dismiss for Failure to State
a Claim dated Aug. 27, 2008 ("Order") at 9.)  In that order, this Court noted that "[a]ll parties
19 apparently agree that [the damages alleged from the loss of the rights to the SCEV
distributorship business were] released by the Settlement and Release Agreement that the
20 Plantagenet Defendants signed with Plaintiff in September 2001."  (*Id.*) (citations omitted).
Plaintiffs allege that the release "does not apply to the alleged violations of RICO."  (TAC at
21 ¶ 40.)  But Plaintiffs fail to specify what injury, separate from the injury incurred from the
breach of contract that was already litigated and settled in 2001, resulted from this alleged
22 unreleased wrong.

23     [2] Insofar as Plaintiffs allege that Defendants' fraud caused Plaintiffs' lawyer to
"betray the Plaintiffs" and resulted in criminal prosecutions against Plaintiffs by the French
24 government, Plaintiffs have not stated sufficient facts to support these claims under RICO.
Plaintiffs have not alleged sufficient underlying fraudulent acts which employed either the
25 wires or mails of the United States in such a way as to develop the pattern necessary for a
RICO violation.  Further, Plaintiffs fail to specify what injury, separate from the injury
26 incurred from the other claims, resulted from these two wrongs.

27     [3] Plaintiffs' TAC and opposition to the motion to dismiss are replete with allegations
of conduct Plaintiffs contend constitute money laundering.  But Plaintiffs insist that "money
28 laundering did not cause the injury to the Plaintiffs, mail and wire fraud did."  (Opp. Br. at
19.)  Therefore, based on Plaintiffs' representations, the Court finds that money laundering is

1    States to prevent Plaintiffs from recovering a judgment they had won in prior litigation among

2    these same parties.  (Opp. Br. at 2, 6, 11.)  Second, Plaintiffs claim that Defendants used the

3    wires and mails of the United States to evade French tax authorities and subject Plaintiffs to

4    liability for Defendants' unpaid taxes.  (*Id.* at 6, 12.)  Defendants move to dismiss for failure to

5    state a claim.

6        The Court addresses additional facts as necessary in the remainder of this Order.

7                                    **ANALYSIS**

8    **A.    Legal Standard on Motion to Dismiss.**

9        Federal Rule of Civil Procedure 12(b)(6) motions challenge the legal sufficiency of the

10   claims asserted in the complaint.  Rule 12(b)(6) permits dismissal upon the plaintiff's "failure to

11   state a claim upon which relief can be granted."  A district court should grant a motion to dismiss

12   if the plaintiff has not pled "enough facts to state a claim to relief that is plausible on its face."

13   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "While a complaint attacked by a Rule

14   12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to

15   provide the 'grounds' of 'entitlement to relief' requires more than labels and conclusions, and a

16   formulaic recitation of the elements of a cause of action will not do."  *Id.* at 1964-65 (internal

17   quotations and citations omitted).  "Conclusory allegations of law and unwarranted inferences

18   are insufficient to defeat a motion to dismiss for failure to state a claim."  *In re Syntex Corp. Sec.*

19   *Litig.*, 95 F.3d 922, 926 (9th Cir. 1996).  "Factual allegations must be enough to raise a right to

20   relief above the speculative level . . . ."  *Bell Atl. Corp.*, 550 U.S. at 556 (citations omitted).  "On

21   a motion to dismiss, the court accepts the facts alleged in the complaint as true."  *Balistreri v.*

22   *Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988).  The complaint is viewed in a light

23   most favorable to the nonmoving party.  *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1989).

24   **B.    Plaintiffs' Claim that the Plantagenet Defendants' Fraudulent Scheme Wrongfully**
        **Subjected Them to French Tax Liability is Barred by the Statute of Limitations.**

25
        Plaintiffs claim that a number of fraudulent acts perpetrated by Defendants allowed

26   Defendants to avoid paying French taxes by implicating Plaintiffs in a tax evasion scheme.

27

28   not an underlying fraudulent scheme upon which Plaintiffs purport to sue the Plantagenet
     Defendants pursuant to RICO.

United States District Court
For the Northern District of California

(Opp. Br. at 6, 12.)  Although Defendants raise questions about the plausibility of Plaintiffs' facts, for the purposes of a motion to dismiss the Court "accepts the facts alleged in the complaint as true."  *See Balistreri*, 901 F.2d at 699.  Even if the allegations are true, Defendants argue that they are barred by the statute of limitations on RICO claims.

After conducting a thorough analysis of Congress' "legislative intent to pattern RICO's civil enforcement provisions on the Clayton Act[,]" the United States Supreme Court determined that the four-year statute of limitations used for Clayton Act claims should be applied to RICO claims as well.  *Agency Holding Corp. v. Malley-Duff*, 483 U.S. 143, 152 (1987).  But the Court left unanswered the question of when a RICO cause of action accrues.  *See Kleher v. A.O. Smith Corp.*, 521 U.S. 179, 196 (1997) (Scalia, J., concurring).  To fill this gap, the Ninth Circuit has "faithfully followed the 'injury discovery' rule for over a decade."  *Grimmett v. Brown*, 75 F.3d 506, 511 (9th Cir. 1996).  There are two components to the "injury discovery" rule.  "First, the civil RICO limitations period begins to run when a plaintiff knows or should know of the injury that underlies his cause of action."  *Id.* at 510 (citations omitted).  While a plaintiff's actual knowledge of the injury will start the statutory time, a plaintiff's constructive knowledge will as well, if he has "enough information to warrant an investigation that, if reasonably diligent, would have led to discovery of fraud."  *Beneficial Standard Life Ins. v. Madariaga*, 851 F.2d 271, 275 (9th Cir. 1998).  Notably, "[t]he plaintiff need not discover that the injury is part of a 'pattern of racketeering' for the period to begin to run."  *Grimmett*, 75 F.3d at 511 (citation omitted).  "The second part of the 'injury discovery rule' is the 'separate accrual rule,' which provides that a new cause of action accrues for each new and independent injury, even if the RICO violation causing the injury happened more than four years before."  *Id.* (citation omitted).

According to the allegations in the complaint, Plaintiffs were distributors for various champagne producers, including defendant Lagune, a French corporation.  (TAC at ¶¶ 16, 43.)  Sometime in 1998, the owners of Lagune decided to acquire a share in another French champagne producing company, SA Societe d'Exploitation Campenoise Vinicole ("SCEV").  (*Id.* at ¶¶ 21, 46.)  According to Plaintiffs, all parties involved in the acquisition of the new champagne company devised a scheme by which they would purchase SCEV for $3,000,000 but

**United States District Court**
For the Northern District of California

1  avoid paying French taxes.  (*Id.* at ¶ 49.)  In furtherance of this scheme, Plaintiffs allege that

2  Lagune owners issued two sets of tax exempt invoices in Plaintiff Gidding's name to correspond

3  to the purchase amount and mailed them to Plaintiffs on November 15, 1998.  (*Id.* at ¶ 57.)

4  Plaintiffs state that, in either November or December of 1998, they received the first set of

5  forged invoices and rejected them.  (*Id.* at ¶ 58.)  Plaintiffs believed that Lagune was "setting the

6  stage to frame Gidding for evading French laws on such transactions" and Plaintiffs knew that if

7  they were caught, Gidding "would lose his ability to represent French wineries."  (*Id.*)

8  Regardless of whether Plaintiffs actually knew that these forged invoices could sustain a cause of

9  action for fraud under RICO at that date, Plaintiffs did know that invoices were being forged

10  under Gidding's name.  Further, Plaintiffs explain that on December 18, 1998, Lagune owners

11  "met with Gidding and tried to convince Gidding to accept the Lagune invoices by lowering the

12  price and increasing the quantity of the wines, as well as subtracting the taxes from the total."

13  (*Id.* at ¶ 59.)  With these allegations, Gidding acknowledges that he was aware of the Lagune

14  owners' attempts to perpetrate a forgery.  Therefore, by December 1998, Plaintiffs had enough

15  information to investigate further as necessary to establish constructive knowledge of fraud.  *See*

16  *Beneficial Standard Life Ins.*, 851 F.2d at 275.  Having filed this action on September 14, 2007,

17  the statute of limitations has long passed.

18       Plaintiffs argue that later-incurred injuries restarted the statute of limitations under the

19  "separate accrual rule."  (Opp. Br. at 9.)  Plaintiffs allege that on April 15, 1999, the Lagune

20  owners mailed them another set of forged invoices to evade taxes on another transaction.  (TAC

21  at ¶ 72.)  On October 18, 2001, Plaintiffs were notified that both sets of false invoices were the

22  subject of the French Treasury's investigation of Gidding.  (*Id.* at ¶ 98.)  On September 28, 2003

23  and again on December 13, 2004, Plaintiffs were notified by the French Treasury that they were

24  liable for unpaid taxes.  (*Id.* at ¶¶ 29, 31.)  Even assuming that the receipt of the second set of

25  forged invoices provided the "new and independent injury" necessary to restart the statutory time

26  line, the claim is still barred by the four-year statute of limitations.  *See Agency Holding Corp.*,

27  483 U.S. at 152.  Additionally, Plaintiffs' actual investigation and notice of liability by the

28  French Treasury directly stem from the false invoices sent in 1998 and 1999, and cannot provide

**United States District Court**
For the Northern District of California

1  the bases for a new cause of action on their own, as necessary to restart Plaintiffs' actionable

2  time under the "separate accrual rule." *See Grimmett*, 75 F.3d at 510.

3       By April 1999, Plaintiffs knew that Lagune owners had forged documents that implicated

4  Plaintiffs in tax evasion on two separate occasions. (TAC at ¶¶ 58, 72.) Thus, when Plaintiffs'

5  filed in September 2007, the four-year statute of limitations for RICO claims had almost twice

6  run. *See Agency Holding Corp.*, 483 U.S. at 152. For that reason, Plaintiffs' claim on this issue

7  is time-barred.[4]

8  **C.     Plaintiffs Fail to State a Claim Under RICO.[5]**

9       According to the complaint, on July 1, 1999, Plaintiffs sued SCEV and the Plantagenet

10  Defendants in Los Angeles Superior Court for breach of contract, libel, and interference with

11  potential economic advantage. (TAC at ¶ 77.) Plaintiffs settled with the Plantagenet Defendants

12  and received a judgment award against SCEV. (*Id.* at ¶¶ 89-95, 100.) SCEV was later

13  purchased by the financing companies PLB and PPSA. (*Id.* at ¶ 49.) Plaintiffs allege that, using

14  a systematic pattern of fraudulent acts over the wires and mails of the United States, Defendants

15  hid the existence of PPSA, transferred sole liability for the judgment award to PLB, then

16  liquidated PLB which effectively prevented Plaintiffs from recovering their judgment award.

17  (Opp. Br. at 6.) On these facts, Plaintiffs claim that Defendants are civilly liable pursuant to

18  RICO. Defendants argue that Plaintiffs fail to state a claim under RICO because there are

19  insufficient predicate acts of wire and mail fraud alleged, the continuous relationship between

20  the acts is inadequate to establish pattern, and there is only a tenuous link between the conduct of

21

22       [4] For the reasons stated in this section, Plaintiffs' claim that Defendants' wrongdoing
23  cause Plaintiffs to lose their distributor contract with Lagune wineries is also barred by the
     statute of limitations. Lagune terminated Gidding's distributor contract "on or about" March
24  31, 2000. (TAC at ¶ 81.) Gidding's clear termination was "actual knowledge of the injury"
     sufficient to start the statutory time. *See Beneficial Standard Life Ins.*, 851 F.2d at 275.
25  Seven years had elapsed between the accrual of Plaintiffs' injury and the time the original
     complaint was filed—well past the four-year statute of limitations for RICO claims. *See*
26  *Agency Holding Corp.*, 483 U.S. at 152.

27       [5] Plaintiffs fail to allege the requisite substantive elements of a RICO claim under 18
     U.S.C. § 1962(c). Logically, Plaintiffs second claim of conspiracy to commit RICO under
28  18 U.S.C. § 1962(d), which makes it "unlawful for any person to conspire to violate any of
     the provisions of the subsections (a), (b), or (c) of this section," must fail as well. *See Turner
     v. Cook*, 362 F.3d 1219, 1231 n.17 (9th Cir. 2004) (quoting 18 U.S.C. § 1962(d)).

1   Defendants and the injury to Plaintiffs.  Further, Defendants claim that the allegations in the

2   complaint are not specific and particular enough to meet the pleading requirements of Federal

3   Rule of Civil Procedure 9(b).

4   The essential elements of a civil RICO violation under 18 U.S.C. § 1962(c) are: "(1)

5   conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  *Sedima, S.P.R.L.*

6   *v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985); *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 620

7   (9th Cir. 2004).  "'Racketeering activity' is defined in 18 U.S.C. § 1961(1)(B) as including any

8   act 'indictable' under certain enumerated federal criminal statutes, including 18 U.S.C. § 1341,

9   which makes mail fraud a criminal offense, and 18 U.S.C. § 1343, which makes wire fraud a

10  crime."  *Schreiber Distrib. Co. v. Serv-Well Furniture Co.,* 806 F.2d 1393, 1399 (9th Cir. 1986)).

11  Federal Rule of Civil Procedure 9(b) applies to civil RICO fraud cases and requires that,

12  for acts of fraud, "the pleader must state the time, place, and specific content of the false

13  representations as well as the identities of the parties to the misrepresentation."  *Alan Neuman*

14  *Prods., Inc. v. Albright*, 862 F.2d 1388, 1392-93 (9th Cir. 1989) (quoting *Schreiber Distrib. Co.*,

15  806 F.2d at 1401).  However, the particularity requirements of Rule 9(b) must be read in

16  harmony with the requirement to make out a "short and plain" statement of the claim.  Fed. R.

17  Civ. P. 8(a)(2).  Thus, the particularity requirement is satisfied if the complaint "identifies the

18  circumstances constituting fraud so that a defendant can prepare an adequate answer from the

19  allegations."  *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989); *see also*

20  *Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1106 (9th Cir. 2003) ("Rule 9(b) demands that,

21  when averments of fraud are made, the circumstances constituting the alleged fraud be specific

22  enough to give defendants notice of the particular misconduct . . . so that they can defend against

23  the charge and not just deny that they have done anything wrong.") (internal quotation marks and

24  citations omitted).  Accordingly, "[a]verments of fraud must be accompanied by 'the who, what,

25  when, where, and how' of the misconduct charged."  *Vess*, 317 F.3d at 1107 (quoting *Cooper v.*

26  *Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).

27  ///

28  ///

United States District Court

For the Northern District of California

1

**1.      Plaintiffs fail to allege sufficient predicate acts of wire and mail fraud.**

Defendants contend that Plaintiffs fail to allege sufficient predicate acts of wire and mail fraud to establish a pattern and that the allegations are "legally insufficient" within the meaning of Rule 9(b).  (Mot. at 11.)  To allege a violation of mail fraud under section 1341, "it is necessary to show that (1) the defendants formed a scheme or artifice to defraud; (2) the defendants used the United States mails or caused a use of the United States mails in furtherance of the scheme; and (3) the defendants did so with the specific intent to deceive or defraud." *Miller*, 358 F.3d at 620 (citing *Schreiber Distrib. Co.*, 806 F.2d at 1400).  To be considered part of the fraud, the use of the mails need not be an essential element of the scheme.  *Schmuck v. United States*, 489 U.S. 705, 710 (1989).  "It is sufficient for the mailing to be 'incident to an essential part of the scheme' or 'a step in [the] plot.'"  *Id.* (citing *Badders v. United States*, 240 U.S. 391, 394 (1916)).  "Similarly, a wire fraud violation consists of (1) the formation of a scheme or artifice to defraud (2) the use of the United States wires or causing a use of the United States wires in furtherance of the scheme; and (3) specific intent to deceive or defraud." *Schreiber Distrib. Co.*, 806 F.2d at 1400.  To establish specific intent for either mail or wire fraud, the pleader must show "the existence of a scheme which was 'reasonably calculated to deceive persons of ordinary prudence and comprehension . . . .'" *Id.* (citations omitted).

As best as the Court can discern, Plaintiffs recount six different acts of alleged wire and mail fraud that they argue prevented them from collecting the judgment award they had won in the Los Angeles litigation.  First, Plaintiffs allege that

> [b]etween May 5-11, 1999, [defendant Derek] Anderson and [wrongdoer Patrick] Raulet[, both directors of SCEV,] altered a Covenant to the Guaranty of Sale ("Covenant"), by cutting [defendant] PPSA out and pasting [defendant] PLB in. The purpose of this "cut & paste" Covenant was . . . to insulate [defendant] PLB from the potential claims in the [Los Angeles] litigation . . . . Plaintiffs allege that Anderson, the Plantagenet Defendants, and Raulet used the wires in furtherance of a scheme to defraud.

(TAC at ¶ 87.)  Next, Plaintiffs claim that "[o]n or about September 26, 2001, Plantagenet and Raulet altered a Guaranty of Sale" by similarly replacing PPSA for PLB so that PLB would be insulated from any judgment award in the Los Angeles litigation.  (*Id.* at ¶ 96.)  Third, Plaintiffs contend that the partner of the French lawyer Plaintiffs had hired to help them collect the

8

judgment award from the Los Angeles litigation called Plaintiffs and informed them that they should fax over the settlement agreement releasing the Plantagenet Defendants from the prior litigation or "forfeit [their] chance of having the LA Judgment validated." (*Id.*) Fourth, Plaintiffs allege that, "on or before July 23, 2003," director of SCEV, defendant Serge Hauchart, and Plaintiffs' French lawyer, Marie-Claude Simon, called Plaintiffs and asked them to consider settling the litigation over the Los Angeles judgment award. (*Id.* at ¶ 109.) However, Plaintiffs contend, neither Simon nor Hauchart had any intention of settling but rather were "facilitating the transfer of shares of SCEV" to a company of a different name so that Plaintiffs would not be able to collect their judgment. (*Id.*) Fifth, Plaintiffs allege that, on November 25, 2003, Raulet used an altered copy of the settlement agreement releasing the Plantagenet Defendants in the Los Angeles litigation to bring criminal charges against Plaintiffs in France. (*Id.* at ¶ 114.) On this date, Plaintiffs claim that Raulet used "the telephone, emails, faxes and mails" with Anderson and defendant Olivier Lemal furthered the "scheme to defraud." (*Id.*) Lastly, Plaintiffs claim that they were completely prevented from collecting their Los Angeles judgment award on June 28, 2004 when "wrongdoer" Thierry Lombard, director of SCEV, mailed Plaintiffs a letter informing them that SCEV had become a new company that was not responsible for paying for the judgment award. (*Id.* at ¶ 116.)

Plaintiffs generally fail to specify how the wires and mails were used in the scheme to defraud. (*Id.* at ¶¶ 87, 96, 114.) In alleging the first two and the fifth predicate acts, Plaintiffs do not specify what was sent, when it was sent, how it was sent, or to whom it was sent. Also, Plaintiffs do not explain how "insulat[ing] PLB from the potential claims in the [Los Angeles] litigation" would further the alleged scheme to defraud as it was PPSA that Plaintiffs claim Defendants ultimately sought to shield from the judgment award. (*Id.* at ¶¶ 87, 114.) Where Plaintiffs do identify what material was sent, Plaintiffs fail to specify either which parties were allegedly involved or how the material may have furthered the scheme to defraud. (*Id.* at ¶¶ 87, 96, 106-07, 109, 116.) In alleging the third predicate act, Plaintiffs do not explain who their French lawyer's partner is or how the acts the partner allegedly engaged in furthered a scheme to defraud. (*Id.* at ¶¶ 106-07.) Plaintiffs, when alleging the fourth predicate act, fail to specify how

Simon and Hauchart's use of the wires to request a settlement from Plaintiffs contributed to the overall scheme to defraud.  Also, Plaintiffs do not show sufficient evidence of specific intent to defraud because Simon and Hauchart's request does not seem to be "reasonably calculated to deceive persons of ordinary prudence and comprehension," but rather it appears to be a legitimate attempt to resolve the litigation over the judgment award.  *See Schreiber Distrib. Co.*, 806 F.2d at 1400 (citations omitted).  In alleging the sixth predicate act, Plaintiffs fail to explain why they believe Lombard's letter was a fraudulent claim or how it furthered any scheme to defraud.  From the facts alleged, it may be that the new company that absorbed SCEV was *not* actually liable to settle the Plaintiffs' judgment award.

Plaintiffs cite six different acts of wire and mail fraud that they allege were part of the Defendants' scheme to prevent Plaintiffs from collecting the judgment award they had won in previous litigation.  However, none of the six acts pled show "that (1) the defendants formed a scheme or artifice to defraud; (2) the defendants used the United States mails [or wires] or caused a use of the United States mails [or wires] in furtherance of the scheme; and (3) the defendants did so with the specific intent to deceive or defraud" as necessary for a claim of wire or mail fraud.  *See id.*  Further, Plaintiffs fail to plead their claims with the requisite specificity required under Rule 9(b).  In half of the acts alleged, Plaintiffs fail to specify how the wires and mails were used in the scheme to defraud.  (TAC at ¶¶ 87, 96, 114.)  In the other half of the acts alleged, Plaintiffs fail to specify who the parties involved were or how the material may have furthered any alleged scheme to defraud.  (*Id.* at ¶¶ 87, 96, 106-07, 109, 116.)  Therefore, not only do Plaintiffs fail to plead sufficient predicate acts of wire or mail fraud to establish a RICO claim, but Plaintiffs also fail to state any such claims with specificity and particularity as required under Rule 9(b).

### 2.   Plaintiffs fail to allege a continuous relationship to establish a pattern within the meaning of RICO.

Defendants argue that Plaintiffs fail to establish a pattern of racketeering activity, necessary to bring a RICO claim.  As discussed above, the Court has found that Plaintiffs failed to allege sufficient predicate acts of wire and mail fraud to establish a RICO cause of action.  Even assuming that the six alleged acts cited by Plaintiffs were sufficient, these acts would need

United States District Court

For the Northern District of California

1  to be adequately related and have the continuity required to constitute a "pattern of racketeering

2  activity[.]"  *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 232, 238 (1989).  At its most

3  basic, a "pattern . . . requires at least two acts of racketeering activity . . . ."  *Id.* at 232 (quoting

4  18 U.S.C. § 1961(5)).  However, "the statement that a pattern 'requires at least' two predicates

5  implies 'that while two acts are necessary, they may not be sufficient.'"  *H.J. Inc.*, 492 U.S. at

6  237 (quoting *Sedima, S.P.R.L.*, 473 U.S. at 496 n.14).  "A pattern is not formed by sporadic

7  activity" but rather "requires the showing of a relationship between predicates [] and of the threat

8  of continuing activity . . . ."  *H.J. Inc.*, 492 U.S. at 238 (internal quotations and citations

9  omitted).  Predicate acts are related if they have "the same or similar purposes, results,

10  participants, victims, or methods of commission, or otherwise are interrelated by distinguishing

11  characteristics and are not isolated events."  *Id.* at 240 (internal quotations and citations omitted).

12  Continuity, on the other hand, "is both a closed- and open-ended concept, referring either to a

13  closed period of repeated conduct, or to past conduct that by its nature projects into the future

14  with a threat of repetition."  *Id.* at 241.  "A party alleging a RICO violation may demonstrate

15  continuity over a closed period by proving a series of related predicates extending over a

16  substantial period of time."  *Id.* at 242.  But when a RICO action is brought before continuity can

17  be established in that way, "liability depends on whether the *threat* of continuity is

18  demonstrated."  *Id.* (emphasis in original).

19           All of the six alleged acts cited by Plaintiffs involve different actors.  (TAC at ¶¶ 87, 96,

20  106-07, 109, 114, 116.)  Four of these acts did not involve any of the defendants, and one actor

21  was unidentified.  (*Id.*)  Additionally, Plaintiffs allege that the predicate acts used a variety of

22  different mediums.  On two occasions, Plaintiffs suggest that the wires were used to send

23  fraudulent "cut & paste" covenants.  (*Id.* at ¶¶ 87, 96.)  Plaintiffs also claim to have exchanged

24  copies of their settlement agreement with an unknown party by fax.  (*Id.* at ¶¶ 106-07.)  Next,

25  Plaintiffs allege that one defendant made false statements to Plaintiffs over the phone.  (*Id.* at ¶

26  109.)  Plaintiffs then suggest that a non-defendant used "the telephone, emails, faxes and mails"

27  to further the "scheme to defraud."  (*Id.* at ¶ 114.)  Finally, Plaintiffs state that a non-defendant

28  sent a fraudulent letter to Plaintiffs completely preventing them from collecting their judgment

United States District Court

For the Northern District of California

award from the Los Angeles litigation.  (*Id.* ¶ 116.)  The only factor linking the predicate acts as alleged in the complaint is that they all involved Plaintiffs.  Otherwise, these acts appear to be entirely unrelated as they do not have the same participants or methods of commission.  *See H.J. Inc.*, 492 U.S. at 240.  The fact that these predicate acts have different participants and were allegedly perpetrated using different means negates a finding of a relationship between them sufficient to establish a pattern.  *See id.*

Plaintiffs also fail to establish the requisite amount of continuity in the predicate acts. Plaintiffs allege several different acts that extend from 1999, when the first Guaranty of Sale was altered, to 2004, when the fraudulent letter was mailed to Plaintiffs.  But, as already discussed, these acts are not sufficiently related to one another.  Open-continuity can only be proved by "a series of *related* predicates extending over a substantial period of time[.]"  *See id.* at 242 (emphasis added).  Plaintiffs fail to meet this requirement.  Plaintiffs fail to establish closed continuity, as well.  Plaintiffs claim that Defendants' RICO scheme focused on preventing Plaintiffs from collecting on their Los Angeles judgment award.  (Opp. Br. at 2, 6, 8.)  However, on November 22, 2006, Plaintiffs abandoned their litigation to validate their award.  (TAC at ¶ 120.)  Plaintiffs are precluded from collecting their Los Angeles judgment award in France by their own failure to pursue those claims.  Therefore, Defendants "threaten no future criminal conduct" as necessary to establish closed continuity.  *See H.J. Inc.*, 492 U.S. at 242.

Assuming that the six alleged acts of mail and wire fraud are sufficient predicate acts, Plaintiffs fail to establish a relationship between the acts and the threat of continuing criminal activity necessary to establish a pattern of racketeering activity.  *See* 18 U.S.C. § 1962.  As a pattern of racketeering activity is an essential element of RICO, this is an independent reason to grant Defendants' motion to dismiss.  *See H.J. Inc.*, 492 U.S. at 240.

### 3. Plaintiffs fail to establish that Defendants' wrongdoing was the proximate cause of their injuries.

Lastly, Defendants argue that Plaintiffs fail to establish proximate cause between the alleged racketeering activity and Plaintiffs' injury.  Although Plaintiffs need not plead "racketeering injury," they must demonstrate that their business or property was injured *by reason of* the alleged RICO violation.  *See* 18 U.S.C. § 1964(c).  In other words, Plaintiffs must

allege that their injury was proximately caused by a RICO violation. *See Chaset v. Fleer/Skybox Int'l*, 300 F.3d 1083, 1086 (9th Cir. 2002). In order to establish proximate cause, Plaintiffs must demonstrate that there exists a "direct relation between the injury asserted and the injurious conduct alleged." *See Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 266 (1992).

Plaintiffs contend that the pattern of racketeering activities resulting from the six alleged instances of wire and mail fraud perpetrated by Defendants prevented Plaintiffs from collecting their judgment award from previous litigation. Although the complaint addresses instances of pursuing the award, Plaintiffs concede that, "on or about September 22, 2004," they failed to defend their French suit and "on or about November 22, 2006," Plaintiffs "abandoned the litigation" entirely. (*Id.* at ¶¶ 117, 120.) Therefore, even assuming there is some speculative link between the six alleged acts of wire and mail fraud and the injury suffered by Plaintiffs, Plaintiffs' failure to defend their collection suit in France served as a superceding cause. *See Holmes*, 503 U.S. at 266 n.11 (recognizing "that not mere factual, but proximate, causation is required" to determine liability in a RICO cause of action). As there is no "direct relation between the injury asserted and the injurious conduct alleged[,]" Plaintiffs cannot establish the necessary element of proximate cause for their RICO claim. *See id.* at 266.

Accordingly, the Court finds that Plaintiffs fail to establish proximate cause in their pleadings. The RICO cause of action against the Plantagenet Defendants fails on this basis as well.

**C.      Plaintiffs' Third Amended Complaint is Dismissed Without Leave to Amend.**

When a complaint is dismissed for failure to state a claim, "leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co.*, 806 F.2d at 1401. The court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of the proposed amendment." *Moore,* 885 F.2d at 538. Leave to amend is properly denied where the amendment would be futile. *DeSoto v. Yellow Freight Sys., Inc.,* 957 F.2d 655, 658 (9th Cir. 1992). Although leave to amend a party's

1   pleadings pursuant to Federal Rule of Civil Procedure 15(a) should be liberally granted, a district

2   court need not permit a plaintiff to amend his or her complaint if it determines that the defects in

3   the pleadings "could not possibly be cured by the allegation of other facts."  *Doe v. United*

4   *States,* 58 F.3d 494, 497 (9th Cir. 1995) (citation omitted).

5          For the third time, Plaintiffs have failed to set forth "a short and plain statement of the

6   claim showing that the pleader is entitled to relief."  *See* Fed. R. Civ. P. 8(a).  Plaintiffs filed the

7   original complaint on September 14, 2007, and filed the first amended complaint three months

8   after.  Under Rule 15(a), Plaintiffs were given an opportunity to amend their pleading once as a

9   matter of right and they filed their second amended complaint on June 2, 2008.  After

10  Defendants filed a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief

11  could be granted, this Court reviewed the second amended complaint and found it "disjointed to

12  the point of being incoherent and unintelligible."  (Order at 10.)  Given leave to amend, Plaintiffs

13  filed their third amended complaint which is challenged by the current motion.  Plaintiffs'

14  continuing failure to meet their pleading burden counsels against granting leave.  *See Moore*, 885

15  F.2d at 538 ("repeated failure to cure deficiencies by previous amendments" weighs against

16  granting leave to amend).

17         Further, if a subsequent amendment would be futile, a court may deny leave to amend.

18  *DeSoto*, 957 F.2d at 658.  Plaintiffs make various allegations in their TAC but later clarify that

19  their alleged injuries are predicated on two underlying fraudulent schemes by Defendants.  First,

20  Plaintiffs claim that Defendants perpetrated a RICO scheme designed to prevent Plaintiffs from

21  recovering a judgment they had won in prior litigation between these same parties.  (Opp. Br. at

22  2, 6, 11.)  As already discussed, Plaintiffs fail to state a claim under RICO by not pleading

23  sufficient predicate acts of wire and mail fraud with particularity, by not proving a pattern of

24  racketeering activity, and by not demonstrating proximate cause between the Defendants'

25  conduct and Plaintiffs' injuries.  Even if Plaintiffs pled more predicate acts, and even if they

26  were able to relate these acts to one another to establish a pattern, Plaintiffs ultimately were

27  unable to collect their judgment award because they failed to pursue their collection litigation

28  against Defendants in France and ultimately abandoned any such attempts.  (TAC at ¶¶ 117,

120.)  Thus, Plaintiffs' own actions constitute a superceding cause, which negates the finding of a "direct relation between the injury asserted and the injurious conduct alleged" essential to make a RICO claim.  *See Holmes*, 503 U.S. at 266.  Plaintiffs could not allege "other facts consistent with the challenged pleading" which could "possibly cure the deficiency."  *Schreiber Distrib. Co.*, 806 F.2d at 1401.  Therefore, leave to amend would be futile.

Plaintiffs also claim that Defendants perpetrated a second RICO scheme in which they avoided paying French taxes by implicating Plaintiffs for tax evasion.  (Opp. Br. at 6, 12.)  However, Plaintiffs received the fraudulent invoices central to this "scheme to defraud" in 1998.  (TAC at ¶ 57.)  Therefore, this claim is barred by the applicable four-year statute of limitations.  *See Agency Holding Corp.*, 483 U.S. at 152.  Plaintiffs would not be able to cure the deficiency is this claim by alleging other facts.  *See Schreiber Distrib. Co.*, 806 F.2d at 1401.

Plaintiffs have repeatedly failed to plead properly within the meaning of Federal Rule of Civil Procedure 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  Further, because of the nature of their claims, Plaintiffs will not be able to cure the defects in their pleadings by alleging other facts.  Therefore, Plaintiffs' complaint is dismissed without leave to amend.  *See Moore*, 885 F.2d at 538; *Doe*, 58 F.3d at 497 (citation omitted).

## CONCLUSION

For the foregoing reasons, the Court GRANTS the Plantagenet Defendants' motion to dismiss for failure to state a claim upon which relief can be granted without leave to amend.

**IT IS SO ORDERED.**

Dated: March 13, 2009

_____
JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

15